R.D. KIRWAN (SBN 46259)
DAVID C. ALLEN (SBN 190479)
KALIA C. PETMECKY (SBN 194094)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:    310-229-1000
Facsimile:    310-229-1001
E-Mail:       rkirwan@akingump.com
              dallen@akingump.com
              kpetmecky@akingump.com

GREGORY S. C. HUFFMAN
NICOLE L. WILLIAMS
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:    214 969-1700
Facsimilie:   214 969-1751
E-Mail:       gregory.huffman@tklaw.com
              nicole.williams@tklaw.com
      *Pro Hac Vice* application to be filed

Attorneys for Defendant
GRUMA CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HENDERSON and EILEEN JOY PEVIANI, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>GRUMA CORPORATION and GRUMA S.A.B. de C.V.,<br><br>Defendants. | Case No. CV10 4173 AHM (AJWx)<br><br>**DEFENDANT GRUMA CORPORATION'S NOTICE OF MOTIONS AND MOTIONS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Proposed] Order lodged concurrently herewith; Request for Judicial Notice and Declaration of K. Petmecky filed concurrently herewith.]<br><br>Date:        August 16, 2010<br>Time:                10:00am<br>Courtroom:           14<br><br>Complaint Filed:   June 4, 2010<br>Trial Date:        None Set |

Defendant Gruma Corporation's Notice of Motions and Motions Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6);
Memorandum of Points and Authorities in Support Thereof

CV-10 4173 AHM

### NOTICE AND MOTIONS PURSUANT TO
### RULES 12(B)(1), 12(B)(6) AND 12(E)

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 16, 2010 at 10:00 a.m., in Courtroom 14 in the United States District Court for the Central District of California, located at 312 Spring Street, Los Angeles, California,  Defendant, Gruma Corporation ("Gruma"), will move and does hereby move to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

*First,* Plaintiffs, as consumers, lack standing to bring an action under the Lanham Act, 15 U.S.C. § 1125.

*Second,* FDA regulations preempt Plaintiffs' state law claims for Unfair Competition ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") predicated on the statements contained on Gruma's labels of "0g Trans Fat" and "0g Cholesterol," because the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343-1, requires Gruma to make disclosure of *trans* fat and cholesterol in a specified manner on Gruma's labels.

*Third,* Plaintiffs' claims as to the other statements on Gruma's labels are non-actionable as puffery or a part of Gruma's Mission trademark logo.

*Fourth,* Gruma's labels on its "Guacamole Flavored Dip" and "Spicy Bean Dip" are not false or misleading to the reasonable consumer as a matter of law because they truthfully describe product content.

*Fifth,* Plaintiffs failed to give Gruma the mandatory 30-day notice required by California Civil Code § 1782(a), warranting a dismissal of Plaintiffs' CLRA claim.

*Sixth,* the UCL, FAL and CLRA claims of relief for extraterritorial putative class members who reside outside of California fail under *Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214, 217 (1999) because the purported misconduct did not "emanate from" and is not in any way plausibly connected to California.

1

*Seventh,* Plaintiffs lack standing to seek injunctive relief because there is no realistic threat of future injury.  Plaintiffs lack standing under the remaining claims because they fail to plead actual reliance on the allegedly false and misleading statements, fail to plead losses and injury sufficient under the state statutes, and seek disgorgement and restitution in conflict with the statutory and decisional limitations.

This motion is made following the conference of counsel pursuant to Civil L.R. 7-3 which took place on July 9, 2010.

This motion is based upon the attached supporting Memorandum of Points and Authorities, the Declaration of Kalia C. Petmecky ("Petmecky Decl.") filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, all other papers and pleadings on file, and on such other argument and evidence as may be presented to the court at or prior to the hearing on this motion.

Dated:  July 15, 2010

AKIN GUMP STRAUSS HAUER &
FELD LLP
R.D. KIRWAN
DAVID C. ALLEN
KALIA C. PETMECKY

By_____/s/___R. D. Kirwan_____
R.D. Kirwan
Attorneys for Defendant
GRUMA CORPORATION

1

## **TABLE OF CONTENTS**

2

Page Number

3   I.    PERTINENT FACTS AND ALLEGATIONS .................................................1

4   II.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ...........................2

5         A.    The Legal Standard. ...........................................................................2

6         B.    Plaintiffs Have No Standing Under the Lanham Act Because They
                Are Consumers With No Commercial Interest. ...................................2

7         C.    Plaintiffs' Claims as to *Trans* Fat and Cholesterol Disclosures Are
8               Pre-empted by FDA Regulations. ........................................................3

9               1.    Express Preemption ...................................................................4

10              2.    Conflict Preemption ...................................................................6

11        D.    The Challenged Statements as to "The Authentic Tradition" and "All
12              Natural" Are Non-Actionable Puffery...................................................8

13              1.    "The Authentic Tradition" Is Merely a Part of the
                      Trademarked Mission Logo, Not Part of the Product
                      Description, and Has No Likelihood to Mislead Reasonable
14                    Consumers.................................................................................10

15              2.    "All Natural" Meets the Definition of Non-Actionable Puffery.11

16        E.    The Statements "Guacamole" and "With Garden Vegetables,"
17              Truthfully Describe Product Content and Therefore Are Not
                Actionable. ..........................................................................................13

18              1.    "Guacamole" Appears in the Phrase "Guacamole **Flavored**
                      Dip," Which Accurately Describes the Product.........................13
19
20              2.    "With Garden Vegetables" Accurately Describes Ingredients in
                      the Mission Guacamole Flavored Dip. .....................................14

21        F.    Plaintiffs' Complaint Fails to State a Damages Claim Under the
                CLRA Because Plaintiffs Did Not Provide the Required Pre-Suit
22              Notice. .................................................................................................14

23        G.    California's UCL, FAL, and CLRA Claims Do Not Apply
                Extraterritorially to Non-California Residents Who Were Allegedly
24              Harmed in States Other Than California..............................................16

25        H.    Plaintiffs Have No Standing.................................................................19

26              1.    Plaintiffs Have No Standing to Seek Injunctive Relief Because
                      There Is No Threat of Future Injury..........................................19
27

28

2.    Plaintiffs Have No Standing Because There Are No Plausible
Allegations of Actual Reliance . ...............................................20

3.    Any Injury Plaintiffs May Have Suffered Is *De Minimis*. ........24

4.    The Remedy of Disgorgement Is Improper. ...........................25

III.    CONCLUSION.................................................................................25

1
2
3

# <u>TABLE OF AUTHORITIES</u>

4

**Page(s)**

5

**FEDERAL CASES**

6
7
*Am. Italian Pasta Co. v. New World Pasta Co.*,
  371 F.3d 387 (8th Cir. 2004) ......................................................................9, 11

8
9
*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .......................................................................................7

10
*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ...........................................................................2

11
12
*Barrus v. Sylvania*,
  55 F.3d 468 (9th Cir. 1995) ..........................................................................2, 3

13
14
*Basic Research, LLC v. Cytodyne Techs., Inc.*,
  No. 2:99-CS-343K, 2000 WL 33363261 (D. Utah, Dec. 20, 2000)..................12

15
16
*Bell Atl. Corp. v. Twombly*,
  530 U.S. 544 (2007).....................................................................................2, 18

17
18
*Caffery v. New York Cent. R. Co.*,
  324 F. 2d 711 (2d Cir. 1963) ...........................................................................18

19
20
*Cattie v. Wal-Mart Stores, Inc.*,
  504 F.Supp.2d 939 (S.D.Cal. 2007).............................................14, 16, 19, 20

21
22
*Cetacean Community v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) .........................................................................19

23
*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000)...........................................................18

24
25
*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) .............................................................................23

26
27
*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) .............................................................................9

28

iii

*Cook Perkiss & Liehe v. N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................8, 9, 12

*Corley v. Rosewood Care Center, Inc.*,
   388 F.3d 990 (7th Cir. 2004) ..................................................................9

*English v. Gen. Elec. Co.*,
   496 U. S. 72 (1990)................................................................................4, 6

*Epstein v. Washington Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ...................................................................17

*F.T.C. v. Gill*,
   71 F.Supp.2d 1030 (C.D. Cal. 1999) ........................................................10

*Fraker v. KFC Corporation*,
   No. 06-CV-1284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) .....6

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ..................................................................8, 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1989) ................................................................2

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*,
   No. 04-CV-8413-AHM, 2007 WL 4105571 (C.D. Cal. Apr. 27, 2007) .............8

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ................................................................20

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3rd Cir. 2009) ................................................................12

*In re Actimmune Mktng. Litig.*,
   08-CV-02376-MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)...............9, 22

*In re Pizza Time Theatre Securities Litigation*,
   112 F.R.D. 15 (N.D.Cal. 1986)................................................................19

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) ................................................................2, 3

*Kingsbury v. U.S. Greenfiber, LLC*,
   No. 08-CV-00151-AHM, 2009 WL 2997389 (C.D. Cal. Sept. 14, 2009) .........21

iv

*Laster v. T-Mobile USA, Inc.*,
   No. 05-CV-1167-DMS (AJB), 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008)..15

*Laster v. T-Mobile USA, Inc.*,
   2009 WL 4842801 (S.D. Cal. 2007)................................................................23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 561 (1992)........................................................................................19

*McKinnis v. Kellogg USA*,
   No. 07-CV-2611-ABC, 2007 WL 4766060 (C.D. Cal., Sept. 19, 2007) ..........13

*McKinnis v. Sunny Delight Beverages Co.*,
   No. 07-CV-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)................9, 24

*McKinniss v. Sunny Delight Beverages Co.*,
   CV 07-02034-RGK (JCx), 2007 U.S. Dist. LEXIS 96108 (C.D. Cal. 2007)13, 14

*Meridian Project Systems, Inc. v. Hardin Construction Co., LLC*,
   404 F. Supp. 2d 1214 (2005) ..........................................................................17

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ............................................................................2

*Mills v. Giant of Maryland, LLC*,
   441 F. Supp. 2d 104 (D. D.C. 2006)..................................................................6

*Newcal Indus., Inc. v. IKON Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ..........................................................................8

*Parkinson v. Hyundai Motor America*,
   258 F.R.D. 580 (C.D. Cal. 2008)....................................................................17

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................16, 17, 18

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
   642 F. Supp. 2d 1112 (C.D. Cal. 2009) ............................................................3

*Rosen v. Unilever United States, Inc.*,
   No. C 09-02563 JW, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) ...7

*Saitsky v. DirecTV, Inc.*,
   No. 2:08-CV-7918-AHM-CW, slip op. (C.D. Cal. Sept. 22, 2009).......14, 15, 16

v

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................10

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (1999) ................................................................18

*Shein v. Canon USA, Inc.*,
  No. 08-CV-7323-CAS, 2009 WL 1774287 (C.D. Cal. June 22, 2009) .............15

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) ................................................................24

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) ................................................................18, 19

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*,
  933 F. Supp. 918 (C.D. Cal. 1996) ................................................................9

*Thomas v. Sprint Solutions, Inc.*,
  2010 WL 1263189 (N.D. Cal. 2010) ................................................................23

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................2, 15

*Von Koenig v. Snapple Beverage Corp.*,
  No. 2:09-CV-00606 FCD EFB, 2010 WL 1980208 (E.D. Cal. May 10, 2010).12

*Walsh v. Nev. Dep't of Human Resources*,
  471 F.3d 1033 (9th Cir. 2006) ................................................................20

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................13

*Wilson v. Hewlett-Packard, Inc.*,
  No. 09-CV-2253-RMW, 2009 WL3021240 (N.D. Cal. Sept. 17, 2009) .............9

*Wolph v. Acer Am. Corp.*,
  No. 09-CV-1314-JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009)..............9

**STATE CASES**

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ................................................................10

*Buckland v. Threshold Enters., Ltd.*,
 155 Cal. App. 4th 798 (2007) ...................................................................22

*Colgan v. Leatherman Tool Group, Inc.*,
 135 Cal.App.4th 663 (2006) .......................................................................8

*Consumer Advocates v. Echostar Satellite Corp.*,
 113 Cal.App.4th 1351 (2003) ................................................................8, 12

*Cortez v. Purolator Air Filtration Prods. Co.*,
 999 P.2d 706 (Cal. 2000) ..........................................................................25

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010) .............................................................21, 22

*In re Tobacco II Cases*,
 207 P.3d 20 (Cal. 2009) .........................................................8, 21, 22, 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
 63 P.3d 937 (Cal. 2003) .............................................................................25

*Morgan v. AT&T Wireless*,
 177 Cal. App. 4th 1235 (2009) ..................................................................16

*Norwest Mortgage, Inc. v. Superior Court*,
 72 Cal. App. 4th 214 (1999) ..................................................16, 17, 18, 19

*State Bd. of Funeral Directors & Embalmers v. Mortuary in Westminster Memorial Park*,
 271 Cal.App.2d 638 (1969) ...................................................................8, 13

**FEDERAL STATUTES**

21 U.S.C. § 343-1(a) ...................................................................................5

21 U.S.C. § 343-1(a)(4) ...............................................................................6

21 U.S.C. §§ 343, 343-1 ..............................................................................4

21 U.S.C. § 343(a) ......................................................................................3

21 U.S.C. § 343(q) (2010) ........................................................................5, 7

21 U.S.C. § 343(r)(2)(A)(i) (2004) ...............................................................6

vii

Lanham Act, 15 U.S.C. § 1125 *et seq.* (2) ............................................................1

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, §§ 2-3, 104 Stat. 2353, 2353-61 (1990) ...................................................................4

**STATE STATUTES**

CAL. BUS. & PROF. CODE § 17200 *et seq.* ...........................................1, 21

CAL. BUS. & PROF. CODE § 17203 .............................................................25

CAL. BUS. & PROF. CODE § 17204 .............................................................21

CAL. BUS. & PROF. CODE § 17500 *et seq.* ...............................................1

CAL. BUS. & PROF. CODE § 17535 .......................................................22, 25

CAL. CIV. CODE § 1750 *et seq.* ....................................................................1

CAL. CIV. CODE § 1780(a) ............................................................................22

CAL. CIV. CODE § 1782(a) .....................................................................14, 15

Cal. Health & Safety Code § 110665 ...........................................................5

**RULES**

F.R.Civ.P. Rule 11 .........................................................................................4

F.R.Civ.P. Rule 12(b)(1) ..............................................................................19

F.R.Civ.P. Rule 12(b)(6) .................................................................2, 13, 23

F.R.Civ.P. Rule 56 ..........................................................................................2

**REGULATIONS**

21 C.F.R. § 101 (2009) ...................................................................................3

21 C.F.R. § 101.9(c)(2)(ii) .............................................................................5

21 C.F.R. § 101.9(c)(3) ...................................................................................6

21 C.F.R. § 101.13(i) ......................................................................................6

58 Fed. Reg. 2079, 2094 (Jan. 6, 1993) ......................................................24

58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) .................................................................12

68 Fed. Reg. 41433 (July 11, 2003)........................................................................5

68 Fed. Reg. 41433, 41498 (July 11, 2003)........................................................5, 6

Defendant Gruma Corporation's Notice of Motion and Motion to Dismiss Fed. R. Civ. P. 12(b)(1) and 12(b)(6);
Memorandum of Points and Authorities in Support Thereof

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PERTINENT FACTS AND ALLEGATIONS

This is a putative consumer class action.  Gruma is a manufacturer of corn and flour tortillas and related products.[1]  Gruma also purchases from third parties and resells "Guacamole Flavored Dip" and "Spicy Bean Dip" under its Mission Brand logo. Plaintiffs are consumers who claim to have purchased "Guacamole Flavored Dip," and "Spicy Bean Dip" three to six times per year.  (Compl. at  ¶¶ 4, 15, 18.)

Plaintiffs aver that Gruma made three "false or misleading" statements on its "Spicy Bean Dip" label:  (1) "0g Trans Fat;" (2) "0g Cholesterol;" and (3) "All Natural."  (Id. at ¶ 75−76, 78.)  Plaintiffs also allege four "false or misleading statements" on the "Guacamole Flavored Dip" label: (1) "0g Trans Fat;" (2) "The Authentic Tradition;" (3) "Guacamole;" and (4) "With Garden Vegetables."  (Id. at ¶¶ 68−70.)

Plaintiffs' basis for jurisdiction in this Court is the Lanham Act claim and the Class Action Fairness Act.  (Id. at  ¶¶ 1-2.)  Plaintiffs allege both a California and a nationwide class action (Id. at ¶ 79) based upon purported violations of the (1) Lanham Act, 15 U.S.C. § 1125 *et seq.,* (2) California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.*, (2) California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*, and (4) California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.* (Id. at ¶¶ 91−112.)

Plaintiffs seek a monetary recovery in the form of restitution and disgorgement and also seek injunctive relief.  (Compl. at  pp. 24-25.)  Plaintiffs claim to have given Gruma written notice of their CLRA claim in compliance with Civ. Code § 1782 (Id. at ¶ 112), but they do not provide detail of or attach a copy of any such notice.

---

[1] Plaintiffs have also sued but have not served Gruma S.A.B. de C.V., Gruma Corporation's parent, which is located in Monterrey, Mexico.

1

## II.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.     The Legal Standard.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  When evaluating a Rule 12(b)(6) motion, a court must accept all well-pled factual allegations as true, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 530 U.S. 544, 554−55 (2007).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions."  Id. at 554−55 (citations and edit marks omitted).  Further, a court may consider any document attached to or referred to in the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  A matter that is properly the subject of judicial notice may be considered along with the complaint without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

### B.     Plaintiffs Have No Standing Under the Lanham Act Because They Are Consumers With No Commercial Interest.

To have standing to bring a false advertising claim under the Lanham Act, "a plaintiff must show:  (1) a *commercial injury* based upon a misrepresentation about a product; and (2) that the *injury is 'competitive,'* or harmful to the *plaintiff's ability to compete* with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (emphasis added).  Any injury suffered by consumers as a result of the allegedly false advertiser is not a competitive injury. *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1302 (S.D. Cal. 2003).  It is therefore appropriate to grant a motion to

2

Defendant Gruma Corporation's Notice of Motion and Motion to Dismiss Fed. R. Civ. P. 12(b)(1) and 12(b)(6);
Memorandum of Points and Authorities in Support Thereof

dismiss if this requirement is not met. *Jack Russell Terrier,* 407 F.3d at 1037; *Barrus*, 55 F.3d at 470 (affirming dismissal of consumer's Lanham Act claims).

Not only have Plaintiffs not pled a commercial and competitive injury, the Plaintiffs' allegations affirmatively show that the requirements of standing are not met. Plaintiffs bring this lawsuit "on behalf of themselves, all others similarly situated, and the general public." (Compl. at p. 1.) Plaintiffs have alleged that they are "consumers" of the products at issue who "purchased" the products for themselves and their families. (Id. at ¶¶ 4, 13-18, 21.) Plaintiffs' proposed classes consist of "[a]ll persons…who purchased…the [products] in the United States for their own use…" and "[a]ll persons…who are in the market for the [products] in California." (Id. at ¶ 79.)

Plaintiffs are consumers and have no commercial injury or competitive interest. As such, they have no standing to bring a Lanham Act false advertising claim.

### C. Plaintiffs' Claims as to *Trans* Fat and Cholesterol Disclosures Are Pre-empted by FDA Regulations.

Congress has authorized the Food and Drug Administration (FDA) to regulate food labels. *See* 21 U.S.C. § 343(a); 21 C.F.R. § 101 (2009). The question of preemption accordingly arises as to Plaintiffs' claims that Gruma's disclosure of *trans* fat and cholesterol levels as mandated by the FDA can violate California state laws.[2]

Preemption can arise under the Supremacy Clause in three circumstances. First, Congress can define explicitly the extent to which its enactments preempt state law. . . . Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such intent may be inferred from a scheme of federal regulation . . . so pervasive

---

[2] If the Lanham Act were properly a part of this case, which it is not, compliance with the FDA regulations would preempt that claim also. *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1118-20 (C.D. Cal. 2009).

as to make reasonable the inference that Congress left no room for the
States to supplement it, or where an Act of Congress touches a field in
which the federal interest is so dominant that the federal system will be
assumed to preclude enforcement of state laws on the same subject. . . .
Finally, state law is preempted to the extent that it actually conflicts with
federal law.  Thus, the Court has found preemption where it is impossible
for a private party to comply with both state and federal requirements, or
where state law stands as an obstacle to the accomplishment and execution
of the full purposes and objectives of Congress.

*English v. Gen. Elec. Co.*, 496 U. S. 72, 78-79 (1990) (citations omitted).

Here, federal law expressly forbids contrary state regulation.[3]  Alternatively, even
if there were not express preemption, Plaintiffs' state law claims conflict with federal
law and would be preempted.

1.   <u>Express Preemption</u>

The Nutrition Labeling and Education Act of 1990 (NLEA), Pub. L. No. 101-535,
§§ 2-3, 104 Stat. 2353, 2353-61 (1990) (codified as amended at 21 U.S.C. §§ 343, 343-
1) , amended the Federal Food, Drug, and Cosmetic Act (FD&C Act) to provide FDA
with specific authority to require nutrition labeling of most foods regulated by the
Agency.  The NLEA mandates a comprehensive scheme for nutrition labeling and
provides for express Federal preemption.  Specifically, a food shall be deemed to be
misbranded unless its labeling bears nutrition information that provides the amount of
the following nutrients:  total fat, saturated fat, cholesterol, *trans* fat, sodium, total
carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained

---

[3] Plaintiffs did not allege that the *trans* fat content in the two products exceed the FDA threshold for
reporting *trans* fat as 0 grams per serving.  The FDA requires listing *trans* fat at 0 grams if the *trans* fat
content is below 0.5 grams per serving.  Because Plaintiffs have no proof that the *trans* fat levels are
exceeded, they cannot truthfully allege under F.R.Civ.P. Rule 11 that Gruma has exceeded those levels.

in each serving size or other unit of measure.  21 U.S.C. § 343(q) (2010).[4]  Where a manufacturer chooses to list levels of trans fat and cholesterol it has no choice but to comply with the FDA's regulations.  (See Declaration of Kalia Petmecky, July 1, 2010 ("Petmecky Decl.") ¶ 2, Exh. 1-2)

Section 403A of the FD&C Act contains an express preemption provision: "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" certain food labeling requirements, unless an exemption is provided by the Secretary (and, by delegation, FDA).  21 U.S.C. § 343-1(a).  Most relevant here is the prohibition that States and political subdivisions may not adopt "any requirement for nutrition labeling of food that is not identical to the requirement of [21 U.S.C.] § 343(q)." *Id.* § 343-1(a)(4).  Furthermore, in its final rule on *trans* fat, the FDA determined that **"States are preempted from imposing any nutritional labeling requirements for *trans* fat that are not identical to those required by this rule."**[5]

The FDA mandates that the amount of *trans* fat and cholesterol be included in the nutrition facts disclosed on a product label.  A statement of the number of grams of *trans* fat per serving must be included and expressed as grams per serving to the nearest 0.5-gram increment.  21 C.F.R. § 101.9(c)(2)(ii).  However, if the serving contains less than 0.5 grams of *trans* fat, then FDA requires that the content, when declared, **must** be expressed as zero.  *Id.* ("If the serving contains less than 0.5 gram [of *trans* fat], the content, when declared, shall be expressed as zero.").  Thus, in order to comply with FDA's regulations, Gruma, as a marketer of packaged food products, is required to declare the content of *trans* fat as zero when the amount is below 0.5 grams per serving.

---

[4] In 2003, FDA published a final rule that, effective January 1, 2006, added trans fatty acids to the list of items to be declared in the nutrition facts box.  68 Fed. Reg. 41433 (July 11, 2003).

[5] 68 Fed. Reg. 41433, 41498 (July 11, 2003)(emphasis added).  California has statutory labeling requirements which are identical to federal law.  Cal. Health & Safety Code § 110665.

A statement of the cholesterol content in a serving expressed in milligrams to the nearest 5-milligram increment is also mandated by FDA regulation.  21 C.F.R. §101.9(c)(3).   FDA provides that if the serving contains less than 2 milligrams of cholesterol, any numeric disclosure of cholesterol level be expressed as zero.  *Id.* ("[P]roducts that contain less than 2 milligrams cholesterol in a serving . . . may state the cholesterol content as zero.").  As such, Gruma is required, in order to comply with the FDA's regulations as a marketer of packaged food products, to state in any numeric disclosure the content of cholesterol falling below 2 milligrams per serving as zero.  The FD&C Act also provides that a product is mislabeled unless all cholesterol claims on its label are consistent with the applicable FDA regulations.  21 U.S.C. § 343(r)(2)(A)(i) (2004)  The FDA also requires that any other statement of *trans* fat or cholesterol on the label be consistent with the nutrition facts disclosures.  21 C.F.R. § 101.13(i).

To the extent that Plaintiffs' claims are based on Gruma's alleged failure to report on its label the per serving amounts of *trans* fat less than 0.5 grams or of cholesterol less than 2 milligrams, such claims are expressly preempted.  21 U.S.C. § 343-1(a)(4); 68 Fed. Reg. 41433, 41498 ("States are preempted from imposing any nutritional labeling requirements for *trans* fat that are not identical to those required by this rule.").

## 2.   Conflict Preemption

Plaintiffs imply that *any* amount of trans fat or cholesterol, even if less than the FDA-specified *de minimis* levels, must be disclosed under state law.  (Compl. at ¶¶ 97-111, incorporating ¶¶ 5, 8, 19, 65-66, 68, 75-76.)  State law is preempted "where it is impossible for a private party to comply with both state and federal requirements." *English*, 496 U.S. at 79.  Because it would be impossible to comply with both federal law and Plaintiffs' theory of disclosure of *de minimis amounts*, Plaintiffs' claims are preempted, and must be dismissed.  *See Mills v. Giant of Maryland, LLC,* 441 F. Supp. 2d 104, 108 (D. D.C. 2006) (plaintiffs' claims for warnings on milk products in excess of those specified by FDA preempted); *Fraker v. KFC Corporation*, No. 06-CV-1284-

6

JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) (claims for misbranding of food products implicitly preempted by FD&C Act).

These same Plaintiffs' lawyers filed a similar case in the Northern District of California, complaining of the product "I Can't Believe It's Not Butter." *Rosen v. Unilever United States, Inc.*, No. C 09-02563 JW, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) (Ware, J.) (unreported).   The label in *Rosen* also contained the statement "0g Trans Fat."  Judge Ware ruled that the plaintiffs were not challenging the label, but noted that any attack on that statement on the product label would be barred by express preemption:

> The NLEA [Nutritional Labeling and Education Act] amendments to the [FD&C Act] include an express preemption provision that governs product labeling by providing that no state may directly or indirectly establish any requirement for the labeling of food that is not identical to the requirements of Section 343(q) [of Title 21].  . . .  Plaintiff's allegations avoid preemption because they are not directed at the "0g Trans Fat" statement or at any other statement on the label that is regulated by the NLEA. . . . Plaintiffs claims are based on advertisements that are independent of the product label.

*Id.* at *7-10.  Judge Ware went on to dismiss the plaintiff's claim as being illogical under *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

In this case, Plaintiffs attack the "0g Trans Fat" statement, and seek to impose a labeling requirement "that is not identical to the requirements of Section 343(q)," *Rosen*, 2010 U.S. Dist. LEXIS 43797, at *7; hence, federal law preempts their claims.

1

2

### D. The Challenged Statements as to "The Authentic Tradition" and "All Natural" Are Non-Actionable Puffery.

3

A product's label violates consumer protection laws only if it is likely to deceive a

4  reasonable consumer.[6]  *Consumer Advocates v. Echostar Satellite Corp.,* 113

5  Cal.App.4th 1351, 1360 (2003); *see also In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal.

6  2009) (holding that to state a claim under the California UCL or FAL, a plaintiff must

7  "show that members of the public are likely to be deceived."  General statements of

8  opinion that consumers are unlikely to rely on—"mere puffery"—are therefore not

9  actionable.  *Cook Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 245 (9th

10  Cir. 1990); *see also Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1053

11  (9th Cir. 2008); *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, No. 04-CV-8413-AHM,

12  2007 WL 4105571, at *3 (C.D. Cal. Apr. 27, 2007).

13

Judges may rule that an advertisement is not likely to deceive consumers as a

14  matter of law if the advertising itself supplies the primary evidence.  *See State Bd. of*

15  *Funeral Directors & Embalmers v. Mortuary in Westminster Memorial Park*, 271

16  Cal.App.2d 638, 642 (1969) (holding that two separately owned and operated

17  corporations—one a mortuary, the other a cemetery—did not mislead the public as a

18  matter of law by conducting a joint advertising campaign); *Freeman v. Time, Inc.*, 68

19  F.3d 285 (9th Cir. 1995) (Where there is no dispute in the evidence, the finding of the

20  trial court that the advertisements are not deceptive or misleading amounts to a

21  conclusion of law.").  Courts should resolve whether an allegedly false or misleading

22  statement is puffery on a motion to dismiss.  *See Cook*, 911 F.2d at 245.

23

24

---

25  [6] Courts have defined a reasonable consumer as "the ordinary consumer acting reasonably under the

26  circumstances" who is "not versed in the art of inspecting and judging a product…."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).  Whether the advertisement would

27  mislead or deceive reasonable consumer is a question of law.  *See id.* ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation

28  may also be dismissed as a matter of law.").

Puffery exists when a statement asserts general rather than factual superiority. *Cook*, 911 F.2d at 245.  Courts commonly rule that statements which are either too general or too subjective for a reasonable consumer to rely on are puffery: "Advertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id*. at 246 (internal alteration, quotation marks, and citation omitted); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" was puffery because it was not a specific and measurable claim).  If a statement is "incapable of objective verification," then it cannot be expected to induce reasonable consumer reliance.  *See Summit Technology, Inc. v. High-Line Medical Instruments, Co*., 933 F. Supp. 918, 931 (C.D. Cal. 1996).

Other statements that courts have held to be non-actionable puffery include:

- "America's Favorite Pasta," both standing alone and in the context of other statements, including the company's logo, "Quality Since 1867," *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391-94 (8th Cir. 2004);

- That a particular drug is "promising," *In re Actimmune Mktng. Litig.*, 08-CV-02376-MHP, 2009 WL 3740648, at *12 (N.D. Cal. Nov. 6, 2009);

- "High quality," *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1008 (7th Cir. 2004);

- "Perform[s] . . . flawlessly," *Wilson v. Hewlett-Packard, Inc.*, No. 09-CV-2253-RMW, 2009 WL3021240, at *2 (N.D. Cal. Sept. 17, 2009);

- "Superior User Experience," *Wolph v. Acer Am. Corp.*, No. 09-CV-1314-JSW, 2009 WL 2969467, at *2 (N.D. Cal. Sept. 14, 2009);

- "Fruit flavored" (with fruits pictured on the label), *McKinnis v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007).

Simply put, "[t]he distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009) (holding that Apple's claim that its monitor supports "millions of colors" was non-actionable puffery).

Plaintiffs argue that the phrase "The Authentic Tradition™" within the Mission brand logo on the Guacamole Flavored Dip label and the phrase "All Natural" phrase on the Mission Spicy Bean Dip label deceive reasonable consumers. (Compl. at ¶¶ 70, 78.) These statements, however, constitute non-actionable puffery as a matter of law.

> 1. <u>"The Authentic Tradition" Is Merely a Part of the Trademarked Mission Logo, Not Part of the Product Description, and Has No Likelihood to Mislead Reasonable Consumers.</u>

The overall net impression of an advertisement often provides the best evidence of whether its message is likely to deceive consumers. *See, e.g.*, *F.T.C. v. Gill*, 71 F.Supp.2d 1030, 1043 (C.D. Cal. 1999); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) (the primary evidence in a false advertising case is the advertising itself). The statement "The Authentic Tradition™" appears in tiny type above the bell in the Mission trademarked logo. (See photograph, Compl. at ¶ 15). The small "TM" after the phrase "The Authentic Tradition" clearly denotes that the words are part of the Mission trademark. The phrase "The Authentic Tradition" does not appear as part of the product description. (Compl. at ¶ 68.) The complaint's photograph of the Spicy Bean Dip label further confirms the phrase is a part of the trademark. (Compl. at ¶ 75.) The label for Mission's Guacamole Flavored Dip does not claim anywhere that the product conforms to some undefined authentic tradition. (*See* Petmecky Decl. ¶ 2, Exh. 1.)

Plaintiffs' misrepresent the overall impression of the label for Mission's "Guacamole Flavored Dip" by fabricating a statement that does not appear as stated anywhere on the label. Plaintiffs contend that "Mission Guacamole claims on its label

10

that it is 'Guacamole' made in 'The Authentic Tradition'".  (Compl. at ¶ 70.)  In fact, as shown in the photograph, "The Authentic Tradition™" is a banner in small type above the Mission logo, not a description of the product which is specified elsewhere on the label.  (*See* Compl. at ¶ 15.)  Plaintiffs compound the misrepresentation by erroneously describing the product as "Guacamole Dip" rather than "Guacamole Flavored Dip" as shown on the label.  *Id*.  Plaintiffs try to create an impression different than what a consumer would have when buying the product.

Even if "The Authentic Tradition" had been made a descriptor of the Guacamole Flavored Dip, which it was not, the phrase would be so general as to be non-actionable puffery.  Neither "authentic" nor "tradition" says anything specific about what is in the product or how it is prepared.  Plaintiffs have pointed to nothing which would indicate how a company which has an "authentic tradition" would prepare a guacamole flavored dip.  Plaintiffs' attempt to establish objectivity by quoting a *single* recipe for "authentic guacamole."  One recipe for "guacamole," however, cannot adequately represent the breadth of what might constitute the full range of recipes for guacamole, much less what one would expect to find in a "flavored" dip.  Moreover, the label challenged by Plaintiffs clearly lists the specific ingredients used in the dip for anyone to read.

The phrase "The Authentic Tradition" is therefore clearly non-actionable because it is a general slogan on a trademark and says nothing specific about the recipe for the Guacamole Flavored Dip.  *See American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391-94 (8th Cir. 2004) (the trademarked phrase "Quality Since 1867" is non-actionable puffery).

2.    "All Natural" Meets the Definition of Non-Actionable Puffery.

The FDA has recognized the words "all natural" as being ambiguous.  In 1992, the FDA declined to give an official definition of "all natural," noting "the ambiguity of

the phrase" and that "consumers regard many uses of this term as noninformative."[7]
The FDA consciously chose not to define "all natural."  Recent court decisions
reference this decision as the FDA's current policy.  *See Holk v. Snapple Beverage
Corp.*, 575 F.3d 329, 340−41 (3rd Cir. 2009), cited in *Von Koenig v. Snapple Beverage
Corp.*, No. 2:09-CV-00606 FCD EFB, 2010 WL 1980208, at *6 (E.D. Cal. May 10,
2010).

A vague, undefined term which has "many uses" should fall under the definition
of puffery set forth in *Cook*.  911 F.2d at 246.  Such a statement cannot be objectively
verified.  In *Consumer Advocates v. Echostar Satellite Corp.*, the court dismissed claims
against a satellite television system for advertising "crystal clear" video and "CD-
quality" audio.  *Echostar*, 113 Cal.App.4th at 1361.  The court reasoned such claims
amounted to "meaningless superlatives" that could not be reasonably verified against
any objective standard.  *Id.* ("After all, how clear is any given crystal?  How good are
the speakers on the CD player?").  Similarly, the phrase "all natural" relies on the
consumer's subjective understanding of the word "natural."  To some consumers, the
word might mean "minimally processed" and to others it might mean "derived from
nature" or any other variety of other meanings.  Like a claim of "crystal clear" video,
"all natural" appeals to the subjective judgment of consumers, but it cannot be
objectively verified or refuted.  The analogous statements in *Echostar* demonstrate "all
natural" is subjective enough to be puffery as a matter of law.

Cases addressing advertisements using the word "natural" have reached similar
conclusions.  *Basic Research, LLC v. Cytodyne Techs., Inc.*, No. 2:99-CS-343K, 2000

---

[7] Food Labeling, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).  The FDA has informally defined the phrase
to mean "nothing artificial or synthetic (including colors regardless of source) is included in, or has
been added to, the product that would not normally be expected to be there." 58 Fed.Reg. at 2,407,
cited in *Von Koenig v. Snapple Beverage Corp.,* No. 2:09-CV-00606 FCD EFB, 2010 WL 1980208, at
*6 (E.D. Cal. May 10, 2010).  This definition, however, provides little guidance to the consumer
because it is unofficial and based on the subjectivity of "normal expectations."

12

WL 33363261, at *9 (D. Utah Dec. 20, 2000); *McKinnis v. Kellogg USA*, No. 07-CV-2611-ABC, 2007 WL 4766060, at*3-4 (C.D. Cal., Sept. 19, 2007).

### E.   The Statements "Guacamole" and "With Garden Vegetables," Truthfully Describe Product Content and Therefore Are Not Actionable.

If an advertisement is truthful or nondeceptive on its face, its likelihood of deceiving reasonable consumers becomes a question of law.  *See State Board of Funeral Directors & Embalmers*, 271 Cal.App.2d at 642; *Freeman*, 68 F.3d at 288.  Plaintiffs rely on the wording of the labels shown in the Complaint to allege deception.  It is therefore appropriate for this court to determine the invalidity of such a claim as a matter of law by looking at each of the labels as a whole.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (citing *Freeman*, 68 F.3d at 288−89).  If the content of the labels themselves disprove Plaintiffs' conclusions, then this Court should dismiss Plaintiffs' claims under Rule 12(b)(6).

#### 1.   "Guacamole" Appears in the Phrase "Guacamole **Flavored Dip**," Which Accurately Describes the Product.

The label for Mission "Guacamole Flavored Dip" is shown in the complaint. (Compl. at ¶ 68.)  Ingredients listed on the label include tomatoes, onions, salt, lemon juice, and avocado powder.  (Petmecky Decl. ¶ 2, Exh. 1.)  Even according to the Plaintiffs' recipe, these elements combine to produce basic guacamole flavor.  (Compl. at ¶ 72.)  The "flavored dip" label simply describes the characterizing flavor which is not misleading, *inter alia*, because "[a] reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list."  *McKinniss,* CV 07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107 *13 (C.D. Cal. 2007) (dismissing claim that "Natural Fruit Flavors" misled consumers where cereal did not contain real fruit).  Plaintiffs' claims against the statement "Guacamole" should be dismissed because the full product name and the list ingredients demonstrate that the label is truthful and not misleading.

13

2.      <u>"With Garden Vegetables" Accurately Describes Ingredients in the Mission Guacamole Flavored Dip.</u>

The ingredients listed on the Guacamole Flavored Dip label include vegetables. Contrary to Plaintiffs' claim that the product contains "virtually no vegetables," the fourth most prominent ingredient listed is "concentrated crushed tomatoes." Avocado powder, dehydrated onion, garlic powder, and bell pepper also appear in the list. (Petmecky Decl. ¶ 2, Exh. 1.) Viewing the label as a whole, the statement "With Garden Vegetables" reflects the truth that the product in fact contains some amount of vegetables. The statement does not imply that product is predominantly vegetables, simply that vegetables are included in the ingredients. A "reasonable consumer who makes even a cursory review of the products labels at issue here" would find the list of vegetables in the dip and would not be deceived as a matter of law. *McKinniss v. Sunny Delight Beverages Co.*, CV 07-02034-RGK (JCx), 2007 U.S. Dist. LEXIS 96108, *12 (C.D. Cal. 2007) (dismissing claim that depiction of fruit on drink label misled consumers where label truthfully identified product contained 2% or less of fruit juice). Plaintiffs' claims against the statement "With Garden Vegetables" should be dismissed because the ingredients label shows the statement is true.

**F.    Plaintiffs' Complaint Fails to State a Damages Claim Under the CLRA Because Plaintiffs Did Not Provide the Required Pre-Suit Notice.**

The CLRA requires a plaintiff to send the defendant written notice identifying the alleged violations of the CLRA and demanding that the defendant remedy the alleged violations at least thirty days prior to suing for damages. CAL. CIV. CODE § 1782(a). This notice must be sent certified or registered mail, return receipt requested. *Id.* The plaintiff must comply with this requirement in order to state a claim; otherwise, the claim should be dismissed. *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 949-50 (S.D.Cal. 2007); *Saitsky v. DirecTV, Inc.*, No. 2:08-CV-7918-AHM-CW, slip op. at 10-13 (C.D. Cal. Sept. 22, 2009) (Matz, J.).

14

Section 1782(d) allows a plaintiff to bring an action without complying with the notice requirement if an action seeks injunctive relief only.  Plaintiffs' CLRA claim seeks both damages and injunctive relief.  (See reference to "restitution," Compl. at ¶ 111.)  Restitution is a form of damages, not injunctive relief, and presuit notice must be given to bring those claims.  *E.g.*, *Shein v. Canon USA, Inc.*, No. 08-CV-7323-CAS, 2009 WL 1774287, at *8 (C.D. Cal. June 22, 2009) (Snyder, J.) (treating claim for restitution as something other than a request for injunctive relief); *Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167-DMS (AJB), 2008 WL 5216255, at *16-17 (S.D. Cal. Aug. 11, 2008) (Sabraw, J.) (holding that pre-suit "notice requirement applies to monetary damages, regardless of whether such damages are calculated based upon the unjust enrichment of Defendant or the Plaintiffs' loss.")

In their "Prayer for Relief," Plaintiffs also request monetary damages in the form of restoration "of all funds acquired" and interest specifically for any violations of the CLRA and also request monetary damages for disgorgement, costs, expenses, and reasonable attorneys' fees without limiting those damages to any particular cause of action.  (Compl. at pp. 24-25.)  *See Saitsky, supra.,* No. 2:08-CV-7918-AHM-CW, slip op. at 10-13 (considering damage allegations in the "Prayer for Relief").

While Plaintiffs allege that "[i]n compliance with Civ. Code § 1782, Plaintiffs have given written notice to Gruma of their claims," this allegation, in addition to being patently untrue, is insufficient to comply with the CLRA pre-suit notice requirements. (Compl. at ¶ 112.)  Plaintiffs do not allege that they sent the written notice at least 30 days prior to filing suit, that it had the required content, or that it was sent via certified or registered mail, return receipt requested, or that it was sent to the proper location. CAL. CIV. CODE § 1782(a); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d, 1285, 1303-04 (S.D. Cal. 2003) (holding that the notice requirement in section 1782(a) must be strictly applied).  And Plaintiffs did not attach a copy of the alleged notice to their Complaint or otherwise evidence proper pre-suit notice.

Gruma first received the written notice that Plaintiffs sent, to outside legal counsel, on June 29, 2010, over three weeks after the Plaintiffs filed suit. (Petmecky Decl. ¶ 3).  This notice was postmarked on June 25, 2010.  *Id.*  Plaintiffs sent their post-suit notice to Gruma's national headquarters in Irving. Texas.[8]  Plaintiffs cannot remedy the failure to give pre-suit notice by giving notice after suit was filed.  *See Cattie*, 504 F. Supp. 2d at 950 ("Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement.").

Therefore, because Plaintiffs failed to give the proper pre-suit notice, Plaintiffs have failed to state a CLRA claim for restitution and any other damages.  The CLRA claim for damages should be dismissed, either with prejudice, *see Cattie*, 504 F. Supp. 2d at 949-50; *Saitsky*, No. 2:08-CV-7918-AHM-CW, slip op. at 10-13, or alternatively without prejudice, *see Morgan v. AT&T Wireless*, 177 Cal. App. 4th 1235, 1261 (2009).

### G. California's UCL, FAL, and CLRA Claims Do Not Apply Extraterritorially to Non-California Residents Who Were Allegedly Harmed in States Other Than California.

If any of Plaintiffs' state law claims survive this motion, those claims would not apply to consumers outside California.  California's consumer protection laws do not apply to non-residents allegedly harmed outside the state.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ("*Shutts*"); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 217 (1999) ("*Norwest*").  To the contrary, California's laws only regulate conduct occurring in California.  *Norwest*, 72 Cal. App. 4th at 222, 228 (1999) ("[T]he Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state").

As a matter of constitutional law, a court may not apply the substantive law of a state to non-residents unless Plaintiffs show that the state has "a 'significant contact or

---

[8] Plaintiffs also sent a letter to Gruma's registered agent in California dated July 1, 2010 and delivered July 6, 2010.  (Petmecky Decl. ¶ 3).

aggregation of contacts' to the claims asserted by *each member* of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [state] law is not arbitrary or unfair." *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (quoting *Shutts*, 472 U.S. at 821-22) (emphasis added). Otherwise, Plaintiffs could shop for the one state out of 50 with laws most favorable to them and then urge application of the laws to citizens of the other 49.

In *Norwest*, the defendant, a California corporation, maintained its principal place of business in Iowa. *Id.* Plaintiffs asserted a nationwide class of individuals allegedly forced to buy mortgage insurance. *Id.* at 219-20. The court of appeals reversed certification of a nationwide class of *non-residents* allegedly harmed by conduct *originating outside of the state. Id.* at 225, n. 13. The court held that the UCL could not be used by non-resident plaintiffs to regulate conduct unconnected to California because such a claim "would be arbitrary and unfair and transgress due process limitations" as a matter of law. *Id.* at 227; *see also Meridian Project Systems, Inc. v. Hardin Construction Co., LLC,* 404 F. Supp. 2d 1214, 1225-26 (2005) (dismissing UCL claim where Canadian company allegedly committed misconduct in Illinois).

To determine if a single state's law may apply to a nationwide class of non-residents, a critical constitutional factor under *Shutts* and *Norwest* is the location where the alleged misconduct "emanated." In *Norwest*, the court held that it was the conduct of loan servicing officers in states such as Iowa, Georgia, and North Carolina that "caused" the alleged injuries of the non-Californian plaintiffs. Accordingly, California's UCL could not apply to non-California putative class members allegedly harmed by the non-California conduct. *Norwest*, 72 Cal. App. 4th at 218, 222-28.

Plaintiffs fail to allege the prerequisites for a national class. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). A pleader must amplify a claim with some factual allegations to

17

make the claim "plausible;" merely speculative allegations are insufficient. *Twombly*, 530 U.S. at 556-57. Plaintiffs correctly acknowledge that Gruma is a Nevada Corporation. (Compl. at ¶ 10.) Plaintiffs, however, aver without any basis whatsoever, that Gruma's principal place of business is in California. As shown clearly in the official records of the State of Nevada, Gruma's principal place of business is in Irving, <u>Texas</u>. Gruma's Request for Judicial Notice ¶ 6. A court may properly take judicial notice of a company's principal place of business. *Caffery v. New York Cent. R. Co.*, 324 F. 2d 711, 712 (2d Cir. 1963) (taking judicial notice of company's state of incorporation and principal place of business). It is also evident from the labels which Plaintiffs include in their complaint that Gruma is headquartered in Irving, Texas, not California. (Petmecky Dec. ¶ 2).[9] There is no reference to California on either label.[10]

Plaintiffs assert (in addition to a putative California injunction class) a purported "Unfair Competition Law" class of non-residents encompassing the entire United States. (Compl. at ¶ 79.) Thus, the vast majority of purported class members reside in the other 49 states and allegedly purchased Gruma's products in states other than California, for their "own use." *Id.* Plaintiffs fail to allege that these non-California consumers have any connection to California. *See generally* Complaint. Importantly, the complaint fails to allege that any of the purported misconduct "emanated from" California. *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (in-state sales alone insufficient to establish a nexus with California). Plaintiffs merely allege that they "suffered injuries as a result of Defendants' acts in this district . . . ." (Compl. at ¶ 3.) That is not enough. In *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, the court dismissed the plaintiff's UCL claim under *Norwest* despite

---

[9] With no centralized 'emanating' event "*Shutts* [] dictate[s] application of all the laws of the states in which any class plaintiff reside[s]." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 678 (1999).

[10] *See* Petmecky Dec. ¶ 2, Exh. 1-2 (a full copy of the Gruma product labels). Plaintiffs include in their complaint only a partial copy of the labels at issue. (Compl. at ¶¶ 67, 74.)

plaintiff's similar allegation that "many of the acts taken in furtherance of the conspiracy . . . took place in California."  405 F. Supp. 2d 1141, 1147 (C.D. Cal. 2005).

Accordingly, the claims of non-resident putative class members should be dismissed with prejudice.  Alternatively, the allegations relating to a nationwide class should be stricken.  *See Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141,1148 (C.D. Cal. 2005) (dismissing UCL claim under *Norwest* for lack of duty to nonresident plaintiffs).[11]

### H.    Plaintiffs Have No Standing.

#### 1.    Plaintiffs Have No Standing to Seek Injunctive Relief Because There Is No Threat of Future Injury.

A plaintiff must have Article III standing for a court to have subject matter jurisdiction over his or her claims.  *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted).  It is the plaintiff's burden to affirmatively establish Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 561 (1992).  Otherwise, the case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Standing requirements apply regardless of the form of relief the plaintiff seeks. *Cattie*, 504 F. Supp. 2d at 951-52 (applying standing requirements to request for injunctive relief).  To have standing to seek injunctive relief, a plaintiff must have "a

---

[11] What is more, plaintiffs do not allege–because they cannot–that the non-California consumers had any expectation that California law would apply to any future claim when the plaintiffs purchased Gruma's products.  *In re Pizza Time Theatre Securities Litigation*, 112 F.R.D. 15, 18 (N.D.Cal.  1986) A major factor in determining fundamental fairness of applying California law is the parties' expectation.

19

realistic threat of future injury," *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040-41 (9th Cir. 1999), and it must be likely that an injunction will prevent that injury, *Cattie*, 504 F. Supp. 2d at 951-52.

There is no threat of future injury where, as here, the plaintiff alleges that he or she is now knowledgeable of any misstatements and will not purchase the product at issue in the future. As stated in *Cattie*, "[I]t is unclear how prospective relief will redress [Plaintiff's] injury, since she is now fully aware of the linens' thread count. Furthermore, the [complaint] contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future." 504 F. Supp. 2d at 951; *Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (no injunction available where former employee did not allege she wished to work for former employer in the future).

Like in *Cattie*, neither Plaintiff alleges that they intend to buy either Gruma product in the future; indeed, it is hard to conclude anything but the opposite, given their alleged health concerns.[12] Therefore, no likelihood of future injury to Plaintiffs exists, and no likelihood that injunction from this Court would redress any alleged future injury. The Court should dismiss all of Plaintiffs' claims for injunctive relief.[13]

> 2.   Plaintiffs Have No Standing Because There Are No Plausible Allegations of Actual Reliance .

All of the Plaintiffs' claims require pleading and proof of actual reliance on the alleged misrepresentations. While Plaintiffs include conclusory allegations of reliance

---

[12] The Ninth Circuit has ruled that Plaintiffs cannot avoid dismissal by arguing that a member of the class is likely to suffer a future injury. "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin*, 199 F.3d at 1045.

[13] These include (1) Plaintiffs' Lanham Act claims in their entirety, because those claims seek only injunctive relief, (Compl. at ¶¶ 95-96); (2) Plaintiffs' claim for injunctive relief under the Unfair Competition Law, (Compl. at ¶ 102); (3) Plaintiffs' claim for injunctive relief under the False Advertising Law, (Compl. at ¶ 107); and (4) Plaintiffs' claim for injunctive relief under the Consumer Legal Remedies Act, (Compl. at ¶ 111).

20

(Compl. at ¶¶ 22-23), other allegations in the complaint demonstrate that such general allegations are simply not plausible.

### a)   UCL Fraud Prong Requires Actual Reliance

To have standing to sue under the UCL, a private plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE § 17204.  An action under the UCL may be based on allegedly fraudulent conduct or allegedly unfair and unlawful conduct.  CAL. BUS. & PROF. CODE § 17200.

The California Supreme Court recently held that the phrase "as a result of" in Section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."  *In re Tobacco II Cases*, 207 P.3d at 39; *see also Kingsbury v. U.S. Greenfiber, LLC*, No. 08-CV-00151-AHM, 2009 WL 2997389, at *9-10 (C.D. Cal. Sept. 14, 2009) (Matz, J.).  The plaintiff must plead that the alleged "misrepresentation or nondisclosure was an immediate cause of the injury-producing conduct . . . . by showing that" without the misrepresentation or nondisclosure, "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 207 P.3d at 39 (internal quotation marks omitted).  The representation must have "played a substantial part, and been a substantial factor, in influencing" the plaintiff's decision to purchase the product.  *Id.*

### b)   UCL Unlawful Prong Also Requires Actual Reliance When the Claims Are Based on Misrepresentation or Deception

Plaintiffs allege that the same conduct that violates the UCL's fraud prong also violates its unfair and unlawful prongs.  (Compl. at ¶¶ 100, 102.)  "A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes."  *Durell v.*

21

Defendant Gruma Corporation's Notice of Motion and Motion to Dismiss Fed. R. Civ. P. 12(b)(1) and 12(b)(6);
Memorandum of Points and Authorities in Support Thereof

*Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).  Although the discussion in *In re Tobacco II Cases* is limted to the standard of causation required under the fraud prong, 207 P.3d 20, 39 n.17 (Cal. 2009), when the alleged unfairness is misrepresentation and deceptive conduct, *Tobacco II's* reasoning should apply equally to suits under the unfair and unlawful prongs.  *See Durell*, 183 Cal. App. 4th at 1363.

### c)  *FAL Violation Requires Actual Reliance.*

The standing requirements for a suit under the California False Advertising Law (the "FAL") are identical to those for standing under the UCL: the plaintiff must have "suffered injury in fact and . . . lost money or property as a result of a violation of" the FAL.  CAL. BUS. & PROF. CODE § 17535; *In re Actimmune Mktng. Litig.*, No. 08-CV-02376 MHP, 2009 WL 3740648, at *15 (N.D. Cal. Nov. 6, 2009) (citing *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 819 (2007)).  Therefore, if there is no standing under the UCL, there also is no standing under the FAL

### d)  *Actual Reliance Is Required for the CLRA Claim.*

To have standing under the CLRA, a consumer must have "suffer[ed] . . . damage as a result of the use or employment . . . of a method" that violates the substantive provisions of the CLRA.  CAL. CIV. CODE § 1780(a).  [P]laintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions."  *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007).

### e)  *There Are No Plausible Allegations of Actual Reliance.*

Plaintiffs base their fraud and misrepresentation allegations on five claims made on the labels of Gruma's Guacamole Flavored Dip and Spicy Bean Dip:  (1) "0g Trans Fat" on product labels; (2) "With Garden Vegetables" on the Guacamole Flavored Dip label; (3) "The Authentic Tradition" within Gruma's logo; (4) "0g Cholesterol" on the Spicy Bean Dip label; and (5) "All Natural" statement on the Spicy Bean Dip label.

Plaintiffs allege in a conclusory fashion that they relied on the above statements in deciding to purchase the products.  (Compl. At ¶¶ 22-23.)[14]  Other, more fact specific allegations of plaintiffs' state of mind at the time of the alleged purchases undermine the plausibility of their general allegations of actual reliance.  In particular, Plaintiffs concede that during the time they purchased the products (from 2006 to 2010), they had absolutely no knowledge of the alleged "dangers" associated with *trans* fats.  (Compl. at ¶¶ 14, 19−21.)  If Plaintiffs had no knowledge of the alleged health risks associated with *trans* fat, they could not have intelligently differentiated between products or made their purchase based on representations of "*trans* fat" content.  As such, they could not have actually relied on the allegedly misleading "0 g TRANS FAT" statement.  Accepting Plaintiffs' alleged state of mind as true, the statement "0g TRANS FAT" could not have "played a substantial part, and been a substantial factor, in influencing" their decisions to purchase the products.  *In re Tobacco II Cases*, 207 P.3d at 39.  Plaintiffs' conclusory assertion of reliance is not plausible in light of their admitted state of mind.

As to the phrase "With Garden Vegetables," by alleging that "the product contains virtually no vegetables", Plaintiffs admit that the dip contains *some* vegetables.  As to "The Authentic Tradition" statement, this is merely a part of the company logo, not the product name or description, which is clearly titled  "Guacamole Flavored Dip."

Plaintiffs' allegations that they relied on "0g TRANS FAT," "With Garden Vegetables, and "The Authentic Tradition" cannot reasonably be drawn from the facts they allege.  *See, e.g., Thomas v. Sprint Solutions, Inc.*, 2010 WL 1263189, at *5 (N.D. Cal. 2010) (dismissing plaintiffs' claims for alleging potential rather than actual reliance); *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, at *6-7 (S.D. Cal. 2007)

---

[14] Under Rule 12(b)(6), courts must accept all material allegations as true but are not required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754−55 (9th Cir. 1994).

(stating a claim "fail[ed]" when plaintiff admitted in the complaint that the defendant's statement would not have impacted his purchase decision).

### 3.   Any Injury Plaintiffs May Have Suffered Is *De Minimis.*

Any injury Plaintiffs may have suffered is *de minimis* and therefore cannot support standing.  The Ninth Circuit has recognized the doctrine of *de minimis non curat lex*—"the law does not care about trifles"—and has stated that some allegations are "too trifling of an injury to support constitutional standing."  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007).

Plaintiffs challenge statements on the labels which are clearly *de minimis.*  They focus on amounts of *trans* fat and cholesterol which fall beneath the level of significance set by the FDA.  Where a federal agency has set a minimum level of significance, that should be dispositive for the purpose of showing *de minimis* effect. *See* Food Labeling, 58 Fed. Reg. 2079, 2094 (Jan. 6, 1993) ("A quantitative declaration other than zero would not necessarily be more correct because methodological limitations do not generally permit precise quantification of cholesterol content within the 95 percent confidence level below 2 mg amounts. It is also extremely unlikely that sufficient quantities of foods containing less than 2 mg of cholesterol per serving would be consumed on a daily basis to represent a significant level of cholesterol intake.").

Plaintiffs challenge that the statements "The Authentic Tradition," "Guacamole" flavored, "With Garden Vegetables," and "All Natural" are not specific enough, even though the nutritional tables on the labels set forth the ingredients in very specific detail. Given the limited space on product labels, a complaint that such general phrases do not repeat information already laid out in the ingredients list raises no legally significant claim.  *See McKinniss v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("Nutritional labels have long been required on food products and are familiar to almost every reasonable consumer").

Plaintiffs have alleged no actual injury beyond the purchase of products that were in fact consumed.  Further, Plaintiffs only allege they purchased a total of 10 of these products each year between them.  (Compl. at ¶¶ 15, 18.)  Plaintiffs are merely looking for some type of refund for food which Plaintiffs ate years ago without complaint.  This type of claim about the need for redundant verbiage and unrounded minuscule numbers on product labels is legally insufficient and should not support standing.

4. <u>The Remedy of Disgorgement Is Improper.</u>

Disgorgement is not an authorized remedy for any of Plaintiffs' claims. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (holding that disgorgement, to the extent it exceeds restitution, is not recoverable under the UCL); Cal. Bus. & Prof. Code § 17203 (UCL); Cal. Bus. & Prof. Code § 17535 (FAL); *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 715 n. 10 (Cal. 2000) ("The restitutionary remedies of section 17203 and 17535, on which section 17203 is patterned, are identical and are construed in the same manner.").  Therefore, the Court should dismiss Plaintiffs' claims for restitution and disgorgement damages.

**III.    CONCLUSION.**

Gruma respectfully requests that the Court grant the Defendant's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), without leave to amend.

Dated:  July 15, 2010          AKIN GUMP STRAUSS HAUER & FELD LLP
                               R.D. KIRWAN


                               By_____/s/___R.D. Kirwan_____
                                         R.D. Kirwan
                                   Attorneys for Defendant
                                   GRUMA CORPORATION

6482275

25