R.D. KIRWAN (SBN 46259)
DAVID C. ALLEN (SBN 190479)
KALIA C. PETMECKY (SBN 194094)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:     310-229-1000
Facsimile:      310-229-1001
E-Mail:          rkirwan@akingump.com
                     dallen@akingump.com
                     kpetmecky@akingump.com

GREGORY S. C. HUFFMAN
NICOLE L. WILLIAMS
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:     214 969-1700
Facsimilie:     214 969-1751
E-Mail:          gregory.huffman@tklaw.com
                     nicole.williams@tklaw.com
     Admitted *Pro Hac Vice*

Attorneys for Defendant
GRUMA CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HENDERSON and EILEEN JOY PEVIANI, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GRUMA CORPORATION and GRUMA S.A.B. de C.V.,<br><br>Defendants. | Case No. CV10 4173 AHM (AJWx)<br><br>**DEFENDANT GRUMA CORPORATION'S NOTICE AND MOTION TO DISMISS FIRST AMENDED COMPLAINT (FED. R. CIV. P. 12(B)(1) AND 12(B)(6)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of K. Petmecky filed concurrently herewith.]<br><br>Date:                    Sept. 13, 2010<br>Time:                   10:00am<br>Courtroom:          14<br>Complaint Filed:    June 4, 2010<br>Amended Complaint Filed:     Jul. 29, 2010<br>Trial Date:             None Set |

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

CV-10 4173 AHM

## NOTICE AND MOTIONS PURSUANT TO
## RULES 12(B)(1) AND 12(B)(6)

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 13, 2010 at 10:00 a.m., in Courtroom 14 in the United States District Court for the Central District of California, located at 312 Spring Street, Los Angeles, California, Defendant, Gruma Corporation ("Gruma"), will move and does hereby move to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

*First,* Federal Food and Drug Administration (FDA) regulations preempt Plaintiffs' state law claims for Unfair Competition ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") predicated on the statements on Gruma's labels of "0g Trans Fat" and "0g Cholesterol," because the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343-1, requires Gruma to make disclosure of *trans* fat and cholesterol in a specified manner on Gruma's labels.

*Second,* Plaintiffs' claims as to the other statements on Gruma's labels are non-actionable as puffery or a part of Gruma's Mission trademark logo.

*Third,* Gruma's labels on its "Guacamole Flavored Dip" and "Spicy Bean Dip" are not false or misleading to the reasonable consumer as a matter of law because they truthfully describe product content.

*Fourth,* Plaintiffs failed to give Gruma the mandatory 30-day notice required by California Civil Code § 1782(a), warranting a dismissal of Plaintiffs' CLRA damages claim.

*Fifth,* the UCL, FAL and CLRA claims of relief for putative class members who reside outside of California fail under *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 217 (1999) because the purported misconduct did not "emanate from" California.

*Sixth,* Plaintiffs lack standing to seek injunctive relief because there is no realistic threat of future injury.  Plaintiffs lack standing under the remaining claims because they

1

fail to plead actual reliance on the allegedly false and misleading statements, fail to plead losses and injury sufficient under the state statutes, and seek disgorgement and restitution in conflict with the statutory and decisional limitations.

This motion is made following the conference of counsel pursuant to Civil L.R. 7-3 which took place on August 3, 2010.

This motion is based upon the attached supporting Memorandum of Points and Authorities, the Declaration of Kalia C. Petmecky ("Petmecky Decl.") filed concurrently herewith, the Request for Judicial Notice filed on July 15, 2010 (Docket No. 12), the Appendix filed on July 15, 2010 (Docket No. 15) all other papers and pleadings on file, and on such other argument and evidence as may be presented to the court at or prior to the hearing on this motion.

Dated:  August 9, 2010                    **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                          R.D. KIRWAN
                                          DAVID C. ALLEN
                                          KALIA C. PETMECKY

                                          By_____/s/R. D. Kirwan_____
                                                    R.D. Kirwan
                                               Attorneys for Defendant
                                               GRUMA CORPORATION

# **TABLE OF CONTENTS**

**Page Number**

I.   INTRODUCTION ........................................................................................... 1

II.  PERTINENT FACTS AND ALLEGATIONS ............................................. 1

III. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ....................... 3

    A.   The Legal Standard. ......................................................................... 3

    B.   Plaintiffs' Claims as to *Trans* Fat and Cholesterol Disclosures Are Pre-empted by FDA Regulations. ..................................................... 4

        1.   Express Preemption ............................................................... 5

        2.   Conflict Preemption ............................................................. 7

    C.   The Challenged Statements as to "The Authentic Tradition" and "All Natural" Are Non-Actionable Puffery. .......................................... 8

        1.   "The Authentic Tradition" Is Merely a Part of the Trademarked Mission Logo, Not Part of the Product Description, and Has No Likelihood to Mislead Reasonable Consumers .......................................................................... 10

        2.   "All Natural" Meets the Definition of Non-Actionable Puffery. .... 11

    D.   The Statements "Guacamole Flavored" and "With Garden Vegetables," Truthfully Describe Product Content and Therefore Are Not Actionable. ................................................................................. 13

        1.   "Guacamole" Appears in the Phrase "Guacamole Flavored Dip," Which Accurately Describes the Product. ......................... 13

        2.   "With Garden Vegetables" Accurately Describes Ingredients in the Mission Guacamole Flavored Dip. ............................ 14

    E.   Plaintiffs' First Amended Complaint Fails to State a Damages Claim Under the CLRA Because Plaintiffs Did Not Provide the Required Pre-Suit Notice. ..................................................................... 14

    F.   California's UCL, FAL, and CLRA Claims Do Not Apply Extraterritorially to Non-California Residents Who Were Allegedly Harmed in States Other Than California. .......................................... 16

    G.   Plaintiffs Have No Standing. ........................................................... 19

        1.   Plaintiffs Have No Standing to Seek Injunctive Relief Because There Is No Threat of Future Injury. ..................................... 19

        2.   Plaintiffs Have No Standing Because There Are No Plausible Allegations of Actual Reliance . ..................................... 20

i

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

a)  UCL Fraud and "Unlawful" Prongs Require Actual Reliance ...................................................... 20

b)  FAL Violation Requires Actual Reliance. ........................... 21

c)  Actual Reliance Is Required for the CLRA Claim. .............. 21

d)  There Are No Plausible Allegations of Actual Reliance. ...... 22

3.  Any Injury Plaintiffs May Have Suffered Is *De Minimis*. .............. 24

H.  The Remedy of Disgorgement Is Improper. ............................................... 25

IV.  CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page Number**

## FEDERAL CASES

*Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387 (8th Cir. 2004) .......... 9, 11

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ............................. 22

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ............................... 3

*Basic Research, LLC v. Cytodyne Techs., Inc.*, No. 2:99-CS-343K,
    2000 WL 33363261 (D. Utah Dec. 20, 2000) ...................................................... 12

*Bell Atl. Corp. v. Twombly*, 530 U.S. 544 (2007) ............................................... 3, 17

*Caffery v. New York Cent. R. Co.,* 324 F. 2d 711 (2d Cir. 1963) ................................. 17

*Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D.Cal. 2007) ............... 15, 16, 19

*Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ...................................... 19

*Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000) .... 18

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .................................. 22

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ................................................................................ 9

*Cook Perkiss & Liehe v. N. Cal. Collection Serv.,*
    911 F.2d 242 (9th Cir. 1990) ........................................................................ 8, 9, 12

*Corley v. Rosewood Care Center, Inc.,* 388 F.3d 990 (7th Cir. 2004) ........................... 9

*English v. Gen. Elec. Co.*, 496 U. S. 72 (1990) ...................................................... 4, 7

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) ................................ 17

*F.T.C. v. Gill*, 71 F.Supp.2d 1030 (C.D. Cal. 1999) ................................................. 10

*Fraker v. KFC Corporation*, No. 06-CV-1284-JM (WMC),
    2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ...................................................... 7

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .............................................. 8, 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
    896 F.2d 1542 (9th Cir. 1989) ............................................................................. 3

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.,* No. 04-CV-8413-AHM,
    2007 WL 4105571  (C.D. Cal. Apr. 27, 2007) ...................................................... 8

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ............................... 19, 20

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3rd Cir. 2009) .................................. 12

*In re Actimmune Mktng. Litig.*, 08-CV-02376-MHP,
    2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .................................................... 9, 21

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

*In re Pizza Time Theatre Securities Litigation*,
  112 F.R.D. 15 (N.D.Cal. 1986)...................................................................19

*Janich Bros. Inc. v. American Distilling Co.*,
  570 F.2d 848 (9th Cir. 1977).....................................................................22

*Jones v. Bayer Healthcare LLC*, 2009 WL 1186891 (N.D. Cal. 2009) .........................22

*Kingsbury v. U.S. Greenfiber, LLC*, No. 08-CV-00151-AHM,
  2009 WL 2997389 (C.D. Cal. Sept. 14, 2009) ....................................................21

*Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801 (S.D. Cal. 2007) ...........................24

*Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167-DMS (AJB),
  2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ....................................................15

*Lujan v. Defenders of Wildlife*, 504 U.S. 561 (1992).......................................19

*McKinnis v. General Mills*, CV 07-2521 GAF (FMOx),
  2007 U.S. Dist. LEXIS 96107  (C.D. Cal. 2007).................................................13

*McKinnis v. Kellogg USA*, No. 07-CV-2611-ABC,
  2007 WL 4766060 (C.D. Cal., Sept. 19, 2007) ..................................................12

*McKinnis v. Sunny Delight Beverages Co.*, No. 07-CV-02034,
  2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...........................................9, 11, 14, 25

*Meridian Project Systems, Inc. v. Hardin Construction Co., LLC*,
  404 F. Supp. 2d 1214 (2005) .....................................................................17

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986)..................................3

*Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104 (D. D.C. 2006) .........................7

*Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038 (9th Cir. 2008) ................8

*Parkinson v. Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal. 2008)....................16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)......................................16

*Rosen v. Unilever United States, Inc.*, No. C 09-02563 JW,
  2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010)......................................7, 8

*Saitsky v. DirecTV, Inc.*,
  No. 2:08-CV-7918-AHM-CW (C.D. Cal. Sept. 22, 2009).................................15, 16

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ...............................10

*Schwartz v.  Upper Deck Co.*, 183 F.R.D. 672 (1999)........................................18

*Shein v. Canon USA, Inc.*, No. 08-CV-7323-CAS,
  2009 WL 1774287 (C.D. Cal. June 22, 2009) ..................................................15

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007).....................................................................24

iv

*Standfacts Credit Services, Inc. v. Experian Information Solutions,*
   405 F. Supp. 2d 1141, 1147 (C.D. Cal. 2005) ........................................ 18

*Stearns v. Select Comfort Retail Corp.,*
   2010 WL 2898284 (N.D. Cal. 2010) ..................................................... 22

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.,*
   933 F. Supp. 918 (C.D. Cal. 1996) ......................................................... 9

*Thomas v. Sprint Solutions, Inc.,*
   2010 WL 1263189 (N.D. Cal. 2010) ..................................................... 24

*Von Grabe v. Sprint PCS,* 312 F. Supp. 2d, 1285 (S.D. Cal. 2003) .............. 15

*Walsh v. Nev. Dep't of Human Resources,* 471 F.3d 1033 (9th Cir. 2006) ..... 19

*Williams v. Gerber Prods. Co.,* 552 F.3d 934 (9th Cir. 2008) ....................... 13

*Wilson v. Hewlett-Packard, Inc.,* No. 09-CV-2253-RMW,
   2009 WL3021240 (N.D. Cal. Sept. 17, 2009) ........................................ 9

*Wolph v. Acer Am. Corp.,* No. 09-CV-1314-JSW,
   2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ....................................... 10

*Yamaha Corporation of America v. ABC International Traders, Corp.,*
   703 F. Supp. 1398 (C.D. Cal. 1988) ..................................................... 22

**STATE CASES**

*Brockey v. Moore,* 107 Cal. App. 4th 86 (2003) ........................................ 10

*Buckland v. Threshold Enters., Ltd.,* 155 Cal. App. 4th 798 (2007) ............... 22

*Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663 (2006) ............ 8

*Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351 (2003) ..... 8, 12

*Cortez v. Purolator Air Filtration Prods. Co.,* 999 P.2d 706 (Cal. 2000) ......... 25

*Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350 (2010) ........................ 21

*In re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009) ....................... 8, 20, 21, 23

*Korea Supply Co. v. Lockheed Martin Corp.,*
   63 P.3d 937 (Cal. 2003) ...................................................................... 25

*Morgan v. AT&T Wireless,* 177 Cal. App. 4th 1235 (2009) .......................... 16

*Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214 (1999) ......... 16, 17

*State Bd. of Funeral Directors & Embalmers v.*
   *Mortuary in Westminster Memorial Park,* 271 Cal.App.2d 638 (1969) ......... 8, 13

**FEDERAL STATUTES**

21 U.S.C. § 343(a) ................................................................................. 4

v

21 U.S.C. § 343(q) (2010) ......................................................... 5

21 U.S.C. § 343(r)(2)(A)(i) (2004) ............................................ 6

21 U.S.C. § 343-1(a) ................................................................. 5

21 U.S.C. § 343-1(a)(4) ........................................................... 5, 6

## STATE STATUTES

CAL. BUS. & PROF. CODE § 17200 ............................................ 20

CAL. BUS. & PROF. CODE § 17203 ............................................ 25

CAL. BUS. & PROF. CODE § 17204 ............................................ 20

CAL. BUS. & PROF. CODE § 17535 ........................................ 21, 25

CAL. CIV. CODE § 1780(a) ....................................................... 21

CAL. CIV. CODE § 1782(a) .................................................... 14, 15

Cal. Health & Safety Code § 110665 ......................................... 5

## REGULATIONS

21 C.F.R. § 101 (2009) ............................................................. 4

21 C.F.R. § 101.13(i) ............................................................... 6

21 C.F.R. § 101.9(c)(2)(ii) ....................................................... 6

21 C.F.R. §101.9(c)(3) ............................................................. 6

58 Fed. Reg. 2079 (Jan. 6, 1993) ............................................. 24

58 Fed. Reg. 2302 (Jan. 6, 1993) ............................................. 12

68 Fed. Reg. 41433 (July 11, 2003) ........................................ 5, 6

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs claimed in the June 4, 2010 Complaint that they were deceived by the disclosures made on the labels of Gruma's products.  Plaintiffs ignored the dispositive roadblocks to their claims, including that the disclosures are statements as to the products' ingredients and nutrients which federal law requires to be placed on the labels, using the FDA mandated rounding convention.

On July 29, 2010, in response to Gruma's Rule 11 letter and motion to dismiss the Complaint, Plaintiffs filed their First Amended Complaint ("FAC").  The FAC, other than eliminating the Lanham Act claims for which Plaintiffs have no standing, changed nothing material.  Plaintiffs also now admit they did not actually send CLRA notice until long after filing the Complaint – in violation of the CLRA condition precedent to filing a complaint.  Finally, Plaintiffs' new factual averments also now contradict their prior factual admissions that they had no knowledge of *trans* fat and hence could not have relied on any disclosure regarding *trans* fat on Gruma's labels; Plaintiffs are bound by their prior factual admissions.  Plaintiffs still fail to state claims on which relief can be granted and their new FAC should be dismissed.

## II.    PERTINENT FACTS AND ALLEGATIONS

This is a putative consumer class action.  Gruma is a Nevada corporation with its principal place of business in Irving, Texas.  It manufactures corn and flour tortillas and related products.[1]  Gruma also purchases from third parties and resells "Guacamole Flavored Dip" and "Spicy Bean Dip" under its Mission Brand logo.  Plaintiffs are consumers who claim to have purchased "Guacamole Flavored Dip," and "Spicy Bean Dip" three to six times per year.  (FAC at  ¶¶ 4, 18, 21.)

---

[1]  Plaintiffs have also sued but have not served Gruma S.A.B. de C.V., Gruma Corporation's parent, which is located in Monterrey, Mexico.  Gruma S.A.B. de C.V. does no business in the United States.

Plaintiffs filed their initial Complaint on June 4 , 2010.  Gruma's counsel met and conferred with Plaintiffs' counsel on July 9, 2010.  During the course of the meeting, Gruma's counsel explained that the Complaint contained numerous misrepresentations and was fatally deficient under applicable law.  When Plaintiffs refused to strike their pleading, Gruma began the "safe harbor" period under Rule 11 by sending a copy of Gruma's proposed Rule 11 motion.  Plaintiffs expressly represented that they were not willing to amend their Complaint.  Therefore, on July 15, 2010, Gruma filed a Rule 12 motion to dismiss.   Plaintiffs did not file an opposition to the motion, but instead amended their complaint by filing the FAC.  This new FAC pleading drops the Lanham Act claim and tries to undo admissions in Paragraphs 19 through 21 that Plaintiffs did not rely on any of the alleged labeling and advertising misstatements in making their purchasing decisions, but fails effectively to circumvent the grounds for Gruma's motion to dismiss all remaining claims.

Plaintiffs currently aver that Gruma made three "false or misleading" statements on its "Spicy Bean Dip" label:  (1) "0g Trans Fat;" (2) "0g Cholesterol;" and (3) "All Natural."  (FAC at ¶ 78-79, 81.)  Plaintiffs also allege four "false or misleading statements" on the "Guacamole Flavored Dip" label: (1) "0g Trans Fat;" (2) "The Authentic Tradition;" (3) "Guacamole;" and (4) "With Garden Vegetables."  (*Id.* at ¶¶ 71-72, 76-77.)

Plaintiffs' basis for jurisdiction is the Class Action Fairness Act. (FAC. at  ¶¶ 1-2.) Plaintiffs allege both a California and a nationwide class action (*Id.* at ¶ 96) based upon purported violations of the (1) California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*; (2) California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*; and (3) California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.* (*Id.* at ¶¶ 111−142.)

Plaintiffs seek damages in the form of restitution, disgorgement, other money damages, and punitive damages, as well as injunctive relief.  (FAC at pp. 29-30.)  In the

2

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

initial Complaint, Plaintiffs claimed to have given Gruma written notice of their CLRA claim in compliance with Civ. Code § 1782(a) before May 11, 2010 (Compl. at ¶ 112), but expressly altered this allegation in the FAC and now claim they mailed their notice on June 25, 2010 (FAC at ¶ 138), nearly a month after filing suit. [2]

## III.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.   The Legal Standard.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  When evaluating a Rule 12(b)(6) motion, a court must accept all well-pled factual allegations as true, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 530 U.S. 544, 554−55 (2007).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Id*. at 554−55 (citations and edit marks omitted).  Further, a court may consider any document attached to or referred to in the complaint.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  Matters of judicial notice may be considered along with the complaint without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

---

[2] For the Court's convenience, Gruma attaches a redline comparison of the Complaint against the FAC.  *See* Declaration of Kalia Petmecky ("Petmecky Decl.") at Exh. 3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Plaintiffs' Claims as to *Trans* Fat and Cholesterol Disclosures Are Pre-empted by FDA Regulations.**

Congress has authorized the FDA to regulate food labels.  *See* 21 U.S.C. § 343(a); 21 C.F.R. § 101 (2009).  The question of preemption accordingly arises as to Plaintiffs' claims that Gruma's disclosure of *trans* fat and cholesterol levels, as mandated by the FDA, can violate California state laws.

Preemption can arise under the Supremacy Clause in three circumstances. First, Congress can define explicitly the extent to which its enactments preempt state law. . . .  Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.  Such an intent may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Finally, state law is preempted to the extent that it actually conflicts with federal law.  Thus, the Court has found preemption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*English v. Gen. Elec. Co.*, 496 U. S. 72, 78-79 (1990) (citations omitted).

Here, federal law expressly forbids contrary state regulation.  Alternatively, even if there were not express preemption, Plaintiffs' state law claims conflict with federal law and would be preempted. [3]

---

[3] Plaintiffs did not allege that the *trans* fat content in the two products exceed the FDA threshold for reporting *trans* fat as 0 grams per serving.  The FDA requires listing *trans* fat at 0 grams if the *trans* fat content is below 0.5 grams per serving.  Because Plaintiffs present no proof that the *trans* fat levels are exceeded, they cannot truthfully allege under F.R.Civ.P. Rule 11 that Gruma has exceeded those levels.

4

1

### 1.   Express Preemption

2        The Nutrition Labeling and Education Act of 1990 (NLEA), Pub. L. No. 101-535,

3   §§ 2-3, 104 Stat. 2353, 2353-61 (1990) (codified as amended at 21 U.S.C. §§ 343, 343-

4   1), amended the Federal Food, Drug, and Cosmetic Act (FD&C Act) to provide FDA

5   with specific authority to require nutrition labeling of most foods regulated by the

6   Agency.  The NLEA mandates a comprehensive scheme for nutrition labeling and

7   provides for express Federal preemption.  Specifically, a food shall be deemed to be

8   misbranded unless its labeling bears nutrition information that provides the amount of

9   the following nutrients:  total fat, saturated fat, cholesterol, *trans* fat, sodium, total

10  carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained

11  in each serving size or other unit of measure.  21 U.S.C. § 343(q) (2010).[4]  Where a

12  manufacturer chooses to list levels of *trans* fat and cholesterol it has no choice but to

13  comply with the FDA's regulations.  (*See* Petmecky Decl. ¶ 2, Exh. 1-2)

14       Section 403A of the FD&C Act contains an express preemption provision: "no

15  State or political subdivision of a State may directly *or indirectly* establish under any

16  authority or continue in effect as to any food in interstate commerce" certain food

17  labeling requirements, unless an exemption is provided by the Secretary (and, by

18  delegation, FDA).  21 U.S.C. § 343-1(a)(italics added).  Most relevant here is the

19  prohibition that States and political subdivisions may not adopt "any requirement for

20  nutrition labeling of food that is not identical to the requirement of [21 U.S.C.] §

21  343(q)."  *Id.* § 343-1(a)(4).  Furthermore, in its final rule on *trans* fat, the FDA

22  determined that **"States are preempted from imposing any nutritional labeling**

23  **requirements for *trans* fat that are not identical to those required by this rule."**[5]

24  _____

[4] In 2003, FDA published a final rule that, effective January 1, 2006, added trans fatty

25  acids to the list of items to be declared in the nutrition facts box.  68 Fed. Reg. 41433

    (July 11, 2003).

26

[5] 68 Fed. Reg. 41433, 41498 (July 11, 2003)(emphasis added).  California has statutory labeling

27  requirements which are essentially identical to federal law.  Cal. Health & Safety Code §

    110665.

28

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and
12(b)(6)); Memorandum of Points and Authorities in Support Thereof

The FDA mandates that the amount of *trans* fat and cholesterol be included in the nutrition facts disclosed on a product label.  A statement of the number of grams of *trans* fat per serving must be included and expressed as grams per serving to the nearest 0.5-gram increment.  21 C.F.R. § 101.9(c)(2)(ii).  However, if the serving contains less than 0.5 grams of *trans* fat, then FDA requires that the content, when declared, **must** be expressed as zero.  *Id.* ("If the serving contains less than 0.5 gram [of *trans* fat], the content, when declared, *shall be expressed* as zero") (italics added.)  Thus, in order to comply with FDA's regulations, Gruma, as a marketer of packaged food products, is required to declare the content of *trans* fat as "zero" when the amount is below 0.5 grams per serving, which is exactly what Gruma did.

A statement of the *cholesterol* content in a serving expressed in milligrams to the nearest 5-milligram increment is also mandated by FDA regulation.  21 C.F.R. §101.9(c)(3).   FDA provides that if the serving contains less than 2 milligrams of cholesterol, any numeric disclosure of cholesterol level be expressed as "zero."  *Id.* ("[P]roducts that contain less than 2 milligrams cholesterol in a serving . . . may state the cholesterol content as zero.").  As such, Gruma is required, in order to comply with the FDA's regulations as a marketer of packaged food products, to state in any numeric disclosure the content of cholesterol falling below 2 milligrams per serving as zero.  The FD&C Act also provides that a product is mislabeled unless all cholesterol claims on its label are consistent with the FDA regulations.  21 U.S.C. § 343(r)(2)(A)(i) (2004).

The FDA also requires that any statement of *trans* fat or cholesterol on the label be consistent with the nutrition facts disclosures.  21 C.F.R. § 101.13(i).  To the extent Plaintiffs' claims are based on an alleged failure to report on the label the per serving amounts of *trans* fat less than 0.5 grams, or of cholesterol less than 2 milligrams, or to list cholesterol at all, such claims are expressly preempted.  21 U.S.C. § 343-1(a)(4); 68 Fed. Reg. 41433, 41498 ("States are preempted from imposing any nutritional labeling requirements for *trans* fat that are not identical to those required by this rule.").

## 2. Conflict Preemption

Plaintiffs imply that *any* amount of *trans* fat or cholesterol, even if less than the FDA-specified *de minimis* levels, must be disclosed under state law.  (FAC. at ¶¶ 71, 78-80.)  State law is preempted "where it is impossible for a private party to comply with both state and federal requirements."  *English*, 496 U.S. at 79.  Because it would be impossible to comply with both federal law and Plaintiffs' theory of disclosure of *de minimis amounts*, Plaintiffs' claims are preempted, and must be dismissed.  *See Mills v. Giant of Maryland, LLC,* 441 F. Supp. 2d 104, 108 (D. D.C. 2006) (plaintiffs' claims for warnings on milk products beyond those specified by FDA preempted); *Fraker v. KFC Corporation*, No. 06-CV-1284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) (claims for misbranding of food products implicitly preempted by FD&C Act).

These same lawyers filed a similar case in the Northern District of California, complaining about the product "I Can't Believe It's Not Butter."  *Rosen v. Unilever United States, Inc.*, No. C 09-02563 JW, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) (Ware, J.) (unreported).   The label in *Rosen* also contained the statement "0g Trans Fat."  Judge Ware noted that the plaintiffs were not challenging the label, but stated that any attack on that statement on the "0g" statement on the product label would be barred by express preemption:

> The NLEA amendments to the [FD&C Act] include an express preemption
> provision that governs product labeling by providing that no state may
> directly or indirectly establish any requirement for the labeling of food that
> is not identical to the requirements of Section 343(q) [of Title 21].  . . .
> Plaintiff's allegations avoid preemption because they are not directed at the
> "0g Trans Fat" statement or at any other statement on the label that is
> regulated by the NLEA. . . .   Plaintiffs claims are based on advertisements
> that are independent of the product label.

*Id.* at *7-10.  Judge Ware went on to dismiss the plaintiff's claim as being illogical under *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).  In this case, Plaintiffs attack

7

the "0g Trans Fat" and "0g Cholesterol" statements, and seek to impose a labeling requirement "that is not identical to the requirements of Section 343(q)," *Rosen*, 2010 U.S. Dist. LEXIS 43797, at *7.  Federal law preempts their claims.

### C.    The Challenged Statements as to "The Authentic Tradition" and "All Natural" Are Non-Actionable Puffery.

A product's label violates consumer protection laws only if it is likely to deceive a reasonable consumer.[6] *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 1360 (2003); *see also In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) (to state a claim under the California UCL or FAL, a plaintiff must "show that members of the public are likely to be deceived.")  As general statements of opinion, "mere puffery" is not actionable and consumers are unlikely to rely it.  *Cook Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 245 (9th Cir. 1990); *see also Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, No. 04-CV-8413-AHM, 2007 WL 4105571, at *3 (C.D. Cal. Apr. 27, 2007).

Judges may rule that an advertisement is not likely to deceive consumers as a matter of law if the advertising itself supplies the primary evidence.  *See State Bd. of Funeral Directors & Embalmers v. Mortuary in Westminster Memorial Park*, 271 Cal.App.2d 638, 642 (1969) (two separately owned and operated corporations—one a mortuary, the other a cemetery—did not mislead the public as a matter of law by conducting a joint advertising campaign); *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) (where there is no dispute in the evidence, the finding of the trial court that the advertisements are not deceptive or misleading amounts to a conclusion of law.").

---

[6] Courts have defined a reasonable consumer as "the ordinary consumer acting reasonably under the circumstances" who is "not versed in the art of inspecting and judging a product…."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).  Whether the advertisement would mislead or deceive reasonable consumer is a question of law.  *See id.* ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law.").

Courts should resolve whether an allegedly false or misleading statement is puffery on a motion to dismiss. *See Cook*, 911 F.2d at 245.

Puffery exists when a statement asserts general rather than factual superiority. *Cook*, 911 F.2d at 245. Courts commonly rule that statements which are either too general or too subjective for a reasonable consumer to rely on are puffery: "Advertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id*. at 246 (internal alteration and citations omitted); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" was puffery because it was not a specific and measurable claim). If a statement is "incapable of objective verification," then it cannot be expected to induce reasonable consumer reliance. *See Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996).

Other statements that courts have held to be non-actionable puffery include:

- "Fruit flavored" (with fruits pictured on the label), *McKinnis v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007)(this is like the "Guacamole Flavored Dip" at issue here).

- "America's Favorite Pasta," both standing alone and in the context of other statements, including the company's logo, "Quality Since 1867," *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391-94 (8th Cir. 2004);

- That a particular drug is "promising," *In re Actimmune Mktng. Litig.*, 08-CV-02376-MHP, 2009 WL 3740648, at *12 (N.D. Cal. Nov. 6, 2009);

- "High quality," *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1008 (7th Cir. 2004);

- "Perform[s] . . . flawlessly," *Wilson v. Hewlett-Packard, Inc.*, No. 09-CV-2253-RMW, 2009 WL3021240, at *2 (N.D. Cal. Sept. 17, 2009);

- "Superior User Experience," *Wolph v. Acer Am. Corp.*, No. 09-CV-1314-JSW, 2009 WL 2969467, at *2 (N.D. Cal. Sept. 14, 2009);

Simply put, "[t]he distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009) (holding that Apple's claim that its monitor supports "millions of colors" was non-actionable puffery).

The phrase "The Authentic Tradition™" within the Mission brand logo and the phrase "All Natural" are non-actionable puffery.

> 1. <u>"The Authentic Tradition" Is Merely a Part of the Trademarked Mission Logo, Not Part of the Product Description, and Has No Likelihood to Mislead Reasonable Consumers.</u>

The overall impression of an advertisement provides the best evidence of whether its message is likely to deceive reasonable consumers. *See, e.g.*, *F.T.C. v. Gill*, 71 F.Supp.2d 1030, 1043 (C.D. Cal. 1999); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) (the primary evidence in a false advertising case is the advertising itself). The statement "The Authentic Tradition™" appears in tiny type above the mission bell in the Mission trademarked logo. (*See* photograph, FAC at ¶¶ 70, 77). The small "TM" after the phrase "The Authentic Tradition" clearly denotes that the words are part of the Mission trademark. The phrase "The Authentic Tradition" does not appear as part of the product description. (FAC at ¶ 71.) The complaint's photograph of the Spicy Bean Dip label further confirms the phrase is a part of the trademark. (FAC at ¶ 77.) The label for Mission's Guacamole Flavored Dip does not claim anywhere that the product conforms to some undefined authentic tradition. (*See* Petmecky Decl. ¶ 2, Exh. 1.)

Plaintiffs' misrepresent the overall impression of the label for Mission's "Guacamole Flavored Dip" by fabricating a statement that does not appear as stated anywhere on the label. Plaintiffs contend that "Mission Guacamole claims on its label that it is 'Guacamole' made in 'The Authentic Tradition'". (FAC at ¶ 73.) In fact, as

10

1  shown in the photograph, "The Authentic Tradition™" is a banner in small type above

2  the Mission logo, not a description of the product which is specified elsewhere on the

3  label.  (*See* FAC at ¶ ¶ 70, 77.)  Plaintiffs compound the misrepresentation by falsely

4  describing the product as "Guacamole" and "Mission Guacamole" rather than

5  "Guacamole Flavored Dip" as shown on the label.  *Id.*  Plaintiffs try to create a

6  misleading impression different from what a consumer would have when buying the

7  product.

8      Even if "The Authentic Tradition" were a description of the Guacamole Flavored

9  Dip, which it was not, the phrase would be general non-actionable puffery.  Neither

10 "authentic" nor "tradition" says anything specific about what is in the product or how it

11 is prepared.  Plaintiffs have pointed to nothing which would indicate how a company

12 which has an "authentic tradition" would prepare a guacamole *flavored* dip.  Plaintiffs'

13 attempt to establish objectivity by quoting a *single* recipe for "authentic guacamole."

14 One recipe for "guacamole," however, cannot adequately represent the breadth of what

15 might constitute the full range of recipes for guacamole, much less what one would

16 expect to find in a guacamole "flavored" dip.  Moreover, the label clearly lists the

17 specific ingredients used in the dip for anyone to read, which rebuts the plaintiffs' claim.

18     The phrase "The Authentic Tradition" is therefore non-actionable because it is a

19 general trademark slogan and says nothing specific about how Guacamole Flavored Dip

20 is made.  *See Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391-94 (8th

21 Cir. 2004) (the trademarked "Quality Since 1867" is non-actionable puffery); *McKinnis*

22 *v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *5 (C.D. Cal.

23 Sept. 4, 2007)("fruit flavored" drink with little or no fruit is non-actionable puffery,

24 despite pictures of fruit on the label).

25         2.    "All Natural" Meets the Definition of Non-Actionable Puffery.

26     The FDA has recognized that the words "all natural" are ambiguous and in 1992

27 declined to officially define "all natural," noting "the ambiguity of the phrase" and that

28

11

Defendant Gruma Corporation's Notice and Motion to Dismiss First Amended Complaint (Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); Memorandum of Points and Authorities in Support Thereof

"consumers regard many uses of this term as noninformative."[7]  Recent court decisions reflect the FDA's current policy.  *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340−41 (3rd Cir. 2009), cited in *Von Koenig v. Snapple Beverage Corp.*, No. 2:09-CV-00606 FCD EFB, 2010 WL 1980208, at *6 (E.D. Cal. May 10, 2010).

A vague, ambiguous term which has "many uses" should fall under the definition of puffery set forth in *Cook*.  911 F.2d at 246.  Such a statement cannot be objectively verified.  In *Consumer Advocates v. Echostar Satellite Corp.*, the court dismissed claims against a satellite television system for advertising "crystal clear" video and "CD-quality" audio.  *Echostar*, 113 Cal.App.4th at 1361.  The court reasoned such claims amounted to "meaningless superlatives" that could not be reasonably verified against any objective standard.  *Id.* ("After all, how clear is any given crystal?  How good are the speakers on the CD player?").  Similarly, the phrase "all natural" relies on the consumer's subjective understanding of the word "natural."  To some consumers, the word might mean "minimally processed" and to others it might mean "derived from nature" or any other variety of other meanings.  Like a claim of "crystal clear" video, "all natural" appeals to the subjective judgment of consumers, but it cannot be objectively verified or refuted.  The analogous statements in *Echostar* demonstrate "all natural" is subjective enough to be puffery as a matter of law, especially when the FDA also declined officially to define "all natural," noting its inherent "ambiguity."

Cases addressing advertisements using the word "natural" have reached similar conclusions.  *Basic Research, LLC v. Cytodyne Techs., Inc.*, No. 2:99-CS-343K, 2000 WL 33363261, at *9 (D. Utah Dec. 20, 2000); *McKinnis v. Kellogg USA*, No. 07-CV-2611-ABC, 2007 WL 4766060, at*3-4 (C.D. Cal., Sept. 19, 2007).

---

[7]  Food Labeling, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).  The FDA has informally defined the phrase to mean that "nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there." 58 Fed.Reg. at 2,407, cited in *Von Koenig v. Snapple Beverage Corp.,* No. 2:09-CV-00606 FCD EFB, 2010 WL 1980208, at *6 (E.D. Cal. May 10, 2010).  This definition, however, provides little guidance to the consumer because it is unofficial and based on the subjectivity of "normal expectations."

**D.      The Statements "Guacamole Flavored" and "With Garden Vegetables," Truthfully Describe Product Content and Therefore Are Not Actionable.**

If an advertisement is truthful or nondeceptive on its face, its likelihood of deceiving reasonable consumers becomes a question of law.  *See State Board of Funeral Directors & Embalmers*, 271 Cal.App.2d at 642; *Freeman*, 68 F.3d at 288.  Plaintiffs rely on the wording of the labels shown in the FAC  to allege deception.  Thus, this court may determine the invalidity of such a claim as a matter of law by looking at each of the labels as a whole.  *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008) (citing *Freeman*, 68 F.3d at 288−89).  If the content of the labels themselves disprove Plaintiffs' claims, the Court may dismiss them.

1.      "Guacamole" Appears in the Phrase "Guacamole Flavored Dip," Which Accurately Describes the Product.

A photograph of the label for Mission "Guacamole Flavored Dip" is shown in the FAC.  (FAC at ¶ 70.)  Ingredients listed on the nutrition label also appearing on the same can include tomatoes, onions, salt, lemon juice, and avocado powder.  (Petmecky Decl. ¶ 2, Exh. 1.)  Even according to the Plaintiffs' recipe, although in different proportions, these elements combine to produce basic guacamole *flavor.*  (FAC at ¶ 75.)  The "flavored dip" label simply describes the characterizing flavor of guacamole which is not misleading, *inter alia*, because "[a] reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list."  *McKinnis v. General Mills,* CV 07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107 *13 (C.D. Cal. 2007) (dismissing claim that "Natural Fruit Flavors" misled consumers where cereal did not contain any real fruit).  Plaintiffs' claims against the statement "Guacamole Flavored Dip" should be dismissed because the full product name and the list of ingredients demonstrate that the label is truthful and not misleading.

2.   <u>"With Garden Vegetables" Accurately Describes Ingredients in the Mission Guacamole Flavored Dip.</u>

The ingredients listed on the Guacamole Flavored Dip label include vegetables. Contrary to Plaintiffs' claim that the product contains "virtually no vegetables," the fourth most prominent ingredient listed is "concentrated crushed tomatoes."  Avocado powder, dehydrated onion, garlic powder, and bell pepper also appear in the list. (Petmecky Decl. ¶ 2, Exh. 1.)  Viewing the label as a whole, the statement "With Garden Vegetables" reflects the truth that the product in fact contains garden vegetables, as all of the listed vegetables can be grown in a "garden."  The statement does not imply that the dip is *predominantly* vegetables, but simply that garden vegetables are included in the ingredients.  A "reasonable consumer who makes even a cursory review of the products labels at issue here" would find the list of garden vegetables in the dip describing their relative portions and would not be deceived as a matter of law. *McKinnis v. Sunny Delight Beverages Co.*, CV 07-02034-RGK (JCx), 2007 U.S. Dist. LEXIS 96108, *12 (C.D. Cal. 2007) (dismissing claim that depiction of fruit on drink label misled consumers where label truthfully said product contained 2% or less of fruit juice).  Plaintiffs' claims against the statement "With Garden Vegetables" should be dismissed because the ingredients label shows the statement is true.

**E.     Plaintiffs' First Amended Complaint Fails to State a Damages Claim Under the CLRA Because Plaintiffs Did Not Provide the Required Pre-Suit Notice.**

The CLRA requires a plaintiff to deliver the defendant written notice identifying the alleged violations of the CLRA and demanding that the defendant remedy the alleged violations at least thirty days <u>prior</u> to suing for damages.  CAL. CIV. CODE § 1782(a).  This notice must be delivered by certified or registered mail, return receipt requested.  *Id.*  The plaintiff must comply with this requirement in order to state a claim; otherwise, the claim should be dismissed.  *Cattie v. Wal-Mart Stores, Inc.*, 504

14

F.Supp.2d 939, 949-50 (S.D.Cal. 2007); *Saitsky v. DirecTV, Inc.*, No. 2:08-CV-7918-AHM-CW, slip op. at 10-13 (C.D. Cal. Sept. 22, 2009) (Matz, J.).

Section 1782(d) allows a plaintiff to bring an action without complying with the notice requirement if an action seeks only injunctive relief.  Plaintiffs' CLRA claim however, has always sought both damages and injunctive relief from the start.  (*See* reference to "restitution," Compl. at ¶ 111; FAC at ¶ 133.)  In both their original and current "Prayer for Relief," Plaintiffs requests monetary damages in the form of restoration "of all funds acquired" and interest specifically for any violations of the CLRA and also request monetary damages for disgorgement, costs, expenses, and reasonable attorneys' fees without limiting those damages to any particular cause of action.  (Compl. at pp. 24-25; FAC at pp. 29-30.)  *See Saitsky, supra.,* No. 2:08-CV-7918-AHM-CW, slip op. at 10-13 (considering damage allegations in the "Prayer for Relief").  Restitution is a form of damages, not injunctive relief, and presuit notice must be given to bring those claims.  *E.g.*, *Shein v. Canon USA, Inc.*, No. 08-CV-7323-CAS, 2009 WL 1774287, at *8 (C.D. Cal. June 22, 2009) (Snyder, J.) (treating claim for restitution as something other than a request for injunctive relief); *Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167-DMS (AJB), 2008 WL 5216255, at *16-17 (S.D. Cal. Aug. 11, 2008) (Sabraw, J.) (holding that pre-suit "notice requirement applies to monetary damages, regardless of whether such damages are calculated based upon the unjust enrichment of Defendant or the Plaintiffs' loss.")  Plaintiffs have sought damages for CLRA claims from the start.

Plaintiffs' Complaint failed to allege proper service of notice.  (Compl. at ¶ 112; Cal. Civ. Code § 1782(a); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d, 1285, 1303-04 (S.D. Cal. 2003) (the notice requirement in section 1782(a) must be strictly applied).  After Gruma's counsel pointed out these deficiencies in its Rule 12 motion, Plaintiffs admitted in the FAC that they mailed the required notice on June 25, 2010 – long after filing the original suit.  (FAC at ¶ 137-138.)

Plaintiffs cannot remedy their failure to give *pre-suit* notice by giving notice after suit was filed.  *See Cattie*, 504 F. Supp. 2d at 950 ("Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement.").  The CLRA claim for damages should be dismissed, with prejudice, *see Cattie*, 504 F. Supp. 2d at 949-50; *Saitsky*, No. 2:08-CV-7918-AHM-CW, slip op. at 10-13, or alternatively without prejudice, *see Morgan v. AT&T Wireless*, 177 Cal. App. 4th 1235, 1261 (2009).

### F.       California's UCL, FAL, and CLRA Claims Do Not Apply Extraterritorially to Non-California Residents Who Were Allegedly Harmed in States Other Than California.

If any of Plaintiffs' state law claims survive this motion, those claims would not apply to consumers outside California.  *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ("*Shutts*"); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 217 (1999) ("*Norwest*").  California's consumer laws only regulate conduct occurring in California.  *Norwest*, 72 Cal. App. 4th at 222, 228 (1999) ("[T]he Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state").

As a matter of constitutional law, a court may not apply the substantive law of a state to non-residents unless Plaintiffs show that the state has "a 'significant contact or aggregation of contacts' to the claims asserted by *each member* of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [state] law is not arbitrary or unfair."  *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (quoting *Shutts*, 472 U.S. at 821-22) (emphasis added).  Otherwise, Plaintiffs could shop for the one state out of 50 with laws most favorable to them and then urge application of such unfavorable laws to sellers and citizens of the other 49.

In *Norwest*, the defendant California corporation maintained its principal place of business in Iowa.  *Id.*  Plaintiffs asserted a nationwide class of individuals allegedly forced to buy mortgage insurance.  *Id.* at 219-20.  The court of appeals reversed

16

certification of a nationwide class of *non-residents* allegedly harmed by conduct *originating outside of the state. Id.* at 225, n. 13.  The court held that the UCL could not be used by non-resident plaintiffs to regulate conduct unconnected to California because such a claim "would be arbitrary and unfair and transgress due process limitations" as a matter of law. *Id*. at 227; *see also Meridian Project Systems, Inc. v. Hardin Construction Co., LLC,* 404 F. Supp. 2d 1214, 1225-26 (2005) (dismissing UCL claim based on a Canadian company's conduct in Illinois).

To determine if a single state's law may apply to a nationwide class of non-residents, a critical constitutional factor under *Shutts* and *Norwest* is the location from which the alleged misconduct "emanated."  In *Norwest*, the court held that it was the conduct of loan servicing officers in states such as Iowa, Georgia, and North Carolina that "caused" the alleged injuries of the non-Californian plaintiffs.  Accordingly, California's UCL could not apply to non-California putative class members allegedly harmed by the non-California conduct. *Norwest*, 72 Cal. App. 4th at 218, 222-28.

Plaintiffs fail to allege the prerequisites for a national class.  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  A pleader must provide some factual allegations to make a claim "plausible;" merely speculative allegations are insufficient. *Twombly*, 530 U.S. at 556-57.  Plaintiffs correctly acknowledge that Gruma is a Nevada Corporation.  (FAC at ¶ 13.)  Plaintiffs, however, aver without any basis whatsoever, that Gruma's principal place of business is in California.  As shown clearly in the official records of the State of Nevada, Gruma's principal place of business is in Irving, Texas.  (Gruma's Request for Judicial Notice, filed on July 15, Docket No. 12, at ¶ 6).  A court may properly take judicial notice of a company's principal place of business. *Caffery v. New York Cent. R. Co.,* 324 F. 2d 711, 712 (2d Cir. 1963) (taking judicial notice of company's state of incorporation and principal place of business).  It is also evident from the labels which

Plaintiffs include in their complaint that Gruma is headquartered in Irving, Texas, not California.  (Petmecky Dec. ¶ 2).[7]  There is no reference to California on either label.[8]

Plaintiffs assert a purported "Unfair Competition Law" class of nationwide non-residents.  (FAC at ¶ 96.)  Thus, the vast majority of purported class members reside in the other 49 states and allegedly purchased Gruma's products in states other than California, for their "own use."  *Id.*  Plaintiffs fail to allege that these non-California consumers have any connection to California.  *See generally* FAC.  Importantly, the FAC fails to allege that any of the purported misconduct "emanated from" California.  *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (sales to California residents insufficient to establish a nexus with residents of other states).  Plaintiffs merely allege that they "suffered injuries as a result of Defendants' acts in this district . . . ."  (FAC at ¶ 3.)  That is not enough.  In *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, the court dismissed the plaintiff's UCL claim under *Norwest* despite plaintiff's similar allegation that "many of the acts taken in furtherance of the conspiracy . . . took place in California."  405 F. Supp. 2d 1141, 1147 (C.D. Cal. 2005).  Much more is needed to avoid the *Norwest* limitations.

Accordingly, the claims of non-resident putative class members should be dismissed with prejudice.  In addition, the allegations relating to a nationwide class should be stricken.  *See Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (dismissing UCL claim under *Norwest* for lack of duty to nonresident plaintiffs).[9]

---

[7] With no centralized 'emanating' event "*Shutts* [] dictate[s] application of all the laws of the states in which any class plaintiff reside[s]."  *Schwartz v.  Upper Deck Co.*, 183 F.R.D. 672, 678 (1999).

[8] *See* Petmecky Dec. ¶ 2, Exh. 1-2 (a full copy of the Gruma product labels).  Plaintiffs include in their complaint only a partial copy of the labels at issue.  (Compl. at ¶¶ 67, 74; FAC at ¶¶ 70, 77)

[9] What is more, Plaintiffs do not allege–because they cannot–that the non-California consumers had any expectation that California law would apply to any future claim when the Plaintiffs purchased Gruma's products.  *In re Pizza Time Theatre*

### G.    Plaintiffs Have No Standing.

1.    Plaintiffs Have No Standing to Seek Injunctive Relief Because There Is No Threat of Future Injury.

A plaintiff must have Article III standing for a court to have subject matter jurisdiction.  *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision."  *Id.* (internal quotation marks omitted).  It is the plaintiff's burden to affirmatively establish Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 561 (1992).  Otherwise, the case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Standing requirements apply regardless of the form of relief the plaintiff seeks.  *Cattie*, 504 F. Supp. 2d at 951-52.  To have standing to seek injunctive relief, a plaintiff must have "a realistic threat of future injury," *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040-41 (9th Cir. 1999), and it must be likely that an injunction will prevent that injury, *Cattie*, 504 F. Supp. 2d at 951-52.

There is no threat of future injury where, as here, the Plaintiffs are now aware of the FDA requirements for label disclosures and the ingredients in Gruma's products and allege they will not purchase the products at issue in the future.  As stated in *Cattie*, "[I]t is unclear how prospective relief will redress [Plaintiff's] injury, since she is now fully aware of the linens' thread count. Furthermore, the [complaint] contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future."  504 F. Supp. 2d at 951; *Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (no injunction available where  former employee did not allege she wished to work for former employer in the future).

_____

*Securities Litigation*, 112 F.R.D. 15, 18 (N.D.Cal. 1986).  A major factor in determining fundamental fairness of applying California law is the parties' expectation.

As in *Cattie*, neither plaintiff alleges that she intends to buy either Gruma product in the future; indeed, it is hard to conclude anything but the opposite, given their newly minted health concerns.[10]   Therefore, with no likelihood of future injury to Plaintiffs, an injunction would not redress any alleged future injury and the Court should dismiss all claims for injunctive relief.[11]

2.   <u>Plaintiffs Have No Standing Because There Are No Plausible Allegations of Actual Reliance .</u>

Plaintiffs' claims require plausible pleading of actual reliance on the alleged misrepresentations.   While Plaintiffs include conclusory allegations of reliance, other allegations in the Complaint and FAC demonstrate that such general allegations are simply not plausible.

a)   *UCL Fraud and "Unlawful" Prongs Require Actual Reliance*

To have standing to sue under the UCL, a private plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE § 17204.   Actions under the UCL may be based on allegedly fraudulent or unfair and unlawful conduct.   CAL. BUS. & PROF. CODE § 17200.

The California Supreme Court recently held that the phrase "as a result of" in Section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."   *In re Tobacco II Cases*, 207 P.3d at 39; *see also Kingsbury v. U.S. Greenfiber, LLC*, No. 08-CV-00151-AHM, 2009

---

[10] The Ninth Circuit has ruled that Plaintiffs cannot avoid dismissal by arguing that a member of the class is likely to suffer a future injury.   "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin*, 199 F.3d at 1045.

[11] These include (1) Plaintiffs' claim for injunctive relief under the Unfair Competition Law, (FAC at ¶ 124); (2) Plaintiffs' claim for injunctive relief under the False Advertising Law, (FAC at ¶ 129); and (3) Plaintiffs' claim for injunctive relief under the Consumer Legal Remedies Act, (FAC at ¶ 133).

WL 2997389, at *9-10 (C.D. Cal. Sept. 14, 2009) (Matz, J.).  The plaintiff must plead that the alleged "misrepresentation or nondisclosure was an immediate cause of the injury-producing conduct . . . by showing that" without the misrepresentation "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 207 P.3d at 39 (internal quotation marks omitted). The representation must have "played a substantial part, and been a substantial factor, in influencing" the plaintiff's decision to purchase the product.  *Id.*

Although the discussion in *In re Tobacco II Cases* is limited to the standard of causation required under the fraud prong, 207 P.3d 20, 39 n.17 (Cal. 2009), when the alleged unfairness is misrepresentation and deceptive conduct, *Tobacco II's* reasoning should apply equally to suits under the unfair and unlawful prongs.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) ("A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes.").

*b)*   *FAL Violation Requires Actual Reliance.*

The standing requirements under the California False Advertising Law (the "FAL") are identical to those for standing under the UCL: the plaintiff must have "suffered injury in fact and . . . lost money or property as a result of a violation of" the FAL.  Cal. Bus. & Prof. Code § 17535; *In re Actimmune Mktng. Litig.*, No. 08-CV-02376 MHP, 2009 WL 3740648, at *15 (N.D. Cal. Nov. 6, 2009) (citing *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 819 (2007)).  If there is no standing under the UCL, there is no standing under the FAL.

*c)*   *Actual Reliance Is Required for the CLRA Claim.*

To have CLRA standing, a consumer must have "suffer[ed] … damage as a result of the use or employment … of a method" that violates the substantive provisions of the CLRA.  Cal. Civ. Code § 1780(a). "[P]laintiffs asserting CLRA claims sounding in

1    fraud must establish that they *actually relied* on the relevant" misrepresentations.

2    *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007)(italics added).

3                    d)      *There Are No Plausible Allegations of Actual Reliance.*

4            Plaintiffs base their fraud and misrepresentation allegations on five claims made

5    on the labels of Gruma's "Guacamole Flavored Dip" and Spicy Bean Dip.  In Plaintiffs'

6    original Complaint, Plaintiffs alleged reliance in a conclusory fashion (Compl. at ¶ 23)[12]

7    but other specific factual allegations of Plaintiffs' state of mind at the time of the alleged

8    purchases undermined the plausibility of their general allegations of actual reliance

9    (Compl. at ¶ ¶ 19-22, 89-90).  In response to Gruma's first motion to dismiss, filed on

10   July 15, 2010, Plaintiffs drastically modified their reliance allegations.  (FAC at ¶¶ 82-

11   95, 106-110).  The reason was simple:  as originally pled, Plaintiffs had affirmatively

12   admitted that they could not have plausibly relied on any such misrepresentations.

13   Plaintiffs cannot now contradict their previous factual admissions and pretend they

14   never filed their Complaint.  "Statements made in a pleading may be admitted against

15   the pleader as evidence in the form of judicial admissions without the introduction of

16   the pleadings."  *Janich Bros. Inc. v. American Distilling Co.*, 570 F.2d 848, 860 (9th Cir.

17   1977).  A plaintiff may not contradict its previous judicial admissions.  *Yamaha*

18   *Corporation of America v. ABC International Traders, Corp.*, 703 F. Supp. 1398, 1401-

19   02 (C.D. Cal. 1988) ("Plaintiffs may not now controvert these previously admitted

20   facts."); *Stearns v. Select Comfort Retail Corp.*, 2010 WL 2898284 (N.D. Cal. 2010);

21   *Jones v. Bayer Healthcare LLC*, 2009 WL 1186891 (N.D. Cal. 2009).  "Judicial

22   admissions . . . have the effect of withdrawing a fact from issue and dispensing wholly

23   with the need for proof of the fact."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224,

24   226 (9th Cir. 1988).  As explained below, Plaintiffs are bound by their admissions that

25   they did not rely on the Gruma labels.

26   _____

27   [12] Under Rule 12(b)(6), courts must accept all material allegations as true but are not
     required to accept "conclusory legal allegations cast in the form of factual allegations if
     those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult*
28   *Awareness Network*, 18 F.3d 752, 754−55 (9th Cir. 1994).

Plaintiffs conceded that during the time they purchased the products (from 2006 to 2010), they had absolutely no knowledge of the alleged "dangers" associated with *trans* fats. (Compl. at ¶¶ 14, 17, 19–21, 89-90.)[13]  If Plaintiffs had no knowledge of the alleged health risks associated with *trans* fat, they could not have intelligently differentiated between products or made their purchase based on representations of "*trans* fat" content.[14]  As such, they could not have actually relied on the allegedly misleading "0 g Trans Fat" statement.  Accepting Plaintiffs' alleged state of mind as true, the disclosure of "0g Trans Fat" using the FDA-mandated rounding convention for insignificant amounts could not have "played a substantial part, and been a substantial factor, in influencing" their decisions to purchase the products.  *In re Tobacco II Cases*, 207 P.3d at 39.  Plaintiffs' newly concocted and conclusory allegations of general reliance in the FAC directly contradict their prior factual admissions, and thus do not establish reliance.

As to the phrase "With Garden Vegetables," by alleging that "the product contains virtually no vegetables", Plaintiffs admit that the dip contains *some* vegetables. (Compl. at ¶ 69; FAC at ¶ 72).  As to "The Authentic Tradition" statement, this is merely a part of the company logo, not the product name or description, which is clearly titled "Guacamole Flavored Dip."

---

[13] In particular see paragraph 89, where Plaintiffs admit that they did not know that *trans* fat was harmful in any way until they stopped buying the products. (Compl. at ¶ 89) ("Plaintiffs did not discover the that Gruma's labeling of the Mission Trans Fat Products was false, deceptive, or misleading until late January 2010, when they learned that foods containing *trans* fat – such as the Mission Trans Fat Products – are harmful to human health because of their role in causing coronary heart disease, type-2 diabetes, and cancer.  Until this time, Plaintiffs lacked knowledge regarding the facts of their claims against Gruma.").  In the very next paragraph, Plaintiffs also point out that they were not familiar with any medical findings on *trans* fat's allegedly deleterious effects. (Compl. at ¶ 90)

[14] In a desperate attempt to avoid dismissal Plaintiffs *now* admit that they learned significant "facts" about *trans* fat in a meeting with their lawyer, Gregory Weston, in January 2010.  This self-serving, after-the-fact, contradictory allegation does not save their claims from their prior fatal admissions.

23

Plaintiffs' allegations that they relied on "0g Trans Fat," "With Garden Vegetables, and "The Authentic Tradition" cannot reasonably be drawn from the facts they allege.  *See, e.g., Thomas v. Sprint Solutions, Inc.*, 2010 WL 1263189, at *5 (N.D. Cal. 2010) (dismissing plaintiffs' claims for alleging potential rather than actual reliance); *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, at *6-7 (S.D. Cal. 2007) (dismissing where plaintiff admitted in the complaint that the defendant's statement would not have impacted his purchase decision).

3.    Any Injury Plaintiffs May Have Suffered Is *De Minimis.*

Any injury Plaintiffs may have suffered is *de minimis* and therefore cannot support standing.  The Ninth Circuit has recognized the doctrine of *de minimis non curat lex*—"the law does not care about trifles"—and has stated that some allegations are "too trifling of an injury to support constitutional standing."  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007).

Plaintiffs challenge statements on the labels which are clearly *de minimis*.  They focus on amounts of *trans* fat and cholesterol which fall beneath the level of significance set by the FDA.  Where a federal agency has set a minimum level of significance, that should be dispositive for the purpose of showing *de minimis* effect.  *See* Food Labeling, 58 Fed. Reg. 2079, 2094 (Jan. 6, 1993) ("A quantitative declaration other than zero would not necessarily be more correct because methodological limitations do not generally permit precise quantification of cholesterol content within the 95 percent confidence level below 2 mg amounts. It is also extremely unlikely that sufficient quantities of foods containing less than 2 mg of cholesterol per serving would be consumed on a daily basis to represent a significant level of cholesterol intake.").

Plaintiffs challenge the statements "The Authentic Tradition," "Guacamole" flavored, "With Garden Vegetables," and "All Natural" claiming they are not specific enough, even though the nutritional tables on the labels set forth the ingredients in very specific detail.  Given the limited space on product labels, a complaint that such general

phrases do not repeat information already laid out in the ingredients list raises no legally significant claim.  *See McKinnis v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("Nutritional labels have long been required on food products and are familiar to almost every reasonable consumer").

Plaintiffs have alleged no actual injury beyond the purchase of products that they in fact consumed.  Further, Plaintiffs only allege they purchased a total of 10 of these products each year between them.  (FAC. at ¶¶ 18, 21.)  Plaintiffs are merely looking for some type of refund for food which Plaintiffs ate years ago without complaint and without any claim of actual injury.  This type of claim about the need for redundant verbiage and unrounded minuscule numbers on product labels is legally insufficient, commercially impractical, and should not support standing.

### H.   The Remedy of Disgorgement Is Improper.

Disgorgement is not an authorized remedy for any of Plaintiffs' claims.  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (holding that disgorgement, to the extent it exceeds restitution, is not recoverable under the UCL); CAL. BUS. & PROF. CODE § 17203 (UCL); CAL. BUS. & PROF. CODE § 17535 (FAL); *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 715 n. 10 (Cal. 2000) ("The restitutionary remedies of section 17203 and 17535, on which section 17203 is patterned, are identical and are construed in the same manner.").  The Court should dismiss Plaintiffs' claims for restitution and disgorgement damages.

## IV.   <u>CONCLUSION.</u>

Gruma asks the Court to dismiss the FAC under Rules 12(b)(1) and 12(b)(6), without leave to amend.  Plaintiffs have had their chance at amendment and failed.

Dated:  August 9, 2010

AKIN GUMP STRAUSS HAUER & FELD LLP

By_____/s/R.D. Kirwan_____
R.D. Kirwan
Attorneys for Defendant GRUMA CORPORATION