1

**THE WESTON FIRM**

2

GREGORY S. WESTON (239944)
JACK FITZGERALD (257370)

3

888 Turquoise Street
San Diego, CA 92109

4

Telephone:  858 488 1672

5

Facsimile:   480 247 4553
greg@westonfirm.com

6

jack@westonfirm.com

7

8

Counsel for Plaintiffs

9

10

**UNITED STATES DISTRICT COURT**

11

**CENTRAL DISTRICT OF CALIFORNIA**

12

13

14

MARY HENDERSON and EILEEN
JOY PEVIANI, on behalf of

15

themselves and all others similarly
situated,

16

17

Plaintiffs,

18

v.

19

GRUMA CORPORATION and

20

GRUMA S.A.B. de C.V.,

21

22

Defendants.

23

24

Case No.: 2:10-cv-04173 AHM
(AJWx)
Pleading Type:    Class Action
Action Filed:    June 4, 2010

**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO GRUMA
CORPORATION'S MOTION TO
DISMISS**

The Honorable A. Howard Matz

Date:          September 13, 2010
Time:          10:00 a.m.
Courtroom:     14

25

26

27

28

1

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  FACTS & BACKGROUND ..................................................................2

    A.    Gruma's Deceptive Front-Label Statements...................................2

    B.    The FDA Separately Regulates The Nutrition Facts Box And Front-Label Statements ........................................................................3

III.  ARGUMENT ......................................................................................7

    A.    Plaintiffs' Claims Are Not Preempted ..........................................7

        1.  There Is No Express Preemption ....................................................8

        2.  There Is No Conflict Preemption.....................................................9

    B.    Plaintiffs' Claims Are Actionable Under The Reasonable Consumer Standard ......................................................................................10

        1.  Gruma's Statements Are Not Puffery....................................13

        2.  Gruma's Statements Are Not Subject To Dismissal As Purportedly "True" ..........................................................................................15

    C.    Plaintiffs Met The CLRA's Pre-Suit Notice Requirements ...............16

    D.    California Law Presumptively Applies To Out-Of-Staters ................17

    E.    Plaintiffs Have Standing ..............................................................18

        1.  Plaintiffs Adequately Plead Reliance ..........................................18

        2.  Plaintiffs Have Standing To Seek Injunctive Relief.....................22

        3.  Plaintiffs' Claims Should Not Be Dismissed As *De Minimis* .......24

    F.    Restitutionary Disgorgement is Proper................................................25

IV.  CONCLUSION...................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern, Inc.*, 421 F.3d 981 (9th Cir. 2005) ........................................................................16

*Bank of West v. Superior Court*, 2 Cal. 4th 1254 (1992) ...........................11

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)...........................8, 9

*Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104 (E.D. Cal. 2009) ...........16

*Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 31350 (E.D. Cal. 2007) ....19

*Brockey v. Moore*, 107 Cal. App. 4th 86 (2003) .......................................11

*Bronco Wine Co. v. Jolly*, 33 Cal. 4th 943 (2004) ......................................7

*Buckland v. Threshold Enters. Ltd.*, 155 Cal. App. 4th 798 (2007)..............11, 19

*Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 47161 (S.D. Cal. May 13, 2010)........................................................................21

*Carus Chem. Co. v. EPA*, 395 F.3d 434 (D.C. Cir. 2005)............................6

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007).................24

*Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359 (9th Cir. 2009) ...23

*Chavez v. Blue Sky Natural Beverage Co.*, No. C 06-6609, 2010 U.S. Dist. LEXIS 60554 (N.D. Cal. June 18, 2010) ..............................10, 19

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987)...........................18

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006)...............11

*Committee on Children's Television, Inc. v. General Food Corp.*, 35 Cal. 3d 197 (1983).....................................................................11, 23

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998) ..........................11, 16

*Diamond Multimedia Systems, Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999)........18

*Duncan v. Walker*, 533 U.S. 167 (2001) ......................................................6

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990)............................................9

*Ford v. Hotwire, Inc.*, No. 07-CV-1312, 2008 U.S. Dist. LEXIS 108584 (S.D. Cal. Feb. 25, 2008) .................................................................19, 21

*Fortyune v. American Multi-Cinema, Inc.*, No. CV01-05551, 2002 U.S. Dist. LEXIS 27960 (C.D. Cal. Oct. 22, 2002) ....................................24

ii

*Franklin Fueling Sys. v. Veeder-Root Co.*, No. S-09-580, 2009 U.S. Dist. LEXIS 72953 (E.D. Cal. Aug. 11, 2009) ................................................................. 13, 16

*Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003) ..... 14

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ............................................................. 9

*Hitt v. Arizona Beverage Co., LLC*, No. 08cv809, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009) ............................................................................... 14

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009) ................... 9, 10, 14

*In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 148 (2010) .................. 19

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .............................. 10, 19, 23

*Janti v. Encore Capital Group, Inc.*, No. 09CV1969, 2010 U.S. Dist. LEXIS 78199 (S.D. Cal. Aug. 3, 2010) ............................................................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ................. 25

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) ....... 11

*Lockwood v. Conagra*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) ..................... 10, 14

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) .................... 11

*McKinnis v. General Mills, Inc.*, No. CV 07-2521, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) ..................................................................... 10, 15

*McKinnis v. Kellogg USA*, No. CV 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) .................................................................................................... 12

*McKinniss v. Sunny Delight*, No. 07-cv-2034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...................................................................................................... 12

*Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104 (D. D.C. 2006) ..................... 9, 10

*Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 (2009) ............. 16

*N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health*, 556 F.3d 114 (2d Cir. 2009) ...... 6

*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007) .............................................................................................. 6

*Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008) ................ 13

*Parr v. L&L Drive-Inn Rest.*, 96 F. Supp. 2d 1065 (D. Haw. 2000) ...................... 24

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................... 18

*Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009) ............................................................................... 11

*Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758 (S.D. Cal. 2009) ........ 23

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) .............................23

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) .......................................19

*Von Koenig v. Snapple Beverage Corp.*, No. 09-cv-606, 2010 U.S. Dist. LEXIS 55987 (E.D. Cal. May 7, 2010) ......................................................14, 24

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007) ................22

*Ward v. IPEX*, Inc., No. CV 08-6370, 2009 U.S. Dist. LEXIS 11040 (C.D. Cal. Feb. 4, 2009) ...............................................................................21

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009).........................................19

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).........................passim

*Wright v. General Mills*, No. 08cv1532, 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009)................................................................................14

*Yumul v. Smart Balance, Inc.*, No. CV 10-00927 (C.D. Cal., May 24, 2010) ...........................................................................................11, 12, 14

## **Statutes**

21 U.S.C. § 337(a) ...............................................................................................7

21 U.S.C. § 343.....................................................................................................3

21 U.S.C. § 343(q).................................................................................................4

21 U.S.C. § 343(q)(1).............................................................................................4

21 U.S.C. § 343(r)(1)..............................................................................................4

21 U.S.C. § 343-1 ..............................................................................................5, 10

21 U.S.C. § 343-1(a)(4)..........................................................................................5

21 U.S.C. § 343-1(a)(5)..........................................................................................5

7 U.S.C. § 136(q)(1)(a)...........................................................................................9

7 U.S.C. § 136v(b)..................................................................................................9

Cal. Bus. & Prof. Code § 17535 .........................................................................19

Cal. Civ. Code § 1782(a) .....................................................................................17

Cal. Civ. Code §§ 1780(a)(1) ..............................................................................17

Cal. Civ. Code §§ 1780(a)(3) ..............................................................................17

Cal. Civ. Code §§ 1780(a)(4) ..............................................................................17

Pub. L. No. 101-535, 104 Stat. 2353 (Nov. 8 1990) ...........................................3

iv

## **Other Authorities**

60 F.R. 57120 (Nov. 13, 1995) ................................................................. 7

64 F.R. 62746 (Nov. 17, 1999) ................................................................. 4

64 F.R. 62746, at 62758 (Nov. 17, 1999) ................................................ 4

68 F.R. 41433 (July 11, 2003) .................................................................. 4

68 F.R. 41433, at 41436 (July 11, 2003) .................................................. 4


## **Rules**

Fed. R. Civ. P. 8(e) ................................................................................. 21


## **Regulations**

21 C.F.R. § 101, Subpart D ...................................................................... 5

21 C.F.R. § 101.13 .................................................................................. 8

21 C.F.R. § 101.13(b) ........................................................................... 5, 8

21 C.F.R. § 101.13(b)(1) .......................................................................... 4

21 C.F.R. § 101.13(c) .............................................................................. 6

21 C.F.R. § 101.62(a)(2) .......................................................................... 5

21 C.F.R. § 101.9 .................................................................................... 4

21 C.F.R. § 101.9(c) ................................................................................ 4

21 C.F.R. §§ 101.9(c)(2)(ii) .................................................................... 10

21 C.F.R. §§ 101.9(c)(3) ........................................................................ 10

40 C.F.R. § 156.10(a)(5)(ii) ..................................................................... 9

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

# I.   INTRODUCTION

Pursuant to the Federal Food, Drug, and Cosmetic Act, the FDA separately regulates two distinct zones on packaged food labels: the familiar "Nutrition Facts" box or panel, and everything *outside* the panel, i.e., "front-label" or advertising statements. Because Plaintiffs challenge only front-label statements, only the later regulations are relevant. Gruma, however, moves to dismiss as expressly preempted claims concerning two such front-label statements based solely on the FDA's inapplicable Nutrition Facts box regulations.

Plaintiffs allege that Gruma's front-label statements "0g Trans Fat" and "0g Cholesterol" are false and misleading under the familiar standards of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. Those claims are not expressly preempted because California law is identical the FDA front-label regulation prohibiting nutrient content claims that are "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). Nor are Plaintiffs' claims barred by conflict preemption, a species of implied preemption categorically excluded under the Nutrition Labeling and Education Act's express preemption provision and its "Savings Clause." But even if conflict preemption applied, there is no conflict here because Gruma could comply with both state law and the FDA's Nutrition Facts box disclosure requirements by removing its voluntary front-label advertising statements.

Gruma is also wrong that Plaintiffs' claims concerning the remaining four Gruma label advertisements should be dismissed—even though they are not preempted—because they are unlikely to deceive a reasonable consumer. Gruma's front-label statements are not puffery as a matter of law, and Gruma's exact argument, that a product's ingredient list serves to correct front-label deceptive statements, has been expressly rejected by the Ninth Circuit. But even if some of Gruma's statements are literally true, they are nevertheless actionable under California law if they are misleading in context.

1

Gruma's remaining challenges similarly fail. Plaintiffs complied with all applicable pre-suit CLRA requirements and have extensively alleged injury and reliance. Plaintiffs have sufficiently alleged misconduct emanating from California that permits the application of California law to class members in other states. Finally, Gruma's *de minimis* argument is misplaced, and restitutionary disgorgement is available. For these reasons, Gruma's motion should be denied.

## II.   FACTS & BACKGROUND

### A.   <u>Gruma's Deceptive Front-Label Statements</u>

The First Amended Complaint challenges only six front-label advertising statements: (1) "0g TRANS FAT" (FAC ¶¶ 71, 78); (2) "0g Cholesterol" (*id.* ¶ 79); (3) "WITH GARDEN VEGETABLES" (*id.* ¶ 72); (4) "Guacamole" (*id.* ¶ 73); (5) "Authentic Tradition" (*id.* ¶ 73); and (6) "ALL NATURAL" (*id.* ¶ 81).

Artificial trans fat is created through the industrial process of hydrogenating vegetable oil, resulting in a product known as partially hydrogenated vegetable oil, or PHVO. (*See id.* ¶¶ 25-26.) Invented in 1901, humans have not evolved to digest the trans fats that process creates, which are stiff and build up in the body, unlike natural fats, which are supple and pliable. (*Id.* ¶¶ 26, 30.) Instead, undigested fats become toxic, raising "bad" LDL and lowering "good" HDL cholesterol levels (*id.* ¶ 33), and causing coronary heart disease (*id.* ¶¶ 31-46), type-2 diabetes (*id.* ¶¶ 47-51), cancer (*id.* ¶¶ 52-58), obesity, Alzheimer's Disease, liver dysfunction, and even female infertility. Most alarmingly, trans fat causes up to 100,000 preventable American deaths each year from *just from coronary conditions*. (*Id.* ¶ 36.)

There is no safe level of trans fat consumption. (*Id.* ¶¶ 59-61.) Because of the risks its consumption poses, nutritionists advise *completely avoiding* the intake of trans fats. The National Academy of Science, which advises the U.S. government on nutritional science for use in public policy and product labeling, has concluded that there is no safe level of trans fat consumption, and has refused

to recommend a daily amount or tolerable upper limit for trans fats. And, jurisdictions across the world are banning its use. (*See id.* ¶¶ 62-66.)

During the Class Period beginning on June 4, 2006, Plaintiffs regularly purchased two Gruma "Mission" brand products containing trans-fat laden PHVO—Guacamole and Spicy Bean Dip. (*Id.* ¶ 4.) While Plaintiffs knew consumption of trans fat was generally worse than other types of dietary fat intake, they were unaware of the *grave* health consequences of consuming products like the Mission products, or the connection between the consumption of trans fat and diseases such as coronary heart disease, type-2 diabetes, cancer and death. Plaintiffs were also unaware that some companies falsely advertise products as having no trans fat. (*Id.* ¶ 107.) Moreover, Plaintiffs could not have discovered Gruma's false and misleading statements because they lacked the specialized knowledge Gruma had, which otherwise would have enabled them to associate partially hydrogenated oil with trans fat, and trans fat with disease. (*Id.* ¶ 108.)

Each Mission product label prominently displays advertising statements suggesting it is healthy. (*Id.* ¶¶ 71-81.) That suggestion is highly misleading—and in the case of "0g TRANS FAT," literally false—because the Mission products contain toxic PHVO, which is extremely dangerous to human health, even at small consumption levels. That Gruma's products contain trans fats is disturbing, particularly because there are several safe alternatives. But Gruma compounds the problem—and violates California's UCL, FAL, and CLRA—when it tells consumers those products are healthy. (*Id.* ¶¶ 111-142.)

## B.   The FDA Separately Regulates The Nutrition Facts Box And Front-Label Statements

Food packaging not labeled in compliance with the FDCA's extensive regulatory requirements is "misbranded." 21 U.S.C. § 343. In 1990, Congress amended the FDCA through the NLEA, Pub. L. No. 101-535, 104 Stat. 2353 (Nov. 8 1990), adding a new subsection governing statements on food labels concerning

3

nutrition levels or the relationship between nutrients and a disease or health-related condition, codified at 21 U.S.C. § 343(r)(1). Only two challenged Gruma front-label statements are subject to these regulations, "0g TRANS FAT" and "0g Cholesterol," because both are "expressed nutrient content claims," that is, "direct statements about the level of a nutrient in the food." 21 C.F.R. § 101.13(b)(1).

The NLEA also established the now-familiar Nutrition Facts box. 21 U.S.C. § 343(q); *see also* 21 C.F.R. § 101.9 (FDA regulations promulgated under § 343(q) relating to Nutrition Facts box). That box concerns a limited universe of information: standard serving size and number of servings, calories, the amounts of nine specific nutrients, the measure of certain vitamins and minerals, and an ingredient list. *Id*. The information is then highly-regulated in order to ensure uniformity, including such fine details as the order of disclosures, font and background colors, type style and size, use of upper and lower case letters, and line spacing. *See* 21 C.F.R. § 101.9(c). Food manufacturers are also prohibited from voluntarily disclosing any information within the Nutrition Facts box not specifically addressed in the statute or implementing regulations. *Id*.

Cost considerations affect the exact manner nutrients are disclosed on the Nutrition Facts box. For example, the FDA requires the disclosure of less than 0.5g of trans fat per serving as "0g" within the Nutrition Facts box because of the difficulties and expense in measuring trans fat levels below that amount (at least as of 1999), *see* 64 F.R. 62746, at 62758 (Nov. 17, 1999), not because the FDA believes amounts below 0.5g per serving are safe, *see, e.g.*, 68 F.R. 41433, at 41436 (July 11, 2003) ("trans fat consumption [should] be as low as possible").

The NLEA includes an express preemption provision. Although the provision gives preemptive effect to § 343(q)'s regulation of the Nutrition Facts box, *see* 21 U.S.C. § 343-1(a)(4), because Plaintiffs' claims concern only front-label statements, only § 343-1(a)(5) is relevant here. That section provides no State

may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title . . . . 21 U.S.C. § 343-1(a)(5).

Unlike the highly-regulated, limited universe of the Nutrition Facts box, nutrient content claims and statements manufacturers make outside the box—on the front label and elsewhere—are ***advertising***. And advertising, if not otherwise restricted, is limited only by a manufacturer's imagination and ambition. Rather than permit "anything goes" advertising, the FDA imposes a baseline standard: any advertisement that "expressly or implicitly characterizes the level of a nutrient of the type required to be made on the [Nutrition Facts box] label under 101.9 [ ] (that is, a nutrient content claim) may not be made unless the claim is made in accordance with this regulation . . . ." 21 C.F.R. § 101.13(b). Thus, a product label may not contain a nutrient content claim that is "false or misleading in any respect . . . ." 21 C.F.R. § 101.13(i)(3).[1]

The "misleading in any respect" language of § 101.13(i)(3) demonstrates the regulation's expansive scope. If the regulation merely stood for the proposition that a manufacturer may categorically make a nutrient content claim so long as the amount claimed in the advertisement is identical to the amount disclosed in the Nutrient Facts box (an argument Gruma half-makes, see Mot. at 6), the "misleading" language would be superfluous, since a number can be either true or

---

[1] Separately, the FDA regulates a handful of common advertisements, *see* 21 C.F.R. § 101, Subpart D. Although § 101.62(d) concerns cholesterol content claims, the regulation is limited to eight specific phrases which, through words, characterize the level of cholesterol (such as "cholesterol free" or "no cholesterol"). Thus, Gruma's "0g Cholesterol" advertisement, because it is an express nutrient content claim, is subject to regulation only under § 101.13(i)(3). In any event, the phrases regulated under § 101.62(d) are also subject to § 101.13(i)(3)'s "false and misleading" prohibition. *See* 21 C.F.R. § 101.62(a)(2).

false (*i.e.*, identical or not identical to the disclosure number in the Nutrition Facts box), but cannot be misleading except in context. Such a narrow reading would run afoul of the rules of statutory construction and defeat the statutory and regulatory framework's manifest purpose of protecting consumers from deceptive advertising practices. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute."); *Carus Chem. Co. v. EPA*, 395 F.3d 434, 440 (D.C. Cir. 2005) (applying same principle to regulations with force of law).

Finally, the regulations themselves bear out the FDA's separate treatment of information provided in a food's Nutrition Facts box and statements made on its label, and demonstrate the two zones are subject to different governing standards:

> Information that is required or permitted . . . to be declared in nutrition labeling, and that appears as part of the nutrition label [i.e., the Nutrition Facts box], is not a nutrient content claim and is not subject to the requirements of this section. ***If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims***.

21 C.F.R. § 101.13(c) (emphasis added); *see also N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health*, 556 F.3d 114 (2d Cir. 2009) (21 C.F.R. § 101.13(c) "reflects the FDA's view that a quantitative statement as to a nutrient amount, 100 calories, for example, is not a [nutrient content] claim when such a statement appears in the nutrient panel . . . , *but* is one when it does not." (emphasis in original)); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 509 F. Supp. 2d 351, 361 (S.D.N.Y. 2007) ("it is clear that under the federal statutory scheme, the mandatory statement of nutrient amount in the familiar Nutrition Facts panel is not a 'claim,' while an identical statement voluntarily made elsewhere on a food product label is a 'claim' subject to § 343(r), [and] the attendant FDA regulations . . . .").

### III.   ARGUMENT

#### A.   **Plaintiffs' Claims Are Not Preempted**

The interpretation of the FDCA and the NLEA "is informed by a strong presumption against preemption." *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) (citations omitted). "There can be no doubt that the presumption applies with particular force here" because "consumer protection laws such as the UCL, false advertising law, and CLRA, are within the states' historic police powers . . . . [and l]aws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within the states' historic police powers." *Id.* (citing *Florida Lime & Avocado Growers*, 373 U.S. 132, 144 (1963); *Bronco Wine Co. v. Jolly*, 33 Cal. 4th 943, 955 (2004) (describing history of state regulation)).

"Although section 343-1 speaks in terms of what states may *not* do, by negative implication, section 343-1 also expresses what states *may* do, i.e., states *may* establish their own requirements pertaining to the labeling of [nutrient content claims] so long as their requirements are identical to those contained in the FDCA in section 343[(r)]." *Id.* at 1086 (citing, *inter alia*, 60 F.R. 57120 (Nov. 13, 1995) (under FDA regulations, "if the State requirement is identical to Federal law, there is no issue of preemption")). When combined with the FDCA's prohibition on private enforcement, 21 U.S.C. § 337(a), the statutory framework permitting state laws that impose requirements identical to those under the FDCA may be summarized as follows:   State-law claims are ***not*** preempted so long as those claims could be pled as violations of the FDCA if the FDCA permitted a private right of action.[2] This is precisely why Plaintiffs' claims in this case are not

---

[2] This is the same analysis deployed by the California Supreme Court in *Farm Raised Salmon* to hold that plaintiffs' state law claims were not preempted under the NLEA. In that case, the plaintiffs' "unlawful" UCL claim was predicated on a violation of California's Sherman Law, which "incorporates all of the food

preempted. As discussed below, if pled as violations of the FDCA, Plaintiffs would state claims for Gruma's violation of 21 C.F.R. § 101.13(i)(3) based on its misleading "0g TRANS FAT" and "0g Cholesterol" front-label advertisements.

### 1.    There Is No Express Preemption

"0g TRANS FAT" and "0g Cholesterol," are nutrient content claims, *see* 21 C.F.R. § 101.13(b). Such claims may not be "false or misleading in any respect . . . ." 21 C.F.R. § 101.13(i)(3). Plaintiffs allege that Gruma's statements are misleading because they falsely suggest the Mission products are healthy. Moreover, "0g TRANS FAT" is literally false because products that contain PHVO necessarily contain *some* trans fat, even if the amount is below the 0.5-gram per serving threshold that permits a trans fat disclosure within the Nutrition Facts box as "0." Thus, Plaintiffs' claims are not preempted, but expressly allowed. The U.S. Supreme Court has adopted this exact view. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005).

*Bates* involved claims brought by Texas peanut farmers that the label on the pesticide Strongarm, which stated "use of Strongarm is recommended in all areas where peanuts are grown," *id.* at 435, was misleading because the pesticide actually stunted the growth of peanuts in soils with a pH above 7.0. Defendant Dow argued that plaintiffs' claims were preempted under the Federal Insecticide, Fungicide, and Rodenticide Act, which contains a clause exactly like 21 C.F.R. § 101.13(i)(3): under FIFRA, a pesticide is misbranded if "its labeling bears any statement . . . which is *false or misleading in any particular*." 7 U.S.C. § 136(q)(1)(a); 40 C.F.R. § 156.10(a)(5)(ii) (emphasis added); *see Bates*, 544 U.S. at 438. FIFRA also contains a preemption clause just like the NLEA's—it prohibits state-law labeling and packaging requirements that are "in addition to or different from" the requirements under FIFRA. 7 U.S.C. § 136v(b).

---

labeling regulations promulgated by the FDA . . ." 42 Cal. 4th at 1090. *Compare* FAC ¶¶ 115-116 (alleging violation of Sherman Law).

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

1     Although the *Bates* Court left the ultimate question to the Fifth Circuit to

2 answer,[3] the Court nevertheless made an important and relevant holding: claims

3 based on fraud and failure to warn were not preempted insofar as the common-law

4 duties invoked under the Texas statute were equivalent to the Federal Insecticide,

5 Fungicide, and Rodenticide Act's prohibition on labels that are "false or

6 misleading in any particular." *Id.* at 447.

7            **2.**     **There Is No Conflict Preemption**

8     Gruma's conflict preemption argument misconstrues both the law and

9 Plaintiffs' claims. Conflict preemption is better described as "obstacle"

10 preemption, and is present either (1) when "it is 'impossible for a private party to

11 comply with both state and federal requirements,'" or (2) where "state law 'stands

12 as an obstacle to the accomplishment and execution of the full purposes and

13 objectives of Congress.'" *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d

14 Cir. 2009) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990); *Hines v.*

15 *Davidowitz*, 312 U.S. 52, 67 (1941)). Gruma argues only the first condition. (*See*

16 Mot. at 7.)

17     Conflict preemption is an *implied preemption* principle, *see Mills v. Giant of*

18 *Md., LLC*, 441 F. Supp. 2d 104, 109 n.8 (D. D.C. 2006), and is categorically

19 unavailable under the NLEA's savings clause: "The [NLEA] shall not be construed

20 to preempt any provision of State law, unless such provision is expressly

21 preempted under 21 U.S.C. § 343-1(a)." Pub. L. No. 101-535, § 6(c)(1); 21 U.S.C.

22 § 343-1 note. *See also Lockwood v. Conagra*, 597 F. Supp. 2d 1028, 1032 (N.D.

23 Cal. 2009) ("[T]he preemption provisions added to the FDCA by the NLEA

24 include an express savings clause that disavows any implied preemption . . . [and]

25 permits states to regulate subject matters covered by the NLEA and its regulations

26 provided that such state laws do not fall within the FDCA's express preemption

27

28   [3] The Fifth Circuit never had a chance because the case settled soon after remand.

9

provisions."); *Holk*, 575 F.3d at 336 ("[C]ourts may not find implied preemption based on any provision of the NLEA.").

Even if conflict preemption applied, it would be inapplicable here because Plaintiffs' claims, if successful, would not make compliance with federal law a physical impossibility. *See Lockwood*, 597 F. Supp. 2d at 1034. Plaintiffs challenge only Gruma's *voluntary front-label* statements, not the "0g" trans fat disclosure (or "0mg" cholesterol disclosure) in the Nutrition Facts box. Gruma could remove the challenged front-label statements and still comply with the FDA's regulation of trans fat and cholesterol disclosure in the Nutrition Facts box, 21 C.F.R. §§ 101.9(c)(2)(ii), (c)(3).

The cases Gruma cites (Mot. at 7) are not contrary. The Court in *Giant of Maryland* expressly declined to address the issue of conflict preemption, 441 F. Supp. 2d 104, 109 n.8, and *Fraker* has been called into question, *See Chavez v. Blue Sky Natural Beverage Co.*, No. C 06-6609, 2010 U.S. Dist. LEXIS 60554, at *17 (N.D. Cal. June 18, 2010) ("*Fraker* was decided [] without the benefit of the Supreme Court's ruling in *Wyeth v. Levine* [129 S. Ct. 1187 (2009)] which controls the preemption analysis here."); *Lockwood*, 597 F. Supp. 2d at 1034, and involved very claims made pursuant to the FDCA, not State-law claims like Plaintiffs' here, *see McKinnis v. General Mills, Inc.*, No. CV 07-2521, 2007 U.S. Dist. LEXIS 96107, at *7 n.3 (C.D. Cal. Sept. 18, 2007).

**B.  Plaintiffs' Claims Are Actionable Under The Reasonable Consumer Standard**

Reasonable reliance is not an element of claims under the UCL, FAL and CLRA. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) ("'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL." (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998) (alteration in

10

original)). *See also Buckland v. Threshold Enters. Ltd.*, 155 Cal. App. 4th 798, 801 (2007) ("To state a cause of action under [the CLRA] it is necessary only to show that 'members of the public are likely to be deceived.' . . . Allegations of actual deception, reasonable reliance, and damage are unnecessary." (quoting *Committee on Children's Television, Inc. v. General Food Corp.*, 35 Cal. 3d 197, 211 (1983))).

"Rather, claims under these California statutes are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) . The standard requires plaintiffs to show that "members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). The same standard applies under the FAL. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006). "Although reasonableness can, in appropriate circumstances, be decided as a question of law, 'California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss].'" *Yumul v. Smart Balance, Inc.*, No. CV 10-00927, slip op. at 10 (C.D. Cal., May 24, 2010) (lodged concurrently herewith) (quoting *Williams*, 552 F.3d at 938).[4] At the motion to dismiss stage, a court should allow a claim to proceed unless it is "impossible" for plaintiff to prevail if allowed to offer evidence under the reasonable consumer standard. *Williams*, 552 F.3d at 939; *see also Yumul*, slip op. at 16 ("The Nucoa packaging does not make it 'impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" (quoting *Williams*, 552 F.3d at 939).)

---

[4] *See also Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007); *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1472 (2006); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009).

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

1    The Ninth Circuit has upheld only a limited number of dismissals based on a

2    failure to meet the reasonable consumer standard as a matter of law, none of which

3    share the attributes of this action. *See Yumul* slip op. at 10-16. *Freeman*, for

4    example, involved claims challenging a mailer that suggested the plaintiff had won

5    a million-dollar sweepstakes. The mailer, however, explicitly stated multiple times

6    that plaintiff would only win the prize if he had the winning sweepstakes number.

7    Thus, the Ninth Circuit held, "it was not necessary to evaluate additional evidence

8    to determine whether the advertising was deceptive, since the advertisement itself

9    made it impossible for plaintiff to prove that a reasonable consumer was likely to

10   have been deceived." *Freeman*, 68 F.3d at 289-90.

11   Recently in *Yumul*, Judge Morrow distinguished the cases Gruma relies upon

12   in the context of claims closely resembling those brought by Plaintiffs in this case,

13   and held the plaintiff's claims did ***not*** warrant dismissal under the reasonable

14   consumer standard. Judge Morrow noted, for example, that the court dismissed the

15   complaint in *McKinnis v. Kellogg USA,* No. CV 07-2611, 2007 WL 4766060 (C.D.

16   Cal. Sept. 19, 2007), *see* Mot. at 12, because the allegation that "Froot Loops"

17   themselves resemble fruit is "not rational, let alone reasonable. The cereal pieces

18   are brightly colored rings, which in no way resemble any currently known fruit."

19   *Yumul*, slip op. at 12 (quoting *McKinnis v. Kellogg*, 2007 WL 4766060, at *4).

20   Judge Morrow also disregarded *McKinniss v. Sunny Delight*, No. 07-cv-2034, 2007

21   WL 4766525 (C.D. Cal. Sept. 4, 2007), *see* Mot. at 9, 11, 14, 25, as bad law in

22   light of *Williams. See id.* at 12-15.[5] By contrast, neither Mission product discloses

23   the presence of the trans fat that renders Gruma's front-label health statements

24   misleading.

25

26   _____

[5] Moreover, *McKinniss* is readily distinguishable. There, the core allegation was

27   that images of fruit implied high fruit content. However, the actual fruit juice

28   content was explicitly disclosed as "5% fruit juice." Gruma makes no analogous
     disclosures on its products with respect to trans fat or its hazards to human health.

1   Gruma argues Plaintiffs' challenges to the statements "The Authentic
2   Tradition" and "All Natural" are subject to dismissal under the reasonable
3   consumer standard as puffery, and that the statements "Guacamole" and "WITH
4   GARDEN VEGETABLES" are truthful, and therefore not actionable under the
5   reasonable consumer standard. Both arguments fail.

### 1.   Gruma's Statements Are Not Puffery

7   Puffery involves "outrageous generalized statements . . . that are so
8   exaggerated as to preclude reliance by consumers." *Franklin Fueling Sys. v.*
9   *Veeder-Root Co.*, No. S-09-580, 2009 U.S. Dist. LEXIS 72953, at *14 (E.D. Cal.
10  Aug. 11, 2009). "Conversely, 'misdescriptions of specific or absolute
11  characteristics of a product are actionable.'" *Id.* A statement is mere puffery only
12  where it is "*extremely unlikely* to induce consumer reliance." *Newcal Indus. v. Ikon*
13  *Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) (emphasis added). This is
14  untrue of the challenged Gruma statements, which are part and parcel of the
15  deceptive packaging of the Mission products at issue. Where a series of statements
16  "contribute[s] to the deceptive context of the packaging as a whole" the court
17  should not dismiss the statements as puffery. *See Williams*, 552 F.3d at 939 n.3.

18  First, Gruma's "Authentic Tradition" and "All Natural" statements are
19  actionable because they speak to specific (and misdescribed) product attributes.
20  (*See* FAC ¶¶ 73-77, 81.) This is unlike the superlative phrases to which Gruma
21  attempts to analogize (e.g., "America's Favorite," "High quality," and "Performs
22  flawlessly") (Mot. at 9).

23  Although Gruma contends the reasonable consumer cannot be deceived by
24  "The Authentic Tradition" when juxtaposed to "Guacamole" because the former is
25  a trademarked phrase, that is insufficient to form "the rare situation in which
26  granting a motion to dismiss is appropriate," *Williams*, 552 F.3d at 939, especially
27  when viewing the facts in the light most favorable to Plaintiffs. *See Yumul*, slip op.
28  at 15. Rather, "the parties should be able to submit evidence to demonstrate

13

1    whether a reasonable consumer would find the labeling on the subject [product] to

2    be deceptive." *Id.* at 16 (quoting *Hitt v. Arizona Beverage Co., LLC*, No. 08cv809,

3    2009 U.S. Dist. LEXIS 16871, at *19 (S.D. Cal. Feb. 4, 2009)) (alteration in

4    original). *See also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241,

5    1250 (C.D. Cal. 2003) (plaintiff should be permitted to "demonstrate by extrinsic

6    evidence, such as consumer survey evidence, that the challenged statements tend to

7    mislead consumers").

8         The case that "All Natural" is actionable is even stronger. Courts have

9    regularly held plaintiffs state a claim under the reasonable consumer standard when

10   they allege that the phrase "all natural" is misleading in light of the presence of a

11   man-made ingredient in a food product. *Von Koenig v. Snapple Beverage Corp.*,

12   No. 09-cv-606, 2010 U.S. Dist. LEXIS 55987 (E.D. Cal. May 7, 2010) (beverage

13   label advertisement "All Natural" misleading in light of high fructose corn syrup

14   content); *Hitt*, 2009 U.S. Dist. LEXIS 16871, at *1-2 ("100% Natural," "All

15   Natural," and "Natural" misleading in light of beverage's high fructose corn syrup

16   content); *Lockwood*, 597 F. Supp. 2d 1028 ("all natural" pasta advertisement

17   misleading in light of high fructose corn syrup content); *Wright v. General Mills*,

18   No. 08cv1532, 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009) (Nature

19   Valley bar products deceptively advertised as "100% Natural" even though

20   products contained one or more non-natural ingredients).

21        The FDA does not regulate the term "all natural," and California law cannot

22   be preempted by an FDA policy or opinion concerning the term. *See Holk*, 575

23   F.3d at 339-41 (FDA's policy on term "all natural" has no preemptive effect under

24   NLEA because "it is federal *law* which preempts contrary state law" and "nothing

25   short of federal law can have that effect."). To the extent the FDA has opined that

26   the term is ambiguous, that opinion is irrelevant to the question of whether the term

27   is deceptive under California law.

28

14

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

## 2. Gruma's Statements Are Not Subject To Dismissal As Purportedly "True"

Gruma's argument that the deceptive nature of its "Guacamole" and "WITH GARDEN VEGETALES" claim is rectified by the product's ingredient list runs afoul of the Ninth Circuit's decision in *Williams*, implicitly overturning the portion of *McKinnis v. General Mills*, 2007 U.S. Dist. LEXIS 96107, at *13, on which Gruma relies (Mot. at 13, citing *McKinnis* for proposition that "[a] reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list"):

> ***We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box*** to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield to liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 939 (emphasis added). But even if Gruma *could* rectify its deceptive advertisement by the miniscule ingredient list, Gruma *does not do so* here. It means little that the product contains four ingredients in common with authentic guacamole[6] when Gruma admits the ingredient list shows "different proportions" (Mot. at 13), and Plaintiffs allege authentic "guacamole is mainly avocado" (FAC ¶ 73; *see id.* ¶¶ 74-75).

---

[6] *Compare* FAC ¶ 75 to Mot. at 13—avocado "powder" is not part of authentic guacamole. Mission Guacamole contains less than 2% avocado powder anyway.

15

1   Even if Gruma's "Guacamole" and "WITH GARDEN VEGETABLES"

2   statements were, in some sense, literally true, that is not determinative of whether

3   they are actionable under California's consumer protection statutes. *See Morgan v.*

4   *AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1255 (2009)  ("A perfectly

5   true statement couched in such a manner that it is likely to mislead or deceive the

6   consumer, such as by failure to disclose other relevant information, is actionable

7   under the UCL."); *Franklin Fueling Sys.*, 2009 U.S. Dist. LEXIS 72953, at *21-22

8   (the FAL prohibits "not only advertising which is false, but advertising which,

9   although true, is either actually misleading or which has a capacity, likelihood, or

10   tendency to deceive or confuse the public"). "California false advertising statutes

11   encompass not just false statements but those statements 'which may be accurate

12   on some level, but will nonetheless tend to mislead or deceive.'" *Brewer v.*

13   *Indymac Bank*, 609 F. Supp. 2d 1104, 1124 (E.D. Cal. 2009) (quoting *Arizona*

14   *Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern, Inc.*, 421 F.3d 981, 985

15   (9th Cir. 2005), quoting in turn *Day*, 63 Cal. App. 4th at 332.

16   ## C.   <u>Plaintiffs Met The CLRA's Pre-Suit Notice Requirements</u>

17   Plaintiffs have fully complied with the CLRA's pre-suit notice requirements.

18   Defendants cite many cases presenting different facts, but the Court need only look

19   at the plain meaning of the statute here. The CLRA has separate subheadings

20   authorizing each form of relief, and treats separately "actual damages" and

21   "punitive damages," on the one hand, Cal. Civ. Code §§ 1780(a)(1), (4), and

22   "restitution," *id.* § 1780(a)(3), on the other.

23   The 30-day notice requirement, however, applies only to "an action for

24   ***damages*** pursuant to this title." *Id.* § 1782(a).  Because Plaintiffs' initial Complaint

25   did not seek damages of any sort, and their CLRA claim specifically sought only

26   injunctive relief and restitution (Compl. ¶ 111.), Plaintiffs could not possibly have

27   run afoul of the notice provision. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111,

28   1119-20 (C.D. Cal. Nov. 24, 2008) (Because "[t]he FAC demands restitution and

16

disgorgement, which do not appear to be 'damages' for the purposes of the CLRA. . . . Defendants have not demonstrated that Plaintiffs did not provide proper CLRA notice . . . ." (citation omitted)); *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, No. C07-CV-2231, 2008 U.S. Dist. LEXIS 34159, at *19 (S.D. Cal. Apr. 25, 2008) ("Prefiling notice is not required for a CLRA claim for restitution.").

Notice under the CLRA can be effected either by demand letter or filing a suit for injunctive relief and waiting at least 30 days to amend to add a claim for damages. **Both** were done here. Along with the original Complaint, a CLRA letter was prepared and addressed and, counsel believed, sent to Gruma. Counsel was later advised Gruma had never received the letter, and discovered counsel had inadvertently neglected to send it as the original Complaint stated. As soon as counsel was made aware of this, he sent the letter via both e-mail and certified mail to both Defendants and their counsel. Only then, after waiting another 30 days, did Plaintiffs file the FAC, which contains a CLRA damages claim.

Moreover, because the initial complaint sought injunctive relief under the CLRA but did not seek damages, and Plaintiffs waited more than 30 days to amended the complaint to seek damages, the second method of CLRA notice was also effected. *See* Cal. Civ. Code § 1782(d).

### D.  California Law Presumptively Applies To Out-Of-Staters

Gruma here challenges the FAC's proposed nationwide class applying California law, not the *legal sufficiency* of Plaintiffs' *claims*. As such, it is inappropriate for resolution on a motion to dismiss and best decided later, after discovery, on a motion for class certification. Plaintiffs' burden in seeking class certification will be to show first that a nationwide class does not violate Gruma's

17

Due Process rights.[7] Upon such showing, "the Court presumes that such law applies to the claims of the nation-wide class unless Defendants meet the 'substantial burden' of showing that foreign law, rather than California law, applies. *Keilholtz v. Lennox Hearth Prods.*, 2010 U.S. Dist. LEXIS 14553 (N.D. Cal. Feb. 16, 2010) (quoting *Martin v. Dahlberg*, 156 F.R.D. 207, 218 (N.D. Cal. 1994).

Even if the Court were to decide the issue now, it should find Plaintiffs may plausibly represent a nationwide class because the FAC sufficiently alleges "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." *Id.* at *22 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1995)).

Plaintiffs allege, based on Gruma's own public admissions, that it maintains extensive operations in California (FAC ¶ 15), and that they suffered injuries as a result of Gruma's acts in this District (*id.* ¶ 3). Such allegations "create state interests." *See id.* (nationwide class allowed where 82% of production in California).

If the Court is nevertheless inclined to find the FAC fails to sufficiently allege conduct emanating from California, Plaintiffs would respectfully request the opportunity to amend.

### E.   **Plaintiffs Have Standing**

#### 1.   **Plaintiffs Adequately Plead Reliance**

To have standing, the representative plaintiff in a class action asserting claims under the UCL's "fraudulent" prong must plead actual reliance on

---

[7] Plaintiffs must show Gruma has "'significant contact or aggregation of contacts' to the claims asserted, given Defendants' contacts with the state, in order to ensure that the choice of California law is not arbitrary or unfair to nonresident class members." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 624 (C.D. Cal. 2008) (internal citations omitted) (certifying nationwide California law class).

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

defendant's misrepresentation. *Tobacco II*, 46 Cal. 4th at 326. Standing is similar under the FAL, Cal. Bus. & Prof. Code § 17535, and CLRA, *Buckland*, 155 Cal. App. 4th at 810. "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause" or even the "predominant or decisive factor" in the plaintiff's decision. *Tobacco II*, 46 Cal. 4th at 326. Instead, a plaintiff need only show that the misrepresentation "played a substantial part" in his decision. *Id.*

A presumption of reliance arises "wherever there is a showing that a misrepresentation was material," meaning "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action." *Id.* at 327; *see also Chavez*, 2010 U.S. Dist. LEXIS 60554, at *30 (under CLRA, reliance "may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." (quoting *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 148, 157 (2010))); *Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 31350 (E.D. Cal. 2007) ("Under the UCL and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in common law fraud, but of materiality."). Indeed, materiality and reliance accompany one another: "materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009). "[M]ateriality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonable find that a reasonable man would have been influenced by it." *Tobacco II*, 46 Cal. 4th at 327. Finally, a plaintiff may establish reliance "by inference rather than direct evidence." *Ford v. Hotwire, Inc.*, No. 07-CV-1312, 2008 U.S. Dist. LEXIS 108584, at *15 (S.D. Cal. Feb. 25, 2008) (citing *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971) ("The fact of reliance upon alleged false representations may be inferred from the circumstances attending to the transaction . . . .")). Plaintiffs have extensively pled reliance and materiality:

19

• Absent the false and misleading statements and misstatements of Gruma described herein, Plaintiffs would not have purchased the Mission Trans Fat Products. (FAC ¶ 10.)

• When purchasing the Mission Trans Fat Products, Plaintiffs were seeking products of particular qualities, including products that were free from artificial *trans* fat, products that did not negatively affect blood cholesterol levels, and products made with natural, healthy ingredients. With respect to the Mission Guacamole, Plaintiffs were seeking authentic guacamole made primarily with avocados. (*Id.* ¶ 82.)

• Plaintiffs read and relied on, for each purchase of the Mission Trans Fat Products made during the Class Period, Gruma's misleading "0g TRANS FAT," "0g Cholesterol," "WITH GARDEN VEGETABLES" and "All Natural" health claims. (*Id.* ¶ 83.)

• Plaintiffs further read and relied on Gruma's misleading "Guacamole" made in "The Authentic Tradition" claim, believing that they were purchasing real guacamole, complete with avocados, which have certain health benefits and certainly do not cause cancer, diabetes, and heart disease when consumed at consumers' actual consumption levels. (*Id.* ¶ 84.)

• Plaintiffs purchased the Mission Trans Fat Products believing they had the qualities Plaintiffs sought based on their deceptive labeling (*id.* ¶ 85.)

• Plaintiffs paid more for the Mission Trans Fat products, and would have been willing to pay less, if they had not been mislead by the false and misleading labeling complained of herein. Plaintiffs would not have purchased the Mission Trans Fat Products at the price they did absent these advertisements. (*Id.* ¶ 87.)

• Plaintiffs purchased Gruma's Mission Trans Fat Products instead of other brands based on the false statements and misrepresentations described herein. (*Id.* ¶ 89.)

20

1      •     Absent Gruma's material deceptions, misstatements, and omissions,

2 Plaintiffs and other Class members would not have purchased the Mission Trans

3 Fat Products. (*Id.* ¶ 99.)

4      •     Had Plaintiffs been aware of Gruma's false and misleading

5 advertising tactics, they would have paid less than what they did for the Mission

6 Trans Fat Products, or would not have purchased them at all. (*Id.* ¶ 118.)

7      Similar (indeed, less detailed) allegations have survived dismissal. *See*

8 *Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 47161, at *7-9

9 (S.D. Cal. May 13, 2010) (sole allegation that "[r]elying on Defendants' false

10 misrepresentations . . . Plaintiff did not shop [at other vendors]" alleged material

11 reliance sufficient to sustain UCL claim); *Ward v. IPEX*, Inc., No. CV 08-6370,

12 2009 U.S. Dist. LEXIS 11040, at *5-8 (C.D. Cal. Feb. 4, 2009); *Ford*, 2008 U.S.

13 Dist. LEXIS 108584, at *14-15 (allegation that plaintiff selected hotel "based upon

14 quote given" was sufficient).

15      Gruma effectively concedes that the FAC sufficiently alleges reliance, Mot.

16 at 22, by contrasting its allegations with those in the original Complaint, which

17 Gruma argues are contradictory and therefore implausible. That argument depends

18 on a strained reading of the original Complaint, which should be rejected,

19 especially in light of Rule 8(e)'s mandate that pleadings must be construed "so as

20 to do justice." Fed. R. Civ. P. 8(e).

21      Plaintiffs never, as Gruma characterizes it, "conceded . . . they had

22 *absolutely no knowledge* of the alleged 'dangers' associated with trans fats" or

23 "admit[ted] that they did not know that trans fat was *harmful in any way . . . .*"

24 (Mot. at 23 & n.13 (emphasis added)). Rather, a fair reading of the original

25 Complaint shows Plaintiffs were generally aware they should avoid trans fats (and

26 thus purchased the Mission products which promised no trans fat), but that they

27 were unaware "that artificial trans fat is *extremely* dangerous to human health *and*

28 *is associated with heart disease, diabetes, cancer and death.*" (Compl. ¶ 19

(emphasis added).) It is knowledge of this "extreme" danger, and the connection between trans fat and disease, which Plaintiffs alleged was in Gruma's possession. (*Id.* ¶¶ 20, 89.) Plaintiffs' amended allegations are consistent with this interpretation of the original Complaint. Plaintiffs allege they:

> knew consumption of artificial *trans* fat was generally worse than other types of dietary fat intake, [but] they were unaware of the *grave health consequences* of consuming products like the Mission Trans Fat Products . . . or the connection between the consumption of such artificial *trans* fat and disease such as coronary heart disease, type-2 diabetes, cancer, and death. Plaintiffs were also unaware that some companies claim their products have no trans fat, when those products in fact contain trans fat. Plaintiffs . . . did not possess the specialized knowledge Gruma had which otherwise would have enabled them to associate partially hydrogenated oil with artificial *trans* fat, and artificial *trans* fat with disease. (FAC ¶¶ 107-108.)

In sum, the FAC extensively pleads reliance and materiality, and its allegations are not "defeated" by purported admissions in the original Complaint.

## 2.    Plaintiffs Have Standing To Seek Injunctive Relief

A plaintiff "must show that he has suffered injury in fact and has lost money or property as a result of unfair competition" to have standing to bring a cause of action under the UCL. *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd*, *Walker v. Geico Gen Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009). "[T]he 'injury in fact' requirement for standing is the same as the 'injury in fact' required for standing under the United States Constitution." *Janti v. Encore Capital Group, Inc.*, No. 09CV1969, 2010 U.S. Dist. LEXIS 78199, at *19-20 (S.D. Cal. Aug. 3, 2010) (citing *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *7 (S.D. Cal. 2009), in turn citing *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009)). Plaintiffs sufficiently allege injury-in-fact standing under both Article III and California law for their UCL, FAL and CLRA claims.

22

(FAC ¶¶ 82-95, 118.) *See Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359, 360-62 (9th Cir. 2009); *Von Koenig*, 2010 U.S. Dist. LEXIS 55987, at *25-29.

Since Plaintiffs meet the standing requirements as to all their claims, they need not separately demonstrate standing with respect to injunctive and declaratory relief they seek under the UCL, FAL and CLRA. Gruma offers no authority for the proposition that a separate inquiry is required. To follow Gruma's argument to its logical conclusion would necessarily preclude all claims to enjoin false advertising.

Gruma's argument that because Plaintiffs are now aware of Gruma's misleading labels they lack standing to pursue claims for injunctive relief, would lead to an illogical result. If Article III standing were construed as Gruma advocates, it would preclude any claim in federal court under California's (or any other state's) consumer protection laws to enjoin false advertising, because a plaintiff would never have standing.[8] Victims of fraud, like Plaintiffs, would be foreclosed because they could not be tricked again, while victims who would have standing under Gruma's theory could never bring suit because they are necessarily unaware of the conduct (and thus likely to be misled in the future). *See, e.g., Parr v. L&L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1080-81 (D. Haw. 2000) ("This Court is reluctant to embrace a rule of standing that would allow an alleged

---

[8] Moreover, false advertising plaintiffs who bring class action claims in state court are always subject to removal under the Class Action Fairness Act if the defendant is an out-of-state corporation like Gruma. To accept Gruma's argument and preclude Plaintiffs from pursuing an injunction to enjoin out of state defendants from engaging in false advertising would allow defendants to continue their practices with virtual immunity. That would frustrate California's purpose in enacting the UCL, FAL and CLRA to protect its consumers from false advertising and other sharp business practices. *See Committee on Children's Television*, 35 Cal. 3d at 211 (California consumer protection statutes protect against the likelihood of deception to the public, not just actual harm); *Tobacco II*, 46 Cal. 4th at 312 (UCL's purpose is "protecting the general public against unscrupulous business practices") (citations omitted).

23

1   wrongdoer to evade the court's jurisdiction so long as he does not injure the same

2   person twice." (internal quotations omitted)); *Fortyune v. American Multi-Cinema,*

3   *Inc.*, No. CV01-05551, 2002 U.S. Dist. LEXIS 27960 (C.D. Cal. Oct. 22, 2002)

4   (argument that plaintiff's awareness of theater's lack of accommodation for

5   disabled patrons' access to companion seating defeated standing to seek injunctive

6   relief was "disingenuous"). To the contrary, courts frequently allow plaintiffs to

7   seek injunctive relief in false advertising class actions. *See, e.g.*, *Von Koenig*, 2010

8   U.S. Dist. LEXIS 55987, at *11 (denying motion to dismiss causes of action for

9   injunctive relief in class action alleging deceptive beverage labeling).[9]

10       Even if Plaintiffs lacked standing to seek an injunction against the six

11   Gruma advertisements challenged in this suit, though, Plaintiffs also seek an order

12   enjoining Gruma from "using any other misleading health claim(s) on the products

13   described herein." (FAC, Prayer For Relief). Because there is a realistic threat that

14   Plaintiffs could be injured by new or other misleading Gruma advertisements not

15   challenged in this suit—especially where Plaintiffs' allegations suggest Gruma

16   engages in a pattern and practice of selling its products through the use of such

17   misrepresentations—Plaintiffs, at a minimum, have standing to seek such

18   injunctive relief.

19          **3.**    **Plaintiffs' Claims Should Not Be Dismissed As *De Minimis***

20       It is unclear whether Gruma contends Plaintiffs' injuries or Gruma's

21   misrepresentations are *de minimis*, Mot. at 24, but neither argument succeeds.

22   Gruma provides no authority that the amount of Plaintiffs' purchases during the

23

24   ———————————
[9] Gruma's authority does not support its position. In *Cattie v. Wal-Mart Stores,*

25   *Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), the court *sua sponte* raised the issue of

plaintiff's standing to pursue injunctive relief, but did not dismiss the plaintiff's

26   claims, instead ordering her to show cause. *Id.* at 952. The court withdrew that

27   order six days later, though, when the parties stipulated to dismissal (*see* Dkt. No.

37, Case No. 06CV0897-LAB (CAB)). Thus the court never actually decided the

28   issue and the language Gruma quotes is dicta.

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

1   Class Period subjects their claims to dismissal as *de minimis*, especially where they

2   seek to represent a nationwide class of purchasers. Moreover, the FDA has not "set

3   a minimum level of significance" (Mot. at 24)—whatever that means. Its Nutrition

4   Facts box regulation setting the expression of less than 0.5g of trans fat per serving

5   as "0g" is the result of difficulties and expense in measuring trans fat below that

6   level, not a finding that a product containing less than 0.5g of trans fat per serving,

7   regardless of the serving size or number of servings, is insignificant in terms of

8   human health. Finally, as previously noted, Gruma's reliance on *McKinnis'*

9   holding that a product's ingredient list serves to correct front-label

10   misrepresentations has been rejected by the Ninth Circuit in *Williams*.

11          **F.    Restitutionary Disgorgement is Proper**

12          For their FAL count, Plaintiffs state they are entitled to "injunctive and

13   equitable relief, restitution, and . . .  disgorgement of funds by which Gruma was

14   unjustly enriched." (FAC ¶ 129.) While an FAL claim, like one under the UCL, is

15   equitable in nature, "an individual may recover profits unfairly obtained to the

16   extent that these profits represent monies given to the defendant or benefits in

17   which the plaintiff has an ownership interest." *Korea Supply Co. v. Lockheed*

18   *Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Because Plaintiffs only seek

19   restitutionary disgorgement limited to the amount by which Gruma was *unjustly*

20   enriched, i.e., the amount of Plaintiffs' and the class' monies that Gruma received

21   as a result of its misrepresentations, Plaintiffs' claim for that relief is proper.

22   **IV.    CONCLUSION**

23          For the foregoing reasons, Plaintiffs respectfully request the Court deny

24   Gruma's Motion to Dismiss. To the extent the Court is inclined to grant any

25   portion of the motion, Plaintiffs respectfully request that dismissal be without

26   prejudice and with leave to amend.

27

28

1  Dated:  August 23, 2010                    Respectfully Submitted,

2

3                                             /s/Jack Fitzgerald
                                              Jack Fitzgerald
4

5                                             **THE WESTON FIRM**
                                              Gregory S. Weston
6                                             Jack Fitzgerald
                                              888 Turquoise Street
7                                             San Diego, CA 92109
8                                             Telephone:  858 488 1672
                                              Facsimile:   480 247 4553
9

10                                            ***Counsel for Plaintiffs***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Henderson et al. v. Gruma Corporation et al., Case No. 2:10-cv-04173 AHM (AJWx)*
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS