1  R.D. KIRWAN (SBN 46259)
   DAVID C. ALLEN (SBN 190479)
2  DEVIN STONE (SBN 260326)
   **BARNES & THORNBURG LLP**
3  2049 Century Park East, Suite 3550
   Los Angeles, California 90067-3012
4  Telephone:  310-284-3880
   Facsimile:  310-284-3894
5  E-Mail:     kyle.kirwan@btlaw.com
               david.allen@btlaw.com
6              devin.stone@btlaw.com

7  KALIA C. PETMECKY (SBN 194094)        GREGORY S.C. HUFFMAN
   **AKIN GUMP STRAUSS HAUER**           (Admitted *Pro Hac Vice*)
8     **& FELD LLP**                     NICOLE L. WILLIAMS
   2029 Century Park East, Suite 2400    (Admitted *Pro Hac Vice*)
9  Los Angeles, California 90067         **THOMPSON & KNIGHT LLP**
   Telephone:  310-229-1000              1722 Routh Street, Suite 1500
10 Facsimile:  310-229-1001              Dallas, Texas 75201
   E-Mail:     kpetmecky@akingump.com    Telephone:  214-969-1700
11                                       Facsimile:  214-969-1751
                                         E-Mail:     gregory.huffman@tklaw.com
12                                                   nicole.williams@tklaw.com

13

14 Attorneys for Defendant
   GRUMA CORPORATION

15

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18 MARY HENDERSON and EILEEN        Case No. CV10 4173 AHM (AJWx)
   JOY PEVIANI, on behalf of
19 themselves and all others similarly  **DEFENDANT GRUMA**
   situated,                            **CORPORATION'S NOTICE OF**
20                                       **MOTION AND MOTION FOR**
                Plaintiffs,              **SUMMARY JUDGMENT**

21    v.                                 [Proposed] Judgment and Order lodged
                                         concurrently herewith; Declarations of
22 GRUMA CORPORATION,                    Devin Stone and Regan Ribaul filed
                                         concurrently herewith.
23 Defendants.
                                         Judge: The Hon. A. Howard Matz
24                                       Date:    November 14, 2011
                                         Time:    10:00 a.m.
25                                       Dept.:   14
                                         Discovery Cut-Off: December 19, 2011
26                                       Pre-Trial Conference: March 26, 2011
27                                       Trial: April 10, 2012

28

---

Defendant Gruma Corporation's Notice and Motion For Summary Judgment; Memorandum of Points and Authorities in Support Thereof

CV-10 4173 AHM

## NOTICE AND MOTION PURSUANT TO RULE 56

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2011 in Courtroom 14 in the United States District Court for the Central District of California, located at 312 Spring Street, Los Angeles, California, Defendant Gruma Corporation ("Gruma"), will move and hereby does move for summary judgment in favor of Defendant, and in the alternative, partial summary judgment on each of Plaintiffs' claims.  The motion is based on the following arguments:

First, the FDA's regulations preempt the Plaintiffs' claims under express preemption and conflict preemption rules.

Second, Plaintiffs failed to rely on the allegedly misleading facets of Gruma's labels and, thus, the requisite element of "actual reliance" is missing.

Third, Gruma's labels are accurate and no reasonable consumer would have been misled.

Fourth, Plaintiffs' alleged injury, if any, is so de minimis as to warrant no recovery.

Fifth, Plaintiff Henderson is judicially estopped from participating in this suit because she failed to report her claim in her bankruptcy.

This motion is made following the conference of counsel pursuant to Civil L.R. 7-3 which took place on October 7, 2011.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

This motion is based upon the attached supporting Memorandum of Points and Authorities, the Declarations of Regan Ribaul and Devin Stone, the separate statement of undisputed fact and conclusions of law, all other papers and pleadings on file, and on such other argument and evidence as may be presented to the court at or prior to the hearing on this motion.

Dated:  October 17, 2011          BARNES & THORNBURG LLP
                                  R.D. KIRWAN
                                  DAVID C. ALLEN


                                  By_____/s/R.D.Kirwan_____
                                           R.D. Kirwan
                                     Attorneys for Defendant
                                     GRUMA CORPORATION

2

# **TABLE OF CONTENTS**

Page No.

I.  INTRODUCTION ......................................................................................1

II. PERTINENT FACTS AND ALLEGATIONS ............................................2

III. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ...........................6

    A.  The Legal Standard ...........................................................................6

    B.  The FDA's Regulations Preempt Plaintiffs' Claims...........................7

        1.  There Is Express or Conflict Preemption for Any Challenge to the"Guacamole Flavored Dip" Label. ........................................9

        2.  There Is Conflict Preemption for Any Challenge to the "All Natural" Label.................................................................11

    C.  Plaintiffs Did Not Rely on the Alleged Misrepresentations and Therefore Cannot State a Claim .........................................................12

        1.  The UCL, CLRA, and FAL Requires Actual Reliance to State a Claim .................................................................12

        2.  Plaintiffs Testified That They Did Not Rely on the "All Natural" Label of the Spicy Bean Dip .....................................13

        3.  No Reliance on "Guacamole"....................................................15

        4.  No Reliance on Other Advertisements......................................15

    D.  The Statements "Guacamole Flavored Dip" and "All Natural" Truthfully Describe Product Content to a Reasonable Consumer and Are Not Actionable.............................................................16

    E.  Plaintiffs Were Not Injured, and Any Alleged Injury Plaintiffs May Have Suffered Is *De Minimis* .............................................................19

    F.  Plaintiff Henderson Is Judicially Estopped From Participating in This Suit Because She Failed to Report Her Claim in Her Bankruptcy .....22

    G.  Summary Judgment Is Also Appropriate for Gruma's pre-2008 "Guacamole Dip" Label ...................................................................24

IV. CONCLUSION.........................................................................................25

i

Defendant Gruma Corporation's Notice and Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................6, 7

*Andrews v. Metropolitan North Commuter R.R. Co.*, 882 F.2d 705 (2nd Cir. 1989) .........13

*Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179 (9th Cir.1988)...............................6

*CG Roxane LLC v. Fiji Water Company LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008)....17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)....................................................................6

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (2010) ...........................................19

*Cleveland v. Policy Management System Corp.*, 526 U.S. 795 (1999)................................6

*Dvora v. General Mills, Inc., Number CV 11-1074-GW(PLAx)*, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ......................................................................................9, 10, 11, 25

*English v. General Electric Co.*, 496 U.S. 72 (1990)....................................................8, 11

*Fraker v. KFC Corporation*, No. 06-CV-1284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ...................................................................................................11

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001)...............22, 23

*Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555 (9th Cir. 1992) ......................17, 23

*Herbert v. Lando*, 781 F.2d 298 (2d Cir. 1986)...................................................................7

*Hunt v. Cromartie*, 526 U.S. 541 (1999)............................................................................7

*Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ..........16, 25

*Kingsbury v. U.S. Greenfiber, LLC*, 2009 WL 2997389 (C.D. Cal. Sept. 14, 2009)..........12

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........7

*McKinniss v. General Mills, Inc.*, No. CV-07-2521 GAF (FMOx), 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007).........................................................................................10, 21

*McKinnis v. Kellogg, USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)........................10

*McKinniss v. Sunny Delight Beverages Co., CV 07-2521 GAF (FMOx)*, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. 2007) .................................................................................17

*POM Wonderful, LLC v. The Coca Cola Co.*, 727 F. Supp. 2d 849 (C.D. Cal. 2010) ...9, 10

*Skaff v. Meridien N. America Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007)...............20

*Weiner v. Snapple Bev. Co.*  07 Civ. 8742, 2011 WL 196930 (S.D.N.Y. Jan 21, 2011) .....20

*Veloff v. Pac Bell Wireless*, 2002 WL 31429802 (E.D. Cal. Dist. 2002) ...........................17

## STATE CASES

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (Cal. App. 2007), *disapproved of on other grounds by Kwikset*, 51 Cal. 4th 310 ....................................12

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009)................................................15, 25

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006)............................16

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003)............16

*Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622 (2010)......................................................16

*Tobacco II Cases*, 46 Cal. 4th 298 (2009).......................................................12, 13, 14, 16

## FEDERAL STATUTES

21 C.F.R. § 101.01, *et seq* ....................................................................................................8

21 C.F.R. § 101 (2009)...........................................................................................................7

21 C.F.R. § 101.22 ...............................................................................................................25

21 C.F.R. § 101.22(i)(1)(i) .....................................................................................................9

21 C.F.R. 101.9(c)(2)(ii) ......................................................................................................12

21 C.F.R. § 101.9(c)(2)(ii) ...................................................................................................19

21 C.F.R. §§172 ...................................................................................................................18

21 U.S.C. § 343 ......................................................................................................................8

21 U.S.C. § 343-1 ..................................................................................................................8

21 U.S.C. § 343-1(a)(1) ..............................................................................8

21 U.S.C. § 343-1(a) ..................................................................................8

21 U.S.C. § 343(a) .....................................................................................7

11 U.S.C. § 521(a)(1)(B)(i) .......................................................................22

Fed. R. Bankr. P. 1007(b)(1) .....................................................................22

Fed.R.Civ.P. 56(e) .......................................................................................6

The Nutrition Labeling and Education Act of 1990 (NLEA), Pub. L. No. 101-535, §§ 2-3, 104 Stat. 2353, 2353-61 (1990) ...............................................8

## STATE STATUTES

Cal. Bus. & Prof. Code § 17204 ................................................................19

Cal. Civ. Code §1780(a)........................................................................12, 19

## OTHER AUTHORITIES

William Schwarzer et al., Federal Civil Procedure Before Trial, § 8:1553 (2010)............13

Defendant Gruma Corporation's Notice and Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  <u>INTRODUCTION</u>

This is a lawyer driven suit masquerading as a consumer class action.  All that is left of this case after this Court's Rule 12 order of dismissal is whether a "reasonable consumer" would be deceived by the terms "Guacamole Flavored Dip" on Gruma's Guacamole Flavored Dip and "All Natural" on Gruma's Spicy Bean Dip.  As discovery has shown, a reasonable consumer would not be deceived, and, in fact, Plaintiffs were not deceived.  Nor can either claim proceed without running afoul of pre-emptive federal regulations.

Having lost most of their original claims, Plaintiffs now claim that a reasonable consumer would be fooled into thinking that Gruma's "Guacamole Flavored Dip" -- a flavored dip contained in a jar stored at room temperature in the unrefrigerated snack aisle -- would contain mostly fresh avocado on par with a perishable freshly-made guacamole.  Both Plaintiffs admit that the price of a jar of Guacamole Flavored Dip is cheaper than the cost of avocados themselves, that avocados are highly perishable, and that avocados, even if refrigerated, don't last more than a day.  They also admit that they purchased the product repeatedly, which means they would have seen that the product was not mashed avocados, but a flavored dip.  Yet, they try to maintain that they were deceived by reading selectively part of the label.  Plaintiffs also admit to purchasing the product for numerous other reasons besides the selective portions of the labels challenged.  What is more, Gruma's label comports with mandatory FDA regulations that regulate exactly how Gruma must label its flavored product and preempt Plaintiffs' claims.

Plaintiffs also now claim that a reasonable consumer would be fooled by the Spicy Bean Dip's label "All Natural" because the ingredients box on the label discloses that the product contains a tiny amount of trans fats -- far less than 0.5 grams per serving.  However, Plaintiffs (a) unlike a reasonable consumer, say they never bothered

1

to read the label and (b) more seriously, ignored the preemptive FDA regulations that mandate that, if the amount of trans fat in a product is less than 0.5 grams per serving, the label must state "Zero Trans Fat."  Gruma's lab reports show the amount of trans fats is far less than 0.5 grams per serving.  If the amount of trans fat is mandated by the FDA to be "zero," then the product is "all natural" because Plaintiffs have admitted that all other ingredients are in fact natural, such as beans, salt, peppers, onion and so on.  And once again, Plaintiffs admit to purchasing the product for numerous other reasons besides the "all natural" statement.

As shown above, Plaintiffs did not act as reasonable consumers, and have totally failed to prove "reliance."  Without reliance, there are no claims for consumer fraud or unfair competition laws as alleged in the First Amended Complaint.  Plaintiffs also have failed to show any damages.  Additionally, Plaintiff Henderson is judicially estopped from bringing any claims because she failed to disclose her claims herein during her bankruptcy proceeding, which was discharged *after* this lawsuit was filed.

As discovery has confirmed, Plaintiffs' claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.,* California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* all fail as a matter of law.

## II. PERTINENT FACTS AND ALLEGATIONS

Gruma manufactures corn and flour tortillas and related products, which are sold under the Mission brand.  (Separate Statement of Uncontroverted Facts and Conclusions of Law ("SSUF") No. 1).  Gruma also purchases from a third party and resells "Guacamole Flavored Dip" under its Mission Brand logo.  (SSUF No. 2).  Gruma previously purchased and resold "Spicy Bean Dip," but has not sold the Spicy Bean Dip since May of 2010.  (SSUF No. 3).  Plaintiffs Eileen Peviani ("Peviani") and Mary Henderson ("Henderson") are consumers who claim to have purchased "Guacamole

2

Flavored Dip" and "Spicy Bean Dip" (the "Products") a handful of times from various grocery stores. (SSUF No. 4).  For the Court's convenience, Gruma attaches full and complete copies of the Product labels. (SSUF No. 5).

On July 15, 2010, Gruma filed its Motion to Dismiss Plaintiffs' Complaint.  (Dkt. No. 11).  Rather than defend their complaint, Plaintiffs filed their First Amended Complaint ("FAC").  (Dkt. No. 21).  On August 9, 2010, Gruma filed its Motion to Dismiss Plaintiffs' FAC.  (Dkt. No. 230.  On Gruma's second Rule 12 motion, this Court dismissed all of Plaintiffs' claims related to "0g transfat," "0g cholesterol," the phrase "The Authentic Tradition," and the phrase "With Garden Vegetables."  (Dkt. No. 80).  All this Court left were the tag-end claims regarding "Guacamole Flavored Dip" and "All Natural."

Prior to 2010, Plaintiffs allege they purchased a small amount of Gruma's Products from grocery stores in Southern California.  (SSUF No. 6).  Plaintiffs have no proof of these purchases or the purchase price—Peviani produced no records and Henderson, shockingly, discarded all her receipts in December 2010, *after* the lawsuit was filed.  (SSUF No. 7).  In their depositions, Plantiffs also offered no meaningful evidence of the prices of Gruma products or competing products.  (SSUF No. 8).

With respect to the Guacamole Flavored Dip, Plaintiffs understood the term "flavored" to mean that "flavor" is added to a product. (SSUF No. 9).  Indeed, both Plaintiffs testified that Gruma's "Guacamole Flavored Dip" has a "guacamole" flavor. (SSUF No. 10).  Oddly, Plaintiff Peviani claims not to have seen the word "flavored" even though it is predominately displayed on the label and even though she claims to have seen the less prominently displayed term, "with garden vegetables," which is located below the term "flavored dip" in smaller font. (SSUF No. 11).  Both Plaintiffs made clear that the label did not affect her decision to purchase the dip:  Henderson purchased whatever dip was on sale, and Peviani would still have bought the dip even if had she read the "Guacamole Flavored Dip" label and bought the dip because she likes

the Mission brand name. (SSUF No. 12).  Plaintiffs admit that Gruma's jar of Guacamole Flavored Dip possesses many beneficial qualities that fresh-made guacamole does not possess, and no consumer would mistake one for the other.  For example, Plaintiff Peviani knows that guacamole made with fresh avocados spoils quickly, turning brown and unsightly in only hours. (SSUF No. 13).  Unlike guacamole made with fresh avocados, Gruma's Guacamole Flavored Dip does not "turn like a really unappealing brown color." (SSUF No. 14).  Indeed, Plaintiffs purchased Gruma's Guacamole Flavored dip in the unrefrigerated chip and snack aisle, not in the refrigerated section where "fresh" guacamole was sold. (SSUF No. 15).  That is exactly why Gruma's Guacamole Flavored Dip is preferred, because it is "more convenient." (SSUF No. 16).  Plaintiffs paid as much as 50% less for Gruma's Guacamole Flavored Dip than for fresh guacamole.  (SSUF No. 17).

Plaintiffs claim to have repeatedly purchased the product (SSUF No. 4) and clearly cannot also claim that they were unfamiliar with the product's characteristics. Further, and quite frankly, astonishingly, Plaintiffs admitted to never reading the ingredients list of Gruma's product, or of any other competing products, and have no idea about the ingredients or characteristics of competing products. (SSUF No. 18).

With respect to the Spicy Bean Dip, Plaintiffs confirmed that the only ingredient in the Spicy Bean Dip that they contend was not "all natural" was partially hydrogenated vegetable oil ("PHVO"), a *trans* fatty acid. (SSUF No. 19).  Plaintiff Peviani defined "all natural" as being free of "chemicals" and "preservatives." (SSUF No. 20).  The ingredients found in the Spicy Bean Dip are all naturally derived and exactly what Plaintiffs expected:  Pinto Beans, Water, Green Bell Pepper, Vegetable Shortening (Partially Hydrogenated Soybean Oil and Cottonseed Oil), Vinegar, Jalapeno Peppers, Salt, Dehydrated Onion, Granulated Garlic, Spices. (SSUF No. 21-22).  Ms. Henderson testified that, in purchasing any product prior to 2010, she did not even bother to look whether that product contained any *trans fats* or PHVO. (SSUF No. 23).

4

Defendant Gruma Corporation's Notice and Motion for Summary Judgment (Fed. R. Civ. P. 56); Memorandum of Points and Authorities in Support Thereof

Neither Plaintiff admits to having reviewed the entire label for the Spicy Bean Dip or for any competing product.  (SSUF No. 24).

Plaintiff Henderson even testified that the use of PHVO would not have impacted her decision to purchase the Spicy Bean Dip.  (SSUF No. 25).  The reasons both Plaintiffs purchased the dip was unrelated to the trans fat content.  (SSUF No. 12)  Plaintiffs first learned about the alleged dangers of *trans fat* from their lawyer, Greg Weston in January 2010, after they had purchased Gruma's products. (SSUF No. 26).  Neither Henderson nor Peviani has purchased a Product since their lawyer signed them up for the case and informed them of the dangers that PHVO allegedly poses. (SSUF No. 27).  Before Mr. Weston informed them of these alleged harms, Plaintiffs were absolutely unaware about those alleged harms and never made a purchasing decision based on the presence or absence of trans fat. (SSUF No. 28).  Most tellingly, despite their allegations in this lawsuit, Plaintiffs continue to purchase and consume other foods that likely contain trans fat or PHVO, with no inquiry into the contents of those foods. (SSUF No. 29).

Gruma's Spicy bean dip contains a tiny amount of trans fat – .22 grams per serving. (SSUF No. 30).  As such, the FDA regulations mandate that Gruma identify that amount of *trans* fat as "0g" per serving.

Plaintiff Henderson filed a Chapter 7 bankruptcy proceeding on April 7, 2010, *after* she first learned about the alleged dangers of *trans fat* from their lawyer, Greg Weston, in January 2010.  That bankruptcy was discharged on August 6, 2010, *after* this lawsuit was filed on Henderson's behalf.  Henderson did not identify any existing, potential, or contingent claim against Gruma Corporation or related to its products in that bankruptcy proceeding.  (SSUF No. 37).

## III.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A. The Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  *Id*. at 248.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  The moving party need not disprove the other party's case.  *See Celotex, 477 U.S. at 325*.  Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp*., 526 U.S. 795, 805–06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e).  Summary judgment will be entered against the opposing party if that party does not present such specific facts.  *Id*.  Only admissible evidence may be considered in deciding a motion for summary judgment.  *Id*.; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.' " *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

In the alternative, Gruma requests partial summary judgment on each of Plaintiffs' claims. *Herbert v. Lando*, 781 F.2d 298, 306 (2d Cir. 1986) (affirming partial summary judgment on certain statements in defamation action).

## B. The FDA's Regulations Preempt Plaintiffs' Claims

Congress has authorized the FDA to regulate food labels. *See* 21 U.S.C. § 343(a); 21 C.F.R. § 101 (2009). The question of preemption accordingly arises as to Plaintiffs' remaining claims that Gruma's labeling of its products as "Guacamole Flavored Dip" and "All Natural," as allowed by the FDA, can violate California state laws.

Preemption can arise under the Supremacy Clause in three circumstances. First, Congress can define explicitly the extent to which its enactments preempt state law. . . . Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . .

> Finally, state law is preempted to the extent that it actually conflicts with federal law.  Thus, the Court has found preemption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*English v. Gen. Elec. Co.*, 496 U. S. 72, 78-79 (1990) (citations omitted).

The Nutrition Labeling and Education Act of 1990 (NLEA), Pub. L. No. 101-535, §§ 2-3, 104 Stat. 2353, 2353-61 (1990) (codified as amended at 21 U.S.C. §§ 343, 343-1), amended the Federal Food, Drug, and Cosmetic Act (FDCA) to provide FDA with specific authority to require nutrition labeling of most foods regulated by the FDA.  The NLEA and the FDCA mandate a comprehensive scheme for labeling, and Section 403A of the FDCA contains an express preemption provision: "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" certain food labeling requirements, unless an exemption is provided by the Secretary (and, by delegation, FDA).  21 U.S.C. § 343-1(a).  The statute prohibits the adoption by any State or political subdivision of any requirements related to food packaging that conflict with the various provisions of 21 U.S.C. § 343.  *Id.* § 343-1(a)(1).  Section 343 is one of the authorities for the regulations regarding food labeling that are promulgated at 21 C.F.R. § 101.01, *et seq.*

Here, federal law in the form of FDA regulations expressly forbid contrary state regulation.  Alternatively, even if there were not express preemption, Plaintiffs' state law claims conflict with federal law in the form of FDA regulations and would be preempted.

1.  <u>There Is Express or Conflict Preemption for Any Challenge to the "Guacamole Flavored Dip" Label.</u>

"Detailed regulations promulgated under [21 U.S.C. § 343] of the FDCA expressly permit a manufacturer to indicate the 'characterizing flavor' of a food product, and set forth exactly how the product's 'characterizing flavor' is to be described on the product's 'label, labeling, and advertising.'" *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011).  The FDA has adopted regulations concerning flavored foods generally, and those regulations provide that a food may be described as "flavored," "even if little of the "characterizing" ingredient is actually present in the food."  *POM Wonderful, LLC v. The Coca Cola Co.*, 727 F. Supp. 2d 849, 864-65 (C.D. Cal. 2010) (emphasis added).  21 C.F.R. § 101.22(i)(1)(i) explains:

> If the food is one that is commonly expected to contain a characterizing food ingredient … and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor … <u>shall be immediately followed by the word '*flavored*'</u> in letters not less than one-half the height of the letters in the name of the characterizing flavor.

Thus, the FDA has specifically regulated the use and font size of the characterizing flavor.  It is undisputed that Gruma has complied with these regulations.  On the label for its Guacamole Flavored Dip, the word "Flavored" immediately follows "Guacamole" in the font size specified by the FDA's regulations.  (SSUF No. 5).

Courts have held that challenges to labels conforming to FDA regulations regarding characterizing flavor are preempted.  *See Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *5 (C.D. Cal. May 16, 2011) (holding

9

that "the regulations concerning characterizing flavor apply whenever 'the manufacturer or distributor of food wishes to designate the type of flavor in the food other than through the statement of ingredients'" and holding the product name "Total Blueberry Pomegranate" "falls well within the extensive regulatory scheme promulgated under the FDCA").

Further, the depiction of avocados and other vegetables on the label does not affect the analysis of the identity of the characterizing flavor or the pre-emption issue. Courts have held that the regulation of vignettes, such as the avocados depicted on Gruma's jar, are also within the purview of the FDA.  *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011); *POM Wonderful, LLC v. The Coca Cola Co.*, 727 F. Supp. 2d 849, 874 (C.D. Cal. 2010); *McKinnis v. Kellogg, USA*, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007).  And FDA regulations permit illustrations of fruit on product labels to indicate that product's "characterizing flavor," even where the product contains no ingredients derived from the depicted fruit.  *See Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011); *McKinnis v. Kellogg, USA*, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007); *McKinniss v. General Mills, Inc.*, No. CV-07-2521 GAF (FMOx), 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007).  In *McKinnis v. Kellogg*, the court held that depictions of fruit vignettes on a Fruit Loops box were "entirely accurate and permissible under FDA regulations," even where the product contained only fruit flavors and did not contain the actual fruit as ingredients.  2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007).

The case for Gruma's "Guacamole Flavored Dip" is even more compelling in its compliance with FDA regulations.  Not only does "guacamole" and the avocado vignette accurately describe the product's flavor,[1] the product actually and indisputably

---

[1] Plaintiffs admit the dip tasted like guacamole.  (SSUF No. 10).  Plaintiffs also testified that the Guacamole Flavored Dip tasted good.  (*Id.*).  Indeed, they bought the product

*contains* the avocado fruit depicted, as shown by the ingredient "avocado powder." (SSUF No. 5).

Even if there were not an express preemption provision, conflict preemption would bar Plaintiffs' claims based on Gruma's label of the product as "Guacamole Flavored Dip" with vignettes of avocados.  State law is preempted "where it is impossible for a private party to comply with both state and federal requirements." *English*, 496 U.S. at 79.  Because it would be impossible to comply with both federal regulations as set forth above, and Plaintiffs' theory that the use of these mandated or allowable descriptions and depictions violates state law, Plaintiffs' claims must be dismissed.  *See  Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *5 (C.D. Cal. May 16, 2011) (noting "extensive regulatory scheme promulgated under the FDCA" regarding food labels); *Fraker v. KFC Corporation*, No. 06-CV-1284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) (claims for misbranding of food products implicitly preempted by FDCA).

It is undisputed that Gruma has complied with the applicable FDA regulations.  Therefore, Plaintiffs' claims based on Gruma's labeling of the product as "Guacamole Flavored Dip" are preempted by Gruma's compliance with the applicable regulations.  Gruma is entitled to summary judgment on those claims.

2.  <u>There Is Conflict Preemption for Any Challenge to the "All Natural" Label.</u>

Plaintiffs argue that the presence of a very small amount of PHVO, which is a source of *trans* fat, renders the "All Natural" label of the Spicy Bean Dip misleading and deceptive.  FAC at ¶¶ 7, 24-25.  Plaintiff's argument is pre-empted by FDA regulations.  As this Court previously found in granting the Motion to Dismiss as to Plaintiffs' claims regarding the statement of "0g *trans* fat" on the SBD label, FDA

repeatedly.  (SSUF No. 6).

Defendant Gruma Corporation's Notice and Motion for Summary Judgment (Fed. R. Civ. P. 56); Memorandum of Points and Authorities in Support Thereof

regulations mandate the amount of *trans* fat be stated as "zero" if the product has less than 0.5g of *trans* fat per serving, which is the case for SBD.  Minutes of Court dated April 11, 2011 at pp. 18-19; 21 C.F.R. 101.9(c)(2)(ii).  It is undisputed that all the other ingredients in the Spicy Bean Dip are natural.  Therefore, the statement "All Natural" is only actionable if the Court ignores 21 C.F.R. 101.9(c)(2)(ii), which conflicts with FDA regulations.[2]

### C. Plaintiffs Did Not Rely on the Alleged Misrepresentations and Therefore Cannot State a Claim

Plaintiffs' claims require proof of actual reliance.  But Plaintiffs did not rely on the alleged misrepresentations.  Thus, their claims fail.

#### 1.  The UCL, CLRA, and FAL Requires Actual Reliance to State a Claim

In *Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009), the California Supreme Court defined the causation requirement for the UCL and FAL as requiring "an actual reliance requirement" *Id.* at 325; *see also Kingsbury v. U.S. Greenfiber, LLC*, 2009 WL 2997389, at *9-10 (C.D. Cal. Sept. 14, 2009) (Matz, J.).  The CLRA also requires a demonstration of actual reliance. *See* Cal. Civil Code § 1780(a) (CLRA). *See also Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (Cal. App. 2007), *disapproved of on other grounds by Kwikset*, 51 Cal. 4th 310 ("[P]laintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions.").  Plaintiffs must prove that the alleged "misrepresentation or nondisclosure was an immediate cause of the injury-producing conduct . . . by showing that" without the misrepresentation "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th at

---

[2] Although the FDA has failed to adopt express regulations regarding the general use of the term "natural," that failure has no application here because Plaintiffs' sole theory for why the product is not "natural" *is* the subject of express FDA regulations.  The cases addressing the FDA's failure to define "natural" are inapposite to Plaintiff's theory of violation.

Defendant Gruma Corporation's Notice and Motion for Summary Judgment (Fed. R. Civ. P. 56); Memorandum of Points and Authorities in Support Thereof

326.  The alleged misrepresentation must have "played a substantial part, and been a substantial factor, in influencing" the plaintiff's decision to purchase the product.  *Id.*

### 2. Plaintiffs Testified That They Did Not Rely on the "All Natural" Label of the Spicy Bean Dip

After this Court dismissed the balance of Plaintiffs' claims under Rule 12, the Plaintiffs' only remaining claim regarding Gruma's Spicy Bean Dip is that the "All Natural" label is misleading because the dip "contains partially hydrogenated soybean oil, a man-made, toxic product known to cause a range of deleterious health effects when consumed."  (FAC at ¶ 80).  Plaintiffs confirmed that the only ingredient in the Spicy Bean Dip that they contend was not "all natural" was PHVO.  (SSUF No. 19).

In Plaintiffs' original Complaint, Plaintiffs specifically plead that, prior to meeting with their attorney, they did not distinguish between products with partially hydrogenated vegetable oil and those without.  They thus plead they did not rely on any alleged misrepresentations.  (Compl. at ¶¶ 19-22, 89-90).  In response to Gruma's first motion to dismiss, filed on July 15, 2010, Plaintiffs drastically contradicted their original reliance allegations to allege that they were actively looking for products without PHVO.  (FAC at ¶¶ 82-95, 106-110).  The reason was simple:  as originally pled, Plaintiffs had affirmatively admitted that they could not have plausibly relied on any such misrepresentations.  Prior pleadings are admissible in evidence against the pleader. WILLIAM SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 8:1553 (2010); *Andrews v. Metro North Commuter R.R. Co.*, 882 F2d 705, 707 (2nd Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party.")

The subsequent sworn deposition testimony from Plaintiffs themselves demonstrates that Plaintiffs had it right the first time:[3] Plaintiffs did not rely on any

---

[3] Indeed, each plaintiff's flat denial of key allegations of the Complaint confirms that this case was conceived and executed by the lawyers and does not reflect each Plaintiff's actual experience.  This result is not surprising given that neither plaintiff

1    alleged misrepresentations in purchasing the Products.  Keeping in mind that Plaintiffs'

2    alleged purchases occurred between 2006 and 2010 (FAC at ¶ 16), Ms. Henderson

3    testified that in purchasing any product prior to 2010, she did not even bother to look

4    whether that product contained any *trans fats* or PHVO.  (SSUF No. 23).  Ms.

5    Henderson testified that the presence of PHVO would not have impacted her decision to

6    purchase the Spicy Bean Dip, that she purchased whatever brand of Spicy Bean Dip was

7    on sale, and that she never read the ingredient list for any brand of bean dip.  (SSUF No.

8    18, 25).  Ms. Peviani similarly testified that her reason for purchasing the bean dip was

9    the Mission brand and that she did not read the ingredient list for any brand of bean dip.

10   (SSUF No. 12, 18).

11       Rather, Plaintiffs first learned about the alleged dangers of *trans fat* from their

12   lawyer, Greg Weston in January 2010 after they had purchased Gruma's products.

13   (SSUF No. 26).  Before Mr. Weston informed them of these alleged harms, Plaintiffs

14   were absolutely unaware about those alleged harms and never made a purchasing

15   decision based on the presence or absence of *trans fat*.  (SSUF No. 28).

16       Moreover, after Plaintiffs spoke with their attorneys, they never purchased the

17   Products again.  (SSUF No. 27).  Thus, by their own admissions, neither plaintiff relied

18   on the apparent lack of *trans fat* or PHVO in deciding to buy Mission's Spicy Bean Dip.

19   Given that the "All Natural" label on the Spicy Bean Dip could not have "played a

20   substantial part, [or] been a substantial factor, in influencing" their decisions to purchase

21   the products (*In re Tobacco II Cases*, 46 Cal. 4th at 326), Plaintiffs lack the requisite

22   reliance to assert their claims.

23       Thus, at the time Plaintiffs purchased the Products they didn't care about the

24   PHVO content of the products.  In preparation for this suit, Plaintiffs may have changed

25   their buying and eating habits.  But as they testified, they never purchased a Product

26

27   ever saw the complaint before it was filed.  (SSUF No. 31).

14

28

because they believed it contained no PHVO.  (SSUF No. 12).  In other words, the alleged "misrepresentations" on the Products had no effect whatsoever on their purchasing decisions.  Plaintiffs' past-purchase health-consciousness is of no moment.

### 3.  No Reliance on "Guacamole"

Also remaining after the Rule 12 motion is Plaintiffs' allegation that they were deceived into thinking that they were buying fresh guacamole.[4]  But the evidence shows that Plaintiffs did not rely on the "Guacamole" portion of the "flavored dip" label in buying Mission's "Guacamole Flavored Dip."  Specifically, there is no evidence that Peviani was misled by the label.  To the contrary, Peviani admits that, had she read the term "flavored dip" on the label, *she would have still purchased Mission's Guacamole Flavored Dip.*  (SSUF No. 12)[5]  Peviani further admits that the reason she purchased the dip was because of the Mission brand name and because it was convenient. (SSUF No. 12, 16).  Thus, Peviani did not rely on the statement "flavored dip."  It had no impact on her purchasing decision and, thus cannot form the basis of her false advertising claim.

### 4.  No Reliance on Other Advertisements

To the extent the FAC asserts claims related to advertisements other than the labels themselves, Plaintiffs' own testimony debunks any such allegations.  Plaintiffs conclusively testified that they never saw any advertisements beyond the label of the products.  (SSUF No. 33).

Because Plaintiffs only allege they were deceived by the labels and testified that they saw no other Gruma/Mission related advertisements, Plaintiffs cannot state a claim for deception based on such hypothetical advertisements.  *Cohen v. DIRECTV, Inc.,* 178

---

[4] This contention is, itself, problematic.  As discussed, *supra*, no reasonable consumer would be deceived into thinking that that Gruma's Guacamole Flavored Dip was anything other than a flavored dip.

[5] Peviani claims not to have seen the word "flavored" even though it is predominately displayed on the label and even though she claims to have seen the term "with garden vegetables" which is located *below* the term "flavored dip" (SSUF No. 11).

Cal.App.4th 966 (2009); *Pfizer Inc. v. Super. Ct.*, 182 Cal.App.4th 622, 631 (2010) ("one who was not exposed to the alleged misrepresentations" cannot recover under UCL); *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926, 12-13 (S.D. Cal. Feb. 9, 2010) ("[plaintiff] cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon. The statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations.").

Thus, any advertisements other than the labels to the products themselves have no place in this litigation – Plaintiffs have no standing to assert claims of deception based on such phantom advertisements.

### D. The Statements "Guacamole Flavored Dip" and "All Natural" Truthfully Describe Product Content to a Reasonable Consumer and Are Not Actionable.

A product's label violates consumer protection laws only if it is likely to deceive a reasonable consumer.[6] *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 1360 (2003); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (Cal. 2009) (to state a claim under the California UCL or FAL, a plaintiff must "show that members of the public are likely to be deceived.")

The only two statements that survived Gruma's Motion to Dismiss are "Guacamole Flavored Dip" found on the label of Mission's Guacamole Flavored Dip, and "All Natural" found on Gruma's Spicy Bean Dip. Neither of these remaining statements can be the basis of a misrepresentation claim for a reasonable consumer.

---

[6] Courts have defined a reasonable consumer as "the ordinary consumer acting reasonably under the circumstances" who is "not versed in the art of inspecting and judging a product…." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006). Whether the label would mislead or deceive reasonable consumer can be a question of law. *See id.* ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law.").

*First,* the label for Mission's "Guacamole Flavored Dip" is straightforward and true. It simply describes the characterizing flavor of the dip, which is not misleading, *inter alia,* because "[a] reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list." *McKinniss v. Sunny Delight Beverages Co.,* CV 07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107 *13 (C.D. Cal. 2007) (dismissing claim that "Natural Fruit Flavors" misled consumers where cereal did not contain any real fruit). Both Plaintiffs testified that they understand the term "flavored" to mean that "flavor" is added to a product (SSUF No. 9) and both Plaintiffs admit that in tasting the product, Mission's "Guacamole Flavored Dip" has a "guacamole" flavor. (SSUF No. 10). Thus, they both agree that the label's statement is entirely accurate – a consumer can taste the "flavor" of guacamole. Thus, Mission's label for its "Guacamole Flavored Dip" is not actionable. *See e.g., CG Roxane LLC v. Fiji Water Company LLC,* 569 F.Supp 2d 1019, 1035 (N.D. Cal. 2008) (no misrepresentation where statement that water was "bottled at source" was factual.").

Plaintiffs seem to claim to have expected the dip to be over 50% fresh avocados. Such an interpretation is only possible if one strains to misinterpret an otherwise straight forward label. Plaintiffs' strained attempt to read more into Mission's limited label cannot be supported by the language they identify. As other courts have held, a UCL claim (or any other misrepresentation-based claim) "may not be based on a 'strained and unjustified interpretation of the [defendant's] advertisements." *Veloff v. Pac Bell Wireless,* 2002 WL 31429802 at *3 (E.D. Cal. Dist. 2002) (unpublished) (quoting *State Bd. of Funeral Dirs. v. Mortuary in Westminster Memorial park,* 271 Cal. App. 2d 638, 642 (1969). Plaintiffs' failure to read the ingredient list for the product, or even the entire front of the label, does not support a claim that the label would deceive a "reasonable consumer."

17

Defendant Gruma Corporation's Notice and Motion for Summary Judgment (Fed. R. Civ. P. 56); Memorandum of Points and Authorities in Support Thereof

Plaintiffs admit that Gruma's jar of Guacamole Flavored Dip possesses many beneficial qualities that fresh-made guacamole does not possess, and no consumer would mistake one for the other.  They admit Gruma's Guacamole Flavored Dip is significantly less expensive than fresh-made guacamole.  Plaintiffs recall paying as much as 50% less for Gruma's Guacamole Flavored Dip than for fresh-made guacamole.  (SSUF No. 17).  Thus, Plaintiffs acknowledged that they saved perhaps three or four dollars *per jar* by buying Gruma's Guacamole Flavored Dip.  And Plaintiffs know that guacamole made with fresh avocados spoils quickly, turning brown and unsightly in only hours.  (SSUF No. 13).  Unlike guacamole made with fresh avocados, Gruma's Guacamole Flavored Dip does not "turn like a really unappealing brown color."  (SSUF No. 14).   Indeed, Plaintiffs purchased Gruma's Guacamole Flavored dip in the unrefrigerated chip and snack aisle, not in the refrigerated section where "fresh" guacamole was sold.  (SSUF No. 15).  Gruma's Guacamole Flavored Dip is preferred by Plaintiff Peviani because it is "more convenient."  (SSUF No. 16).   No consumer would think a jar of homogenous green paste, sold for half of what freshly-made refrigerated guacamole costs, stored in the room temperature chip aisle, <u>labeled as "Flavored Dip"</u> would contain mostly fresh, highly perishable avocados.

*Second,* the phrase "All Natural" found on Mission's Spicy Bean Dip label is accurate in the context of the label as a whole, and unlikely to deceive a reasonable consumer.  Plaintiff Peviani defined "all natural" as being free of "chemicals" and "preservatives."  (SSUF No. 19).  Not surprisingly, the FDA does not consider any of the ingredients found in Mission's Spicy Bean Dip to be "preservatives" or "chemicals."  *See* 21 C.F.R. §§172 and 173 (listing all preservatives and additives permitted for human consumption).  Thus, Gruma's use of the term "All Natural" is true, and would not deceive a reasonable consumer.  Perhaps most telling, Peviani testified that Mission's Spicy Bean Dip contained all of the ingredients she expected to find in a bean dip.  (SSUF No. 21).  The ingredients found in the Spicy Bean Dip are all naturally

18

derived and exactly what Plaintiffs expected:  Pinto Beans, Water, Green Bell Pepper, Vegetable Shortening (Partially Hydrogenated Soybean Oil and Cottonseed Oil), Vinegar, Jalapeno Peppers, Salt, Dehydrated Onion, Granulated Garlic, Spices.  (SSUF No. 22).  Plaintiff Henderson testified that the presence of PHVO would not have impacted her decision to purchase the Spicy Bean Dip.  It is undisputed that Plaintiffs were not deceived.

Moreover, this is a false labeling case.  Plaintiffs assert that the label "All Natural" on the Spicy Bean Dip is false because the product contains molecular amounts of trans fat.  The preemptive FDA regulations unambiguously state that when the amount of trans fat per serving is less than 0.5 grams per serving, the amount of trans fat MUST be stated as Zero Trans Fat because it is immaterial to a consumer's health and "nutritionally insignificant." 21 C.F.R. § 101.9(c)(2)(ii); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (2010).  The actual amount in the Spicy Bean Dip is .22 grams per serving.  (SSUF No. 25).  Thus, Gruma must label the product as containing <u>zero</u> trans fat because "it is more important to prevent consumer confusion by having consistency on the food label than to be prescriptive as to the method by which nutrient values for relative claims are determined and used." *Id.*  Zero means zero.  As in *Chacanaca*, Gruma would "violate FDA regulations if it were to attempt to state a decimal amount smaller than 0.5." *Chacanaca,* 752 F. Supp. 2d 1111, 1115.

All the remaining ingredients are natural, and Plaintiffs concede this.  Thus, the claim of "All Natural" is true and non-deceptive.  The claim should be dismissed.

### E. Plaintiffs Were Not Injured, and Any Alleged Injury Plaintiffs May Have Suffered Is *De Minimis*

Plaintiffs cannot show that they were injured by their only remaining challenges to the statements on the labels for Gruma's products.  Proof of actual injury is required for recovery on Plaintiffs' claims for violations of the UCL, CLRA, and FAL.  *See* Cal. Civ. Code §1780(a) ("Any consumer *who suffers any damage*…may bring an

19

1   action….") (emphasis added); Cal. Bus. & Prof. Code § 17204 (stating actions may be

2   brought "by a person who has suffered injury in fact").  Further, any injury Plaintiffs

3   may have suffered is *de minimis* and therefore cannot support a cause of action.  The

4   Ninth Circuit has recognized the doctrine of *de minimis non curat lex*—"the law does

5   not care about trifles"—and has stated that some allegations are "too trifling of an injury

6   to support constitutional standing." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506

7   F.3d 832, 839-40 (9th Cir. 2007).

8          The theory of no injury or *de minimis* injury has been applied to product labeling

9   cases.  In *Weiner v. Snapple Bev. Co*., the Southern District of New York granted

10  summary judgment for defendants on a claim similar to Plaintiffs', finding that the

11  evidence established minimal or no price difference due to an "All Natural" label.  No.

12  07 Civ. 8742, 2011 WL 196930 (S.D.N.Y. Jan 21, 2011).  At issue in *Weiner*, was

13  Snapple's prior marketing of its beverages as "All Natural" when they contained high

14  fructose corn syrup.  *Id.* at *1.  Plaintiffs alleged that they had paid a premium for

15  Snapple beverages based upon the label of "All Natural." *Id.* at *1.  Although they

16  alleged to have purchased Snapple "hundreds of times," plaintiffs did not offer evidence

17  of the price they paid for Snapple or the prices charged by competing beverages and

18  therefore could not demonstrate that they paid a premium for the "All Natural" labeled

19  beverage. *Id.* at *1, 3, 5.  The court noted that plaintiffs had no record of their Snapple

20  purchases; that plaintiffs provided other reasons for the purchase of Snapple beyond the

21  label; and that there was evidence that Snapple was sometimes cheaper than competing

22  products and that the prices fluctuated greatly. *Id.* at *1, 3, 4, 5.

23         The facts compel the same conclusion in this case as to the only two remaining

24  challenges by Plaintiffs.  Plaintiffs' theory of injury in the FAC is that the products "cost

25  more than similar products without misleading labeling" and that Plaintiffs "paid more"

26  than they would have for the products because of the products' labeling. *See* Corrected

27  FAC at ¶¶ 85-86, 117.  Just as in *Weiner*, Plaintiffs cannot support this theory with any

28

20

evidence.  Plaintiffs offer no meaningful evidence of the price they paid or any evidence that the products were sold at a premium.  (SSUF No. 8).  Moreover, Plaintiff Henderson destroyed the evidence of her purchases.

Both Plaintiffs also testified to factors affecting their purchasing decisions that were not related to the label statements at issue or that the purchase was in no way related to the label statements.  (SSUF No. 12).  Tellingly, despite their allegations in this lawsuit, Plaintiffs continue to purchase and consume foods that likely contain trans fat or PHVO, with no inquiry into the contents of those foods.  (SSUF No. 29)  And even more compelling than the facts of *Weiner*, Plaintiffs purchased only trifling amounts of the products to begin with.  (SSUF No. 6).

Additionally, the nutritional table and ingredient list on the labels of both products set forth the ingredients in very specific detail.  (SSUF No. 5)  Had either Plaintiff genuinely purchased the products due to either challenged labels, they could have quickly verified the content by reading the entire label, but they did not do so.  (SSUF No. 24).  A complaint that such general phrases do not repeat information already laid out in the ingredients list and nutritional table raises no legally significant claim.  *See McKinniss v. General Mills, Inc.*, No. CV-07-2521 GAF (FMOx), 2007 WL 4762172, at *4 (C.D. Cal. Sept. 18, 2007) ("[A]ny reasonable consumer would be put on notice of the product's contents simply by doing sufficient reading of the ingredient list.").

Because Plaintiffs have testified to only minimal purchases of either product, have produced no evidence of the purchase price of each product or the premium supposedly paid for the label statements, and have confirmed that those purchases were not in fact due to the challenged statements, Plaintiffs have failed to state a claim for any actual injury or arising to any more than a *de minimis* claim.

**F.  Plaintiff Henderson Is Judicially Estopped From Participating in This Suit Because She Failed to Report Her Claim in Her Bankruptcy**

Henderson is judicially estopped from bringing any claims against Gruma because she failed to disclose any of these causes of action in a partially concurrent bankruptcy proceeding that resulted in a discharge of her debts.  Therefore, Gruma is entitled to summary judgment on all claims by Henderson.

"In the bankruptcy context, a party is judicially estopped form asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).  In a bankruptcy proceeding, a debtor has a duty to file a schedule of assets and liabilities.  11 U.S.C. § 521(a)(1)(B)(i); FED. R. BANKR. P. 1007(b)(1).  "The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*.  The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continued for the duration of the bankruptcy proceeding."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (internal quotations and citations omitted); FED. R. BANKR. P. 1009(a) (allowing amendments to schedules "as a matter of course at any time before the case is closed"); *see also* Official Form 6B (Type of Property No. 21 is "[o]ther contingent and liquidated claims of every nature….").  "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (internal quotations and citations omitted).

Henderson filed a Chapter 7 Voluntary Petition to initiate a bankruptcy proceeding on April 7, 2010.  (SSUF No. 34).  Henderson filed a schedule of assets and liabilities with the Petition.  (SSUF No. 35).  That schedule was never amended.  On August 6, 2010, the bankruptcy court discharged Henderson's debts based upon the

22

schedules on file.  (SSUF No. 36).  None of these schedules mentioned any existing, potential, or contingent claim against Gruma Corporation.  (SSUF No. 37).

The Ninth Circuit has previously held that failing to list a claim as an asset on a bankruptcy schedule and then later suing on those claims is a clearly inconsistent position resulting in actions by both the court and creditors that supports a finding of judicial estoppel.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).  Judicial estoppel applies not only when a debtor's debts are permanently discharged, but anytime the bankruptcy court accepts the debtor's assertions by relying on the schedule in any way.  *Id.*  Henderson was aware that the bankruptcy court was relying upon the information in the schedules filed.  (SSUF No. 38).

"Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).  A debtor does not need to have *all* facts known at the time of the bankruptcy, just enough to know of the existence of a potential claim, at which point the debtor is required to notify the bankruptcy court of that potential claim.  *See, e.g., Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 557 (9th Cir. 1992) (granting summary judgment to defendant based upon failure of plaintiff to provide notice of a potential claim in bankruptcy).

In this case, Henderson had knowledge of facts necessary to require a disclosure in the bankruptcy proceeding of the claims now asserted against Gruma Corporation in this lawsuit.  The Original Complaint in this matter was filed on June 4, 2010, two months *before* Henderson received a discharge in the bankruptcy proceeding.  Henderson was fully aware of the lawsuit.  (SSUF No. 39).  Additionally, her pleadings in this matter indicate that Henderson became aware of the facts supporting this claims asserted against Gruma Corporation as early as January 2010, which was three months

*before* Henderson filed the bankruptcy petition and the related schedules of assets and liabilities. *See* Original Complaint at ¶ 89 ("Plaintiffs did not discovery the [sic] that Gruma's labeling of the Mission Trans Fat Products was false, deceptive, or misleading until late January 2010…."). Further, Henderson's deposition testimony establishes that she knew about the potential claims against Gruma at the time the bankruptcy petition was filed. (SSUF No. 40).

Therefore, Henderson's claims are barred by judicial estoppel, and Gruma Corporation is entitled to summary judgment on all claims asserted by Henderson in this lawsuit.

### G. Summary Judgment Is Also Appropriate for Gruma's pre-2008 "Guacamole Dip" Label

Prior to 2008, the label for GFD was identical except that it stated "Guacamole Dip" in a uniform font size. (SSUF No. 5). Plaintiffs have not challenged this label; the FAC refers only to the "Guacamole Flavored Dip" label. *See* FAC at ¶ 72 (and picture above). Therefore, summary judgment is appropriate as to the pre-2008 label.[7]

Further, all of the arguments set forth above in favor of summary judgment apply equally to this pre-2008 label. There was no distinction for pre- and post-2008 time frames for any of the following: (1) the Plaintiffs' testimony that they did not rely on the product labels; (2) the Plaintiffs' lack of any records regarding purchases; (3) the Plaintiffs' failure to present evidence of damages; and (4) the accuracy of the "guacamole dip" description for the product.

FDA regulations also pre-empt any challenge to this label because the label provides the name of a product—"Dip"—along with the name of the characterizing flavor—"Guacamole." As explained in Section B.1, the FDA has extensively regulated

---

[7] Gruma brings the prior label to the Court's attention because Plaintiffs first raised the argument in the meet and confer meeting *for this motion*, on October 7, 2011. But as testimony has confirmed, Plaintiffs never saw the "Guacamole Dip" label and have no standing to raise the argument (SSUF No. 33).

the use of characterizing flavor terms on label, and challenges to these characterizing flavor terms have been held to be preempted.  *See* 21 C.F.R. § 101.22; *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *5 (C.D. Cal. May 16, 2011).

Any consumer protection concerns regarding the "Guacamole Dip" label were mooted in 2008, when the label was revised to state "Guacamole Flavored Dip." Perhaps most important, Plaintiffs never saw the pre-2008 label.  As such, they never relied on that label and, therefore, cannot state a claim on that basis.  *Cohen v. DIRECTV, Inc.,* 178 Cal.App.4th 966 (2009); *Johns v. Bayer Corp*., 2010 U.S. Dist. LEXIS 10926, 12-13 (S.D. Cal. Feb. 9, 2010).

For all these reasons, summary judgment should also be granted as to any perceived challenge by Plaintiffs to the pre-2008 label for GFD.

## IV.   **CONCLUSION.**

For all of the foregoing reasons, Gruma requests that this court grant summary judgment in favor of Gruma, or in the alternative, partial summary judgment on each of Plaintiffs' claims.

Dated:  October 17, 2011           BARNES & THORNBURG LLP


By_____/s/R.D. Kirwan_____
                                R.D. Kirwan
                        Attorneys for Defendant
                        GRUMA CORPORATION

LADS01 30223v6