**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA  92110
Telephone:   (619) 798 2006
Facsimile:    (480) 247 4553

***Counsel for Plaintiffs and***
***The Proposed Class***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HENDERSON and EILEEN JOY PEVIANI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GRUMA CORPORATION and GRUMA S.A.B. de C.V.,<br><br>Defendants. | Case No.: 2:10-cv-04173 AHM (AJWx)<br>Pleading Type:    Class Action<br>Action Filed:    June 4, 2010<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GRUMA CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Honorable A. Howard Matz<br><br>Date:        December 5, 2011<br>Time:        10:00 a.m.<br>Courtroom:    14 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ......................................................................................... 1

    A.    Artificial Trans Fat ..................................................................... 2

    B.    Mission Guacamole .................................................................... 2

    C.    Mission Spicy Bean Dip ............................................................. 3

    D.    Procedural Posture ..................................................................... 3

LEGAL STANDARD ................................................................................... 4

ARGUMENT ............................................................................................... 5

    I.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ..................... 5

        A.    Statutory Framework ....................................................... 5

        B.    "Guacamole" .................................................................... 8

            1.    There is No Express Preemption ............................... 8

            2.    There is No Conflict Preemption as a Matter of Law .............. 9

            3.    There is No Conflict Preemption as a Matter of Fact ............. 10

        C.    "All Natural" ................................................................... 10

    II.    PLAINTIFFS HAVE AMPLY DEMONSTRATED RELIANCE, AND MINIMALLY AN ISSUE OF FACT AS TO RELIANCE .............. 11

        A.    Actual Reliance ............................................................... 11

            1.    Mission Guacamole ............................................... 12

i

2. Mission Spicy Bean Dip ..........................................................12

B. Materiality ..............................................................................13

C. Non-Label Advertising for Mission Guacamole and Spicy Bean Dip ..........................................................................................14

III. PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED UNDER THE REASONABLE CONSUMER STANDARD OR BECAUSE GRUMA'S ADVERTISEMENTS ARE SUPPOSEDLY "TRUTHFUL" ...............................................................................15

A. Legal Standards ......................................................................15

1. UCL ..............................................................................15

2. FAL ...............................................................................15

3. CLRA .............................................................................16

B. The Claim that Mission Guacamole is "Guacamole" ........................17

C. The Claim that Mission Spicy Bean Dip is "All Natural" ................18

V. THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO ESTOP MS. HENDERSON FROM ASSERTING HER CLAIMS ............21

CONCLUSION .......................................................................................23

ii

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. U.S. Bank*,
  2011 U.S. App. LEXIS 15806 (9th Cir. Aug. 1, 2011) ................................. 7

*Aho v. Americredit Fin. Servs.*,
  2011 U.S. Dist. LEXIS 80426 (S.D. Cal. July 25, 2011) ........................... 14

*Altria Group v. Good*,
  555 U.S. 70 (2008) ........................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................... 4, 5

*Arevalo v. Bank of Am. Corp.*,
  2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011) ......................... 14

*Bank of the West v. Super. Ct.*,
  2 Cal. 4th 1254 (1992) ................................................................... 15

*Bates v. Dow Agrosciences, LLC*,
  544 U.S. 431 (2005) ....................................................................... 6

*Braxton-Secret v. A.H. Robins Co.*,
  769 F.2d 528 (9th Cir. 1985) ............................................................ 5

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ........................................................... 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ....................................................................... 5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................... 15

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) ............................................................ 5

*Chavez v. Blue Sky Nat. Bev. Co.*,
    2011 U.S. Dist. LEXIS 109738 (N.D. Cal. Sept. 27, 2011) ...................................13, 18

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ................................................................................................6

*Claffey v. River Oaks Hyundai, Inc.*,
    238 F.R.D. 464 (N.D. Ill. 2006) ..............................................................................23

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ..................................................................................16

*Dvora v. Gen. Mills, Inc.*,
    2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ...........................................8

*Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) .......................................................................................7, 9

*Fitzpatrick v. Gen. Mills, Inc.*,
    263 F.R.D. 687 (S.D. Fla. 2010) ..............................................................................14

*Fletcher v. Sec. Pac. Nat'l Bank*,
    23 Cal. 3d 442 (1979) .............................................................................................20

*Florida Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963) ...............................................................................................10

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ...............................................................................15, 17

*FTC v. Figgie Int'l*,
    994 F.2d 595 (9th Cir. 1993) ...................................................................................20

*Gen. Motors Corp. v. Abrams*,
    897 F.2d 34 (2d Cir. 1990) ........................................................................................7

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................14

*Greenwood v. CompuCredit Corp.*,
    2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010) ........................................14

iv

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ..................................................................22, 23

*Hansen Bev. Co. v. Innovation Ventures, LLC*,
    2009 U.S. Dist. LEXIS 127605 (S.D. Cal. Dec. 23, 2009) ..........................10

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ......................................................................21

*Henderson v. Gruma Corp.*,
    2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ....................passim

*Henderson v. J.M. Smucker Co.*,
    2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011) ...........................11

*Hitt v. Ariz. Bev. Co., LLC*,
    2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009) ..............................10

*Holk v. Snapple Bev. Corp.*,
    575 F.3d 329 (3d Cir. 2009) .......................................................................10

*Hubbard v. Midland Credit Mgmt.*,
    2008 U.S. Dist. LEXIS 102982 (S.D. Ind. Dec. 19, 2008) ..........................23

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)......................................................................................5

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (2010) ......................................................................13

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...................................................................11, 12, 20

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
    2011 U.S. Dist. LEXIS 52529 (C.D. Cal. May 13, 2011)......................11, 13

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
    2008 U.S. Dist. LEXIS 50928 (D. Nev. June 20, 2008) ..............................23

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242 (11th Cir. 2002) ...................................................................13

v

*K&N Eng'g, Inc. v. Spectre Performance*,
  2011 U.S. Dist. LEXIS 107681 (C.D. Cal. Sept. 20, 2011) ......................................4, 5

*Kagan v. Gibraltar Sav. & Loan Assn.*,
  35 Cal. 3d 582 (1984) ........................................................................................21

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) .......................................................................................15

*Kwikset v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ................................................................................11, 12

*Law v. Gen. Motors Corp.*,
  114 F.3d 908 (9th Cir. 1997) ..............................................................................7

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ......................................................10, 11

*Martinez v. Welk Group, Inc.*,
  2011 U.S. Dist. LEXIS 58718 (S.D. Cal. June 2, 2011) ............................12

*McKinnis v. Gen. Mills, Inc.*,
  2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) ...........................8

*McKinniss v. Sunny Delight Bevs. Co.*,
  2007 U.S. Dist. Lexis 96108 (C.D. Cal. Sept. 4 2007)...............................17

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)...........................................................................................6

*Miletak v. Allstate Ins. Co.*,
  2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) ...............12, 15, 17

*Nat'l Council for Improved Health v. Shalala*,
  122 F.3d 878 (10th Cir. 1997) ...........................................................................7

*O'Shea v. Epson Am., Inc.*,
  2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011)...........................16

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) .......................................................10

vi

*Pom Wonderful LLC v. Purely Juice, Inc.*,
   2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008)....................................13, 18

*Poulos v. Caesars World, Inc.*,
   2002 U.S. Dist. LEXIS 28325 (D. Nev. June 21, 2002) ......................................22, 23

*Red v. Kraft Foods, Inc.*,
   2011 U.S. Dist. LEXIS 26893 (C.D. Cal. Jan. 13, 2011)...........................................17

*Red v. Kraft Foods, Inc.*,
   754 F. Supp. 2d 1137 (C.D. Cal. 2010) ...................................................................9

*Red v. Kroger Co.*,
   2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) ...........................................9

*Retail Clerks v. Schermerhorn*,
   375 U.S. 96 (1963) ..................................................................................................6

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947)...............................................................................................6

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) ..........................................................................................23

*Rissetto v. Plumbers & Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) ..................................................................................21

*Saunders v. Super. Ct.*,
   27 Cal. App. 4th 832 (1994) .................................................................................15

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) ................................................................................19

*State Farm Mut. Auto Ins. Co. v. Stein*,
   2011 U.S. Dist. LEXIS 66099 (C.D. Cal. June 20, 2011)........................................4, 5

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013, 2011 U.S. App. LEXIS 107454 (9th Cir. Aug. 22, 2011)..................20

*United States v. Liquidators of European Fed. Credit Bank*,
   630 F.3d 1139 (9th Cir. 2011) ..............................................................................21

*Weiner v. Snapple Bev. Corp.*,
   2011 U.S. Dist. LEXIS 6094 (S.D.N.Y. Jan. 21, 2011) .............................19

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................16, 17, 21

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
   946 F.2d 1003 (2d Cir. 1991)...............................................................19

*Wright v. Gen. Mills, Inc.*,
   2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009)........................10

*Wyeth v. Levine*,
   555 U.S. 555 (2009)...........................................................................6, 10

*Yue v. Conseco Life Ins. Co.*,
   2011 U.S. Dist. LEXIS 7951 (C.D. Cal. Jan. 19, 2011) .............................5

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................17

*Zeisel v. Diamond Foods, Inc.*,
   2010 U.S. Dist. LEXIS 141941 (N.D. Cal. Sept. 3, 2010) ..........................9

*Zeisel v. Diamond Foods, Inc.*,
   2011 U.S. Dist. LEXIS 60608 (N.D. Cal. 2011) .....................................20

**Statutes**

21 C.F.R. § 101.22 .................................................................................8

21 C.F.R. § 101.22(i) ...........................................................................10

21 C.F.R. § 101.22(i)(1)(i).....................................................................8

21 C.F.R. § 101.9(c)(2)(ii) ...................................................................11

21 C.F.R. §§ 7 *et seq.*...........................................................................6

21 U.S.C. § 343 ...................................................................................6

21 U.S.C. § 343-1................................................................................7

viii

21 U.S.C. § 392(b)(2)(A) ..................................................................................6

21 U.S.C. §§ 301 *et seq.*................................................................................6

21 U.S.C. §§ 331(a)-(c), (g), (k) ....................................................................6

Cal. Bus. & Prof. Code § 17200 ...................................................................15

Cal. Bus. & Prof. Code § 17203 ...................................................................20

Cal. Bus. & Prof. Code § 17500 ...................................................................15

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .....................................................3

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .....................................................3

Cal. Civ. Code  § 1770(a)(5) .........................................................................16

Cal. Civ. Code §§ 1750 *et seq.*......................................................................3

Cal. Civ. Code § 1770(a) ...............................................................................16

Cal. Civ. Code § 1770(a)(16) .........................................................................16

Cal. Civ. Code § 1770(a)(7) ...........................................................................16

Cal. Civ. Code § 1770(a)(9) ...........................................................................16

Cal. Educ. Code § 49430.7 ..............................................................................2

Pub. L. No. 101-535, § 6(a), 104 Stat. 2353 (1990) ......................................6

Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353 (1990) ..................................9


**Federal Rules**

Fed. R. Civ. P. 56(c)........................................................................................4


**Other Authorities**

Alba Conte & Herbert Newberg, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th
    ed. 2002)...................................................................................................14

*Henderson et al. v. Gruma Corporation et al.,* Case No. 2:10-cv-04173 AHM (AJWx)
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336.....................7

Remarks of Rep. Waxman, 136 Cong. Rec. 5840 (daily ed. July 30, 1990),
    debate on H.R. No. 3562, 101st Cong., 2d Sess. ..........................................................7

*Henderson et al. v. Gruma Corporation et al.,* Case No. 2:10-cv-04173 AHM (AJWx)
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## **INTRODUCTION**

Gruma's slapdash motion for summary judgment should be denied. It fails to comply with Court and Local Rules.[1] Its Statement of Uncontroverted Facts ("SUF") habitually characterizes and concludes, and when it does state facts, they are frequently unsupported by the cited evidence, either because the evidence is mischaracterized or wholly inapposite. And the SUF is even internally contradictory at times.[2] Moreover, several of Gruma's arguments do not depend upon the factual record at all, instead using the device of Rule 56 to seek reconsideration of the arguments this Court rejected in its Rule 12 decision.

Plaintiffs Mary Henderson and Eileen Peviani respectfully oppose Gruma's Motion for Summary Judgment. In support of their Opposition, Plaintiffs rely on the following:

- Plaintiffs' Complaint, Dkt. No. 1 ("Compl."), First Amended Complaint, Dkt. No. 21 ("FAC"), and Corrected First Amended Complaint, Dkt. No. 44 ("CFAC");
- Gruma's Answer to the FAC,[3] Dkt. No. 26 ("Answer");
- Gruma's Statement of Uncontroverted Facts, Dkt. No. 97 ("SUF");
- Declaration of Regan Ribaul, Dkt. No. 98 ("Ribaul Decl.");
- Plaintiffs' Statement of Genuine Issues, filed concurrently herewith ("SGI");
- Declaration of Gregory S. Weston, filed concurrently herewith ("Weston Decl.");
- Declaration of Mary Henderson, filed concurrently herewith ("Henderson Decl."); and
- Declaration of Eileen Peviani, filed concurrently herewith ("Peviani Decl.").

---

[1] Although "[t]he parties are directed to comply precisely with Local Rules 56-1 through 56-4," Scheduling & Case Mgmt. Order (Dkt. No. 76) at 5, Gruma failed to lodge a proposed Judgment as required under C.D. Cal. Civ. L.R. 56-1.

[2] Compare SUF ¶ 6 (Plaintiffs purchased the products) with ¶ 7 (Plaintiffs have no proof they purchased the products).

[3] Gruma has not filed an Answer in response to the CFAC.

1

## FACTS

Gruma sells the Mission Guacamole and Spicy Bean Dip at issue. SUF ¶¶ 2-3; SGI ¶ 41. Each product is made with partially hydrogenated vegetable oil (or PHVO), Ribaul Decl. Exs. 1-3 (ingredient list), and is labeled with an actionable claim that Plaintiffs allege is deceptive. *See generally* CFAC ¶¶ 72-76, 80; *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) (granting in part and denying in part Gruma's Motion to Dismiss). Plaintiffs Mary Henderson and Eileen Peviani purchased the challenged products in California during the class period. *See* SUF ¶¶ 4, 6.

### A.    Artificial Trans Fat

PHVO is not found in nature, but created through an industrial process whereby hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees in the presence of donor metals such as rhodium and nickel, a process that creates artificial trans fat. SGI ¶ 42. The consumption of artificial trans fat is harmful to human health. *Id.* ¶ 43. There is no "safe" level of artificial trans fat consumption, and the leading scientific and nutrition authorities universally recommend keeping trans fat consumption as low as possible. Its use is restricted in California restaurants and public schools, Cal. Educ. Code § 49430.7, and banned in several European nations, CFAC ¶ 63.

### B.    Mission Guacamole

During the proposed class period beginning June 4, 2006 (*see* CFAC ¶ 95), Gruma sold Mission Guacamole with two different labels. *See* Ribaul Decl. ¶¶ 3-4. The first, in effect until December 2008, refers to the product as "GUACAMOLE DIP" and features a background vignette of avocados. *Id.* Ex. 2. The second label differs slightly, with "'GUACAMOLE' in large capital letters, in a font that is approximately twice as large as the smaller 'FLAVORED DIP,' located below the term 'Guacamole[,]' . . . [and] prominently displays large pictures of avocados on the front of the jar." *Henderson*,

2

2011 U.S. Dist. LEXIS 41077, at *32 (record citations omitted). "[T]he dip itself is green-colored, as would be avocados." *Id.*

Both Plaintiffs believe avocados have nutritional value and are beneficial to their health. SGI ¶¶ 48, 54. Each initially purchased Mission Guacamole before December 2008. *Id.* ¶¶ 7, 11, 33; Henderson Decl. ¶ 2; Peviani Decl. ¶ 2. Each continued to purchase the product after December 2008. SGI ¶¶ 7, 11. Neither examined the product's ingredient list during this time (i.e., prior to January 2010). SUF ¶ 18; SGI ¶¶ 18, 49. The representation that the product was "guacamole" led each Plaintiff to believe that the product was made with avocado—not just "2% or less of avocado powder."[4] SGI ¶¶ 47, 56-58. This representation was a substantial factor in the decision of each Plaintiff to purchase Mission Guacamole. SGI ¶ 47, 57.[5]

### C.   Mission Spicy Bean Dip

The label of Mission Spicy Bean Dip claims the product is "All Natural." Ribaul Decl. Ex. 3. This is false, because the PHVO in Mission Spicy Bean Dip (and the artificial trans fat in that PHVO) is manufactured through an industrial process of partial hydrogenation. The prominent representation that Mission Spicy Bean Dip was "All Natural" was a substantial factor in each Plaintiff's decision to purchase the product. *See* SGI ¶¶ 65-69.

### D.   Procedural Posture

Plaintiffs filed this action on June 4, 2010, alleging violations of, *inter alia*, the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* They filed their FAC on July 29, 2010, and Gruma filed a

---

[4] *See* Ribaul Decl. Exs. 1-2 (ingredients list).

[5] Gruma's assertion that because the FAC includes a picture of the post-December 2008 label, Plaintiffs do not challenge the prior label, Mot. at 24 & n.7, is incorrect. Contrary to Gruma's assertion, the FAC never uses the term "Guacamole Flavored Dip," *see* FAC ¶ 72. In addition, both Plaintiffs began purchasing Mission Guacamole in the pre-December 2008 label. SGI ¶¶ 7, 11, 33 & 10 n.2; Henderson Decl. ¶ 2; Peviani Decl. ¶ 2.

Motion to Dismiss (Dkt. No. 23), Motion to Strike (Dkt. No. 25), and its Answer on August 9, 2010. On August 26, Plaintiffs filed their CFAC with allegations sufficient to establish the Court's jurisdiction. *See generally* Dkt. No. 42. On April 11, 2011, the Court granted in part and denied in part Gruma's Rule 12 motions. *See Henderson*, 2011 U.S. Dist. LEXIS 41077.

On October 18, 2011, the parties appeared for a settlement conference before the Honorable Magistrate Judge Andrew J. Wistrich. Although there was substantial progress toward a settlement, no resolution occurred. *See* Dkt. No. 100. The day before the settlement conference, on October 17, Gruma filed this Motion for Summary Judgment, originally setting the hearing for November 14, despite the Court's "expect[ation] that the party moving for summary judgment will provide more than the minimum twenty-eight (28) day notice for motions," Scheduling & Case Mgmt. Order, Dkt. No. 76 at 5, and despite that this gave Plaintiffs less than seven days to oppose, since the parties were travelling for the October 18 settlement conference. At the conference, Gruma agreed to stipulate to a short continuance. *See* Dkt. No. 101.

### **LEGAL STANDARD**

A motion for summary judgment must be denied unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, Gruma "bears the initial burden of demonstrating the absence of a 'genuine issue of material fact for trial.'" *State Farm Mut. Auto Ins. Co. v. Stein*, 2011 U.S. Dist. LEXIS 66099, at *3 (C.D. Cal. June 20, 2011) (Matz, J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). In addition, to prevail, Gruma "must show that 'under the governing law, there can be but one reasonable conclusion as to the verdict.'" *K&N Eng'g, Inc. v. Spectre Performance*, 2011 U.S. Dist. LEXIS 107681, at *31 (C.D. Cal. Sept. 20, 2011) (quoting *Anderson*, 477 U.S. at 250).

"A fact is material if it could affect the outcome of the suit . . . ." *State Farm*, 2011 U.S. Dist. LEXIS 66099, at *3 (citation omitted). A "genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *K&N Eng'g*, 2011 U.S. Dist. LEXIS 107681, at *33 (quoting *Anderson*, 477 U.S. at 248). If the movant meets its initial burden, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *State Farm*, 2011 U.S. Dist. LEXIS 66099, at *3 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

While the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading," but rather must respond with "affidavits or as otherwise provided in [Rule 56]," in ruling on the motion, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* at *4 (alteration omitted) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (in turn quoting *Anderson*, 477 U.S. at 255)). Moreover, "[s]imply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper." *Yue v. Conseco Life Ins. Co.*, 2011 U.S. Dist. LEXIS 7951, at *18 (C.D. Cal. Jan. 19, 2011) (Matz, J.) (citing *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

## ARGUMENT

## I. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

### A. Statutory Framework

Pursuant to the Supremacy Clause, federal law preempts state law when Congress enacts a statute that explicitly preempts state law. *See Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted). There are two "cornerstones" of preemption jurisprudence:

5

*Henderson et al. v. Gruma Corporation et al.,* Case No. 2:10-cv-04173 AHM (AJWx)
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In short, "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic*, 518 U.S. at 485.

This strong presumption against preemption demands that courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Moreover, where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005).

The Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, empowers the Food and Drug Administration to (a) protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 392(b)(2)(A); (b) promulgate regulations to implement the statute; and (c) enforce its regulations through administrative proceedings. *See* 21 C.F.R. §§ 7 *et seq.* The Act prohibits the distribution and sale of misbranded foods. *See* 21 U.S.C. §§ 331(a)-(c), (g), (k). Foods are deemed misbranded when they meet one of the definitions for being misbranded pursuant to 21 U.S.C. § 343. Congress enacted the Nutrition Labeling and Education Act, Pub. L. No. 101-535, § 6(a), 104 Stat. 2353 (1990), to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods." *Nat'l Council for Improved*

6

*Henderson et al. v. Gruma Corporation et al.,* Case No. 2:10-cv-04173 AHM (AJWx)
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). In passing the NLEA, Congress sought to "create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing Remarks of Rep. Waxman, 136 Cong. Rec. 5840 (daily ed. July 30, 1990), debate on H.R. No. 3562, 101st Cong., 2d Sess.). To meet the goal of consistent nationwide labeling, the NLEA introduced the now-ubiquitous Nutrition Facts panel and amended the FDCA to preempt state labeling requirements not identical to those promulgated under some portions of § 343, *see* 21 U.S.C. § 343-1.

The strong presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria Group v. Good*, 555 U.S. 70, 77 (2008). "[C]laims[] rooted in California's consumer-protection laws[] fall in an area that is traditionally within the state's police powers to protect its own citizens. 'Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area.'" *Aguayo v. U.S. Bank*, 2011 U.S. App. LEXIS 15806, at *917 (9th Cir. Aug. 1, 2011) (quoting *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990)); *see also Law v. Gen. Motors Corp.*, 114 F.3d 908, 909 (9th Cir. 1997) ("Given the importance of federalism . . . we entertain a strong presumption that federal statutes do not preempt state laws; particularly those directed at subjects—like health and safety—'traditionally governed' by the states." (citations omitted)); *Farm Raised Salmon*, 42 Cal. 4th at 1087-88 ("[C]onsumer protection laws such as the UCL, false advertising law, and CLRA, are within the states' historic police powers and are therefore subject to the presumption against preemption. Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." (internal quotations, citation and alterations omitted)).

7

### B.     "Guacamole"

#### 1.     *There is No Express Preemption*

Gruma is wrong that the FDCA's "characterizing flavor" regulation permits it to call a product "Guacamole Flavored." Guacamole is a *recipe* requiring the blending of several ingredients, *see generally* CFAC ¶¶ 74-75; SGI ¶¶ 46, 55.[6] Guacamole is not itself an *ingredient*. Gruma's error is apparent on the face of the regulation on which it relies, which provides:

> If the food is one that is commonly expected to contain a characterizing food ***ingredient***, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ***ingredient*** and an amount of characterizing ***ingredient*** insufficient to independently characterize the food, or the food contains no such ***ingredient***, the name of the characterizing flavor . . . shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., . . . "strawberry flavored shortcake."

21 C.F.R. § 101.22(i)(1)(i) (emphasis added). Accordingly, Gruma's reliance on *Dvora v. Gen. Mills, Inc.*, 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) is unavailing. At issue in *Dvora* was the use of the words "blueberry" and "pomegranate," each *ingredients*, to characterize a cereal's flavor.[7] In addition, the avocado and vegetable vignettes are "representations about the products' ingredients and not their

---

[6] *See also Henderson*, 2011 U.S. Dist. LEXIS 41077, at *33 (Mission Guacamole "is not" guacamole "as it allegedly contains less than 2% avocado powder").

[7] In its decision on Gruma's Motion to Dismiss, the Court made a passing reference to "characterizing flavor" when it rejected Gruma's "truthful and not misleading" argument. *See Henderson*, 2011 U.S. Dist. LEXIS 41077, at *32 (citing *McKinnis v. Gen. Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007)). The Court did not, however, closely examine 21 C.F.R. § 101.22 (because Gruma made no preemption argument). *McKinnis*, like *Dvora*, involved the use of single-ingredient fruit claims on a variety of cereals, and so is equally distinguishable from Gruma's "Guacamole" claim.

characterizing flavor," and accordingly are actionable. *See Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1142-44 (C.D. Cal. 2010). Three things give this away. First, Gruma claims its product is "guacamole flavored," not "avocado flavored" or "vegetable flavored." Second, the vegetable pictured is a tomato, an ingredient in guacamole, but the product is not tomato flavored. *See, e.g.*, Mot. at 10 n.1. Third, the label claims the product is made "With Garden Vegetables," again indicating ingredients, not flavor. In *Red*, the court explained:

> [S]ome depictions on the product labels arguably refer simply to characterizing flavor, while the phrase "Made With Real Vegetables" appears to refer to the products' supposed constituent ingredients and not to flavor. . . . Similarly, Plaintiffs allege that . . . the prominent image of flowing honey [is] intended to convey the message that Honey Maid Graham Crackers are primarily sweetened with honey and not that they are "honey flavored." The Court would decline to construe these usages as mere representations of "characterizing flavor."

754 F. Supp. 2d at 1143.

## 2.    *There is No Conflict Preemption as a Matter of Law*

"The NLEA's rule of construction concerning the scope of preemption excludes implied preemption, providing in relevant part, '[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA].'" *Red*, 754 F. Supp. 2d at 1139 (citing Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364; *Farm Raised Salmon*, 42 Cal. 4th at 1091 ("Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself.")).[8] Accordingly, the Court should reject Gruma's argument. *See* Mot. at 11.

---

[8] *See also Zeisel v. Diamond Foods, Inc.*, 2010 U.S. Dist. LEXIS 141941, at *10-11 (N.D. Cal. Sept. 3, 2010) ("This Court need not resort to inferences"); *Red v. Kroger*

9

### 3.     There is No Conflict Preemption as a Matter of Fact

Even if implied preemption were available, it would do Gruma no good. Gruma asserts that "it would be impossible to comply with both federal regulations [concerning characterizing flavor], and Plaintiff's theory that the use of these *mandated or allowable* descriptions and depictions violates state law[.]" Mot. at 11 (emphasis added).

"Impossibility preemption is a demanding defense," *Wyeth*, 555 U.S. at 573, requiring a defendant to show that "compliance with both federal and state [law] is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). Gruma's argument glosses over a key distinction. Characterizing flavor claims are not "mandated." Accordingly, there is no "physical impossibility" here because the claim that its product is "guacamole flavored," even if it were permitted, is entirely *voluntary. See* 21 C.F.R. § 101.22(i) (regulation applies if "the manufacturer or distributor of a food *wishes to* designate the type of flavor in the food other than through the statement of ingredients" (emphasis added)).

### C.     "All Natural"

Gruma does not argue that Plaintiffs' claims concerning its "All Natural" advertisement are expressly preempted. Nor could it. *See Holk v. Snapple Bev. Corp.*, 575 F.3d 329 (3d Cir. 2009); *Astiana*, 2011 U.S. Dist. LEXIS 57348; *Hitt v. Ariz. Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009); *Lockwood,* 597 F. Supp. 2d 1028. Instead, Gruma asserts that an injunction preventing it from describing its Spicy Bean Dip as "All Natural" would make it "physically impossible" to comply

---

*Co.*, 2010 U.S. Dist. LEXIS 115238, at *10 n.3 (C.D. Cal. Sept. 2, 2010) (noting the "widely accepted view that there is no implied preemption under the NLEA"); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348, at *22 (N.D. Cal. May 26, 2011); *Hansen Bev. Co. v. Innovation Ventures, LLC*, 2009 U.S. Dist. LEXIS 127605, at *34 (S.D. Cal. Dec. 23, 2009); *Wright v. Gen. Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576, at *6 (S.D. Cal. Sept. 30, 2009); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031-33 (N.D. Cal. 2009).

with the provision of the FDCA permitting food manufacturers to disclose trans fat amounts below 0.5 grams per serving as "0g" in the Nutrition Facts Box, *see* 21 C.F.R. § 101.9(c)(2)(ii). Mot. at 11-12. That argument is misplaced; Gruma's "reasoning suggests a false choice which the FAC's prayer for relief does not require. Plaintiff seeks to enjoin Defendant from using the particular statements at issue; the FAC does not pray for an injunction requiring Defendant to disclose the presence of trans fat on its product labels." *Henderson v. J.M. Smucker Co.*, 2011 U.S. Dist. LEXIS 27953, at *12 (C.D. Cal. Mar. 17, 2011); *see also Lockwood*, 597 F. Supp. 2d at 1034 (rejecting conflict preemption of "all natural" statement).

## II.   PLAINTIFFS HAVE AMPLY DEMONSTRATED RELIANCE, AND MINIMALLY AN ISSUE OF FACT AS TO RELIANCE

### A.   Actual Reliance

Proposition 64 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong," *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). In such cases, "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 317 (2011).

Reliance is proved by showing that defendant's "misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (citations omitted). "Plaintiffs are not required to plead that the fraudulent conduct was the only, predominant, or even decisive factor in influencing their conduct . . . ." *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 2011 U.S. Dist. LEXIS 52529, at *123 (C.D. Cal. May 13, 2011). Instead, "[i]t is enough that the representation has played a substantial part, and so has been a substantial factor in influencing [plaintiff's] decision." *Tobacco II*, 46 Cal. 4th at 326 (quotations and citation

omitted); *Kwikset*, 51 Cal. 4th at 327. In addition, "[t]here is no requirement under the UCL that Plaintiff rely on the misrepresentation on multiple occasions, or that there is a pattern of reliance. Plaintiff need only prove that he relied on the misrepresentation once." *Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at *17 (N.D. Cal. Mar. 5, 2010). Moreover, "reliance will be presumed if the alleged misrepresentation or omission is judged to be 'material,' such that 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action.'" *Martinez v. Welk Group, Inc.*, 2011 U.S. Dist. LEXIS 58718, at *20 (S.D. Cal. June 2, 2011) (quoting *Tobacco II*, 46 Cal. 4th at 327).

### 1.    *Mission Guacamole*

Gruma's Motion disputes only Ms. Peviani's reliance on its "Guacamole" representation, Mot. at 15, based on her responses to objectionable questions, the answers to which do not support Gruma's contention. SGI ¶¶ 12, 16. Ms. Peviani's testimony, however, sufficiently raises issues of fact precluding summary judgment. *See* SGI ¶¶ 12, 57. *See generally Miletak*, 2010 U.S. Dist. LEXIS 26913, at *14-17 (denying summary judgment of UCL claim where Plaintiff raised issue of fact as to reliance). To the extent Plaintiff testified there were additional factors influencing her purchasing decision, that does not defeat her reliance on the "Guacamole" claim under California law, where the "Guacamole" claim was a "substantial factor" in her decision. *Tobacco II*, 46 Cal. 4th at 326; *Kwikset*, 51 Cal. 4th at 327. To the extent Gruma intended to challenge Ms. Henderson's reliance on the "Guacamole" claim, she also raises issues of fact sufficient to defeat summary judgment. *See* SGI ¶¶ 47; Henderson Decl. ¶ 3.

### 2.    *Mission Spicy Bean Dip*

Gruma's paradoxical argument that a consumer will only be misled by an "All Natural" claim if she knows that a product contains artificial trans fat—besides entirely mischaracterizing the nature of Plaintiffs' allegations in the original Complaint and FAC—conflates reliance with deceptiveness. *See* Mot. at 13. Plaintiffs relied on the

Gruma's "All Natural" representation precisely because they were unaware of Mission Spicy Bean Dip's artificial trans fat content; had they been aware of Mission Spicy Bean Dip's PHVO and artificial trans fat content, they would have known when they read that the product was "All Natural," that Gruma was lying to them.[9] Contrary to Gruma's assertion, Plaintiffs raise issues of fact sufficient to defeat summary judgment with respect to their reliance on Gruma's "All Natural" claim for Mission Spicy Bean Dip. SGI ¶¶ 65-69; Henderson Decl. ¶ 8; Peviani Decl. ¶ 4.

### B.    Materiality

A showing of materiality independently satisfies a plaintiff's causation requirement. *See In re Toyota Motor Corp.*, 2011 U.S. Dist. LEXIS 52529, at *125. "Materiality, here, as it usually is, [is] a question of fact 'unless the fact misrepresented is so obviously unimportant that a jury could not find that a reasonable man would have been influenced by it.'" *Chavez v. Blue Sky Nat. Bev. Co.*, 2011 U.S. Dist. LEXIS 109738, at *11-12 (N.D. Cal. Sept. 27, 2011) (denying motion for summary judgment) (quoting *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010)).

Plaintiffs raise sufficient issues of fact as to the materiality of the "Guacamole" representation based on evidence of customer complaints. *See* SGI ¶¶ 61-62. Moreover, the characterization of Mission Guacamole as "Guacamole," and Mission Spicy Bean Dip as "All Natural" pertains to the "very nature" of the products, and thereby "establishes . . . materiality." *Pom Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, at *29-30 (C.D. Cal. July 17, 2008) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("A plaintiff

---

[9] In other words, Gruma's conclusion that Plaintiffs "ple[d] they did not rely on any alleged misrepresentation," does not flow from the premise that Planitiffs "did not distinguish between products with [PHVO] and those without." Mot. at 13. That Gruma's argument is illogical is demonstrable by analogy. Imagine an unworldly young man eager to propose but unaware of the existence of rhinestones. He may nevertheless be misled by the promise from an unscrupulous jeweler that the rhinestone he wishes to purchase is a diamond.

13

may establish this materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product.")).

### C.    Non-Label Advertising for Mission Guacamole and Spicy Bean Dip

Gruma is wrong that Plaintiffs "conclusively testified that they never saw any advertisements beyond the label of the products," Mot. at 15. *See* SGI ¶ 33. But even if Plaintiffs *had* testified as Gruma contends, its standing argument with respect to non-label advertisements ignores that this is a putative class action lawsuit, where Plaintiffs, so long as they have standing and the other requirements of Rule 23 are satisfied, will be able to represent the claims of absent class members of whom their claims are typical. District courts in California routinely hold that whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. CompuCredit Corp.*, 2010 U.S. Dist. LEXIS 127719, at *8-9 (N.D. Cal. Nov. 19, 2010).[10]

Accordingly, the Court should refrain from dismissing on summary judgment now claims that Plaintiffs may properly assert on behalf of the putative class if one is certified. Moreover, even if Plaintiffs could not assert claims relating to non-label advertising for Mission Guacamole and Spicy Bean Dip, "a plaintiff seeking to prove that [a defendant's] health message is 'deceptive' may rely on any evidence concerning

---

[10] *See also Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151, at *12-13 (N.D. Cal. Mar. 29, 2011) ("[W]hen class representatives establish standing . . . , the requirements of Rule 23(a) are ordinarily the best means of 'effectively limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims,'" quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982)); *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *30-31 n.7 (S.D. Cal. July 25, 2011) (the "ability of [a] class representative to assert claims on behalf of absent class members is not a standing issue, but 'depends rather on meeting the prerequisites of Rule 23 governing class actions,'" quoting Alba Conte & Herbert Newberg, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002)).

14

that message, including advertisements to which he or she was not personally exposed." *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 694 (S.D. Fla. 2010).

## III.   PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED UNDER THE REASONABLE CONSUMER STANDARD OR BECAUSE GRUMA'S ADVERTISEMENTS ARE SUPPOSEDLY "TRUTHFUL"

### A.   Legal Standards

#### 1.   UCL

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. "Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citations omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.'" *Miletak*, 2010 U.S. Dist. LEXIS 26913, at *13 (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994) (citing *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992))). "Unfair business practices claims 'must be evaluated from the vantage of a reasonable consumer.'" *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

#### 2.   FAL

The False Advertising Law provides: "It is unlawful for any person, firm, corporation or association . . . to make or disseminate or cause to be made or disseminated before the public in this state . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500. The FAL has been broadly construed to prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity,

15

likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal quotations and citation omitted). In determining whether a statement is misleading under the FAL, "the primary evidence . . . is the advertising itself." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)). "The 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Id.* (citation omitted).

False advertising under the FAL is governed by the "reasonable consumer" test, by which a plaintiff must "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation marks and citations omitted). "A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances' and 'is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture . . . .'" *Colgan*, 135 Cal. App. 4th at 682 (citations omitted).

### 3.    CLRA

The CLRA proscribes specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Such acts include, *inter alia*, "representing that goods have characteristics, . . . uses, [or] benefits . . . which they do not have," *id.* § 1770(a)(5), "representing that goods . . . are of a particular standard, quality, or grade . . .  if they are of another," *id.* § 1770(a)(7), "advertising goods . . . with intent not to sell them as advertised," *id.* § 1770(a)(9), and "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not," *id.* § 1770(a)(16). *Accord* CFAC ¶¶ 131, 135. "[T]he standard for deceptive practices under the 'fraudulent' prong of the UCL applies equally to misrepresentation-based claims under the CLRA," and so "courts often address these claims in tandem." *O'Shea v. Epson Am., Inc.*, 2011 U.S.

Dist. LEXIS 85273, at *13 (C.D. Cal. July 29, 2011) (citations omitted) (treating UCL, FAL and CLRA claims together in motion for summary judgment).

**B.     The Claim that Mission Guacamole is "Guacamole"**

This Court previously held that "Gruma's label and use of the term 'Guacamole' could deceive a reasonable consumer," and rejected Gruma's argument that because the label is supposedly "straightforward and true," Mot. at 17, reasonable consumers would not be misled. *See Henderson*, 2011 U.S. Dist. LEXIS 41077, at *31-33. The Court also rejected Gruma's argument that "[a] reasonable consumer would . . . be expected to peruse the product's contents . . . by reading the side of the box," Mot. at 17 (citation omitted). *Id.* at *33 ("consumers [are] not 'expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list,'" quoting *Williams*, 552 F.3d at 939).

Gruma's reliance on *McKinniss v. Sunny Delight Bevs. Co.*, 2007 U.S. Dist. Lexis 96108 (C.D. Cal. Sept. 4 2007), is misplaced given the Ninth Circuit's express rejection of that holding in *Williams*. *See, e.g. Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1127-28 (C.D. Cal. 2010); *Red v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 26893, at *10 (C.D. Cal. Jan. 13, 2011). Gruma's argument, however, implicitly concedes that a consumer would *need* to review the ingredients list in order to avoid being misled—i.e., that the challenged claim is misleading per *Williams*.

Gruma's assertion that the "Guacamole" representation is supposedly "true," Mot. at 17, is unavailing. *See Henderson*, 2011 U.S. Dist. LEXIS 41077, at *32-33. It is also inaccurate. *See id.* at *33 (if the product "contains less than 2% avocado powder," it "is not" guacamole); Ribaul Decl. Exs. 1-2 (ingredients list). Similarly, Gruma's assertion that "Plaintiffs' failure to read the ingredient list for the product . . . does not support a claim that the label would deceive a reasonable consumer," Mot. at 17, is "unavailing because the Court applies an objective 'reasonable consumer' standard in determining

17

whether Defendants' . . . materials are fraudulent within the meaning of the UCL." *Miletak*, 2010 U.S. Dist. LEXIS 26913, at *31 (citing *Freeman*, 68 F.3d at 289).

Alternatively, Gruma asserts that no reasonable consumer could be misled by its representation that Mission Guacamole is guacamole because the product is supposedly less expensive than fresh-made guacamole, and because fresh avocados spoil quickly, whereas Mission Guacamole is sold in the unrefrigerated snack aisle. *See* Mot. at 18. Whether a reasonable consumer would conclude from Mission Guacamole's price and placement that it contains less than 2% avocado powder (CFAC ¶ 72), is not real guacamole (*id.* ¶¶ 72-76), and does not have the health properties of guacamole (*id.* ¶¶ 73, 76), however, is an issue of fact for trial. *See, e.g.*, SGI ¶¶ 47, 50-51, 59-60; Henderson Decl. ¶¶ 4-5. *Accord Chavez*, 2011 U.S. Dist. LEXIS 109738, at *9-14 (denying summary judgment under reasonable consumer standard).

## C.   The Claim that Mission Spicy Bean Dip is "All Natural"

The claim that Mission Spicy Bean Dip is "All Natural" is literally false (Ribaul Decl. Ex. 3 (Mission Spicy Bean Dip label showing PHVO in ingredient list; SGI ¶¶ 22, 42)), and therefore inherently misleading.[11] *See, e.g.*, *Pom Wonderful*, 2008 U.S. Dist. LEXIS 55426, at *28-29 (where representations regarding the purity of defendant's juice were literally false, deception was presumed under the Lanham Act). Gruma's reliance on 21 C.F.R. § 101.9(c)(2)(ii) is, once again, misplaced. This case is not about making

---

[11] Gruma mischaracterizes Ms. Peviani's testimony when it asserts she defined "natural" solely as "being free of 'chemicals' and 'preservatives.'" *See* Mot. at 18 (erroneously citing SUF ¶ 19); *compare* SGI ¶ 20. Similarly, Gruma's argument about Ms. Peviani's expectation of what would be in a spicy bean dip, Mot. at 18-19, is misplaced: her claims are not based on the absence of an expected ingredient, but on the presence of an ingredient she did *not* expect in a product advertised as "All Natural." Gruma's argument is also contrary to the testimony on which it relies. While Gruma contends that "Plaintiffs" expected certain ingredients, it cites only the testimony of Ms. Peviani, not Ms. Henderson. SUF ¶ 21. And Ms. Peviani did not testify that she expected "Vegetable Shortening," or Partially Hydrogenated Soybean Oil, to be in her Mission Spicy Bean Dip. *See* Peviani Dep. Tr. 102-103.

18

Gruma "state a decimal amount [of trans fat] smaller than 0.5" in the Nutrition Facts Box, Mot. at. 19, but about preventing Gruma from lying to consumers when it tells them Mission Spicy Bean Dip made with artificial trans fat is "All Natural."

## IV.   PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEIR INJURY IS SUPPOSEDLY "*DE MINIMIS*"

The Court already rejected Gruma's argument that Plaintiffs' injury is supposedly *de minimis*, even distinguishing the same case on which Gruma, again, relies. *See* Mot. at 20 (citing *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007)); *compare Henderson*, 2011 U.S. Dist. LEXIS 41077, at *12-13. Gruma's reliance on *Weiner v. Snapple Bev. Corp.*, 2011 U.S. Dist. LEXIS 6094 (S.D.N.Y. Jan. 21, 2011), is similarly misplaced. The plaintiff in that case alleged that Snapple charged a "premium price for its Snapple beverages—a price higher than that charged for comparable products of the same size and type that were not marketed, advertised or promoted as 'All Natural,'" and sought "damages measured by the amount of the premium," *id.* at *8. The court held that Plaintiffs "failed to present reliable evidence that they paid a premium for Snapple's 'All Natural' label," and accordingly, "failed to identify sufficient evidence to permit a jury to find that they suffered any injury from the alleged violation of [N.Y. Gen. Bus. L.] § 349," *id.* at *12. This was problematic because New York law requires that damages "be shown with the 'requisite [degree of] certainty.'" *Id.* (quoting *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1012 (2d Cir. 1991)). Here, Plaintiffs seek not only actual damages, but restitution, exemplary damages and injunctive relief.

Moreover, in contrast to *Weiner*, Plaintiffs here allege, *inter alia*, that the products "would have cost less absent the false and misleading statements," that they "would have been willing to pay less . . . [or] would not have purchased the [products] at the price they did absent the[] advertisements," that the products "were worth less than what Plaintiffs paid for them," that they "did not receive what they had paid for," and that

19

they "suffered damages in an amount equal to the amount they paid for the Mission" products. CFAC ¶¶ 85-87, 93-94.

Unlike in *Weiner*, none of these allegations depend upon the purported existence of a premium charged over substitute products.[12] Nor does the proof of damages or an appropriate measure of restitution under California law depend upon the demonstration of a premium attendant to false advertising; instead, Plaintiffs may validly argue that the products, given their propensity to cause serious disease and premature death, are worthless, or that, even if they have some intrinsic value, the class should nevertheless receive full restitution. *See FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993); *Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at *34 (N.D. Cal. 2011); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 450-51 (1979); Cal. Bus. & Prof. Code § 17203.

Contrary to Gruma's argument, if Plaintiffs show that its advertising was likely to deceive the public, that they and the putative class have suffered injury is manifest: "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury. . . ." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 2011 U.S. App. LEXIS 107454, at *15 n.13 (9th Cir. Aug. 22, 2011). Moreover, "[t]he substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct." *Tobacco II*, 46 Cal. 4th at 324 (internal quotations and citation omitted). Accordingly, any putative class member who purchased a Gruma product in packaging "likely to deceive" has suffered an injury by paying more than she would have absent the misleading advertisements and omissions, and by having her state-created substantive right to be free from fraud violated. Similarly, proof of damage under the CLRA does not require any pecuniary loss. *See Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 593

---

[12] There is, in any event, sufficient issues of fact as to any such premium to preclude summary judgment. *See* SGI ¶ 8; Henderson Decl. ¶¶ 5-6.

(1984). Gruma's final argument, that its small-print ingredient list adequately corrects prominent misrepresentations on the products' front labels, Mot. at 21, is erroneous. *Williams*, 552 F.3d at 939.

## V.  THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO ESTOP MS. HENDERSON FROM ASSERTING HER CLAIMS

"Judicial estoppel is an equitable doctrine invoked by a court *at its discretion*." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1148 (9th Cir. 2011) (citations omitted, emphasis added). Its purpose is to preclude "a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). In determining whether to exercise its discretion to invoke judicial estoppel against a party, courts consider: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Liquidators of European Fed. Credit Bank,* 630 F.3d at 1148 (citations omitted). Gruma fails to address any of these factors. Mot. at 22-24.

Because "[j]udicial estoppel seeks to prevent *deliberate manipulation* of the courts[,] it is inappropriate . . . when a party's prior position was based on inadvertence or mistake." *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) (citations omitted, emphasis added). That is the case here. Plaintiff's failure to amend her bankruptcy petition was not in bad faith but instead inadvertent, *de minimis*, and non-prejudicial.

With the help of their bankruptcy attorney, Plaintiff Mary Henderson and her husband jointly filed a bankruptcy petition and schedule of assets on April 7, 2010. *See* Weston Decl. Ex. O. (voluntary petition). Ms. Henderson did not file this action until two months later, on June 4, 2010. Thus, as in *Poulos v. Caesars World, Inc.*, because Ms. Henderson "had not yet become a named plaintiff, she was not required to report her

1    claim to the bankruptcy court when she filed her schedule of assets." 2002 U.S. Dist.

2    LEXIS 28325, at *17 (D. Nev. June 21, 2002). The Hendersons' bankruptcy was

3    discharged on August 6, 2010. Because Plaintiff's "goal with this case is to protect the

4    public," and because she "did not volunteer in order to obtain any personal gain[,] . . . it

5    did not even occur to [her] that this suit may create a 'claim' to be disclosed on [her]

6    bankruptcy, which was caused by a combination of uncovered medical expenses and

7    [her] inability to work during cancer treatment." Henderson Decl. ¶ 11; *see also* SGI ¶¶

8    70-73. Unlike in cases Defendant cites, Ms. Henderson was not seeking to take

9    advantage of her creditors or Gruma. Nor could she have, since her individual claim,

10   equivalent to a refund for the Gruma products she purchased, *see id.* ¶ 74, would have

11   comprised an infinitesimal portion of her family's bankruptcy estate.[13]

12        Accordingly, grounds for judicial estoppel do not exist. *See Hamilton v. State*

13   *Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (rationale for invoking judicial

14   estoppel is to protect the integrity of the system by "not permit[ting] a debtor to obtain

15   relief from the bankruptcy court by representing that no claims exist and then

16   subsequently . . . assert[ing] those claims *for his own benefit* in a separate proceeding."

17   (citations omitted, emphasis added)). For example, listing her individual claim would not

18   have materially increased any creditor's recovery, nor changed the bankruptcy court's

19   conclusion that Plaintiff's debt should be discharged.[14] And Gruma could not possibly

20   have been prejudiced by the inadvertent error, but in any event makes no such assertion.

21   ─────────────────

22   [13] Moreover, on many portions of the voluntary petition, petitioners must necessarily

23   give estimates of assets. Thus, for example, Plaintiff provided estimates of the value of her family's furniture; books; clothing; jewelry; and computers. *See* Weston Decl. Ex. O

24   at 14-16. Any individual claim for a few dollars Plaintiff has in this case would almost certainly be subsumed by the inexactitude inherent in such estimations.

25   [14] Nor should Ms. Henderson be faulted for not seeking to reopen her bankruptcy almost

26   a year after discharge, when Gruma's counsel implied during her deposition that these actions may have created a claim to disclose. To do so would unnecessarily tax the

27   bankruptcy court, which is unlikely to have an interest in adding such a small and contingent asset as a claim. *Accord Poulos*, 2002 U.S. Dist. LEXIS 28325, at *17-18

28

Nor has Gruma identified a case in which a class representative was judicially estopped for failing to disclose her unperfected claim in a bankruptcy proceeding. In *Hamilton*, the main case on which Gruma relies, a plaintiff pursuing an insurance claim thought to be fraudulent listed a $160,000 loss as a liability of his estate, but not his corresponding claim against State Farm. 270 F.3d at 781. When the bankruptcy trustee asked Hamilton about any corresponding insurance claim, he did not truthfully respond, causing the bankruptcy court to later vacate its discharge of debts. *See id.* Hamilton then tried to sue State Farm after his bankruptcy was discharged.

By contrast, in the few cases we located where this issue arose in a class action context, no court upheld such a challenge to typicality or adequacy. *See Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 467 (N.D. Ill. 2006) ("Claffey's failure to disclose certain matters in her bankruptcy case does not undercut her adequacy as a class representative"); *Hubbard v. Midland Credit Mgmt.*, 2008 U.S. Dist. LEXIS 102982, at *7 (S.D. Ind. Dec. 19, 2008) ("Hubbard's oversight in failing to disclose this lawsuit to the bankruptcy court in her initial petition does not undermine her adequacy as class representative"); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 2008 U.S. Dist. LEXIS 50928, at *47 (D. Nev. June 20, 2008) ("it does not appear to the Court at this stage that Hall's financial woes render her claims atypical"); *Poulos*, 2002 U.S. Dist. LEXIS 28325.[15]

## CONCLUSION

Gruma's Motion for Summary Judgment should be denied.

---

(noting that the Plaintiff had re-opened the bankruptcy proceeding in order to include her individual claim as a member of the putative class, and that the trustee thereafter "abandoned Ms. McElmore's claim, allowing her to proceed as a plaintiff in this case").

[15] Moreover, there is a danger that applying judicial estoppel under these circumstances would undermine California's "public policy which encourages the use of the class action device," *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981), by disqualifying many individuals from serving as class representatives.

23

Dated: November 14, 2011

Respectfully submitted,

/s/ Jack Fitzgerald

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

*Counsel for Plaintiffs*

*Henderson et al. v. Gruma Corporation et al.,* Case No. 2:10-cv-04173 AHM (AJWx)
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT